# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PETROLEUM TANKERS PARENT LLC, ) ) ) | |
| Plaintiff, ) | Civil Action No. 1:12-CV-001165-CKK |
| v. ) | Defendants' Motion to Dismiss |
| The UNITED STATES OF AMERICA, *et al.*, ) ) | Fed. R. Civ. P. 12(b)(1) & (6) |
| Defendants. ) | |

## DEFENDANTS' MOTION TO DISMISS THE SUPPLEMENTAL COMPLAINT

Defendants, the United States of America, the Secretary of Transportation, and the Administrator of the Maritime Administration, respectfully move this Court to dismiss this action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1), (6).  In support of this motion, Defendants refer the Court to the accompanying Memorandum in Support of Defendants' Motion to Dismiss.

WHEREFORE, Defendants respectfully request that the Court issue an order dismissing Plaintiff's Supplemental Complaint.  A proposed order is attached.


DATED: January 18, 2013



Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director

/s/ Karen P. Seifert
KAREN P. SEIFERT
Trial Attorney (NY Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6112
Washington, D.C. 20530
Tel. (202) 305-0891 / Fax: (202) 616-8470
Email: karen.p.seifert@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN PETROLEUM TANKERS PARENT LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:12-CV-001165-CKK |
| v. | ) ) | Defendants' Motion to Dismiss |
| The UNITED STATES OF AMERICA, *et al.*, | ) ) ) | Fed. R. Civ. P. 12(b)(1) & (6) |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE SUPPLEMENTAL COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................................1

BACKGROUND .....................................................................................................................3

I.      Federal Ship Financing Program & Application Process .....................................................3

II.     Plaintiff's Title XI Application ..........................................................................................5

III.    Litigation...............................................................................................................................8

ARGUMENT ...........................................................................................................................9

I.      The Recusal Claim Must Be Dismissed Because the Court Lacks Jurisdiction to Hear It
and Plaintiff Has Failed to State a Claim for Relief .........................................................11

       A.     The Court Lacks Jurisdiction Because There Is No Waiver of
Sovereign Immunity....................................................................................11

       B.     This Claim Presents a Nonjusticiable Political Question ......................................12

       C.     Plaintiff Has Failed to Plead Any Legal Basis for the Recusal Claim..................15

II.     Plaintiff's Claim Seeking Review of the Administrator's Decision Fails
to State a Claim For Relief and Is Not Redressable by This Court ..................................16

       A.     Plaintiff Has Failed to State an APA Claim Because the Loan
Decision Is Committed to Agency Discretion .......................................................17

              1.     Nature of Agency Action.........................................................................17

              2.     Language and Structure of the Statute ........................................................18

       B.     Plaintiff's Injury Is Not Redressable by This Court and Thus Plaintiff
Lacks Standing to Proceed on This Claim..........................................................21

III.    The Credit Council Claim Fails to State a Claim for Relief Under the APA Because the
Secretary and Credit Council's Involvement Is Not Contrary to Law...............................22

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Air Tranp. Ass'n. of Am. v. Export-Import Bank,*
   No. 11-cv-02024, --- F.Supp.2d ----, 2012 WL 2914442 (D.D.C. July 18, 2012) ............ 18, 21
*Aleck v. United States,*
   No. CV 04-277, 2005 WL 2709502 (D. Ore. Oct. 21, 2005) .................................................. 12
\* *Bailey v. Richardson,*
   182 F.2d 46 (D.C. Cir. 1950) ............................................................................................... 14
\* *Baker v. Carr,*
   369 U.S. 186 (1962) ................................................................................................. 12, 13, 14
\* *Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................ 10, 15
*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) ............................................................................................................. 24
*Drake v. FAA,*
   291 F.3d 59 (D.C. Cir. 2002) ............................................................................................... 17
*El Shifa Pharm. Indus. Co. v. United States,*
   607 F.3d 836 (D.C. Cir. 2010) ........................................................................................ 12, 15
*Floyd v. United States,*
   129 F.3d 152 (D.C. Cir. 1997) ............................................................................................. 12
*Gifford v. SBA,*
   626 F.2d 85 (9th Cir. 1980) ................................................................................................. 17
*Gonzalez-Vera v. Kissinger,*
   449 F.3d 1260 (D.C. Cir. 2006) ........................................................................................... 10
*Harbury v. Hayden,*
   522 F.3d 413 (D.C. Cir. 2008) ............................................................................................. 13
\* *Heckler v. Chaney,*
   470 U.S. 821 (1985) ................................................................................................. 17, 18, 20
\* *Hein v. Freedom From Religion Found., Inc.,*
   551 U.S. 587 (2007) ........................................................................................................ 24, 25
\* *Helgeson v. BIA,*
   153 F.3d 1000 (9th Cir. 1998) ...................................................................................... passim
*Hercules Inc. v. United States,*
   516 U.S. 417 (1996) ............................................................................................................. 11
*Hoai v. Vo,*
   935 F.2d 308 (D.C. Cir. 1991) ............................................................................................. 10
*Jalil v. Hampton,*
   460 F.2d 923 (D.C. Cir. 1972) ............................................................................................. 14
*Japan Whaling Ass'n v. Am. Cetacean Soc'y,*
   478 U.S. 221 (1986) ............................................................................................................. 12
*Kaempe v. Myers,*
   367 F.3d 958 (D.C. Cir. 2004) ............................................................................................... 7
*Kucana v. Holder,*
   558 U.S. 233, 130 S. Ct. 827 (2010) .................................................................................... 23

*Lincoln v. Vigil,*
   508 U.S. 182 (1993)..................................................................................... 20
\* *Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)................................................................................ 10, 21
\* *Myers v. United States,*
   272 U.S. 52 (1926).................................................................................. 13, 14
*New Mem'l Assocs. v. Credit Gen. Ins. Corp.,*
   973 F. Supp. 1027 (Dist. N.M. 1997) ............................................................ 7
\* *Norton v. S. Utah Wilderness Alliance,*
   542 U.S. 55 (2004).................................................................................. 12, 15
*Parsons Steel, Inc. v. First Ala. Bank,*
   474 U.S. 518 (1986)..................................................................................... 25
*Prager v. LaFaver,*
   180 F.3d 1185 (10th Cir. 1999) ..................................................................... 7
*Renal Physicians Ass'n v. U.S. Dept. of Health and Human Servs.,*
   489 F.3d 1267 (D.C. Cir. 2007) ................................................................... 21
*Sec'y of Labor v. Twentymile Coal Co.,*
   456 F.3d 151 (D.C. Cir. 2006) ..................................................................... 17
*Staebler v. Carter,*
   464 F. Supp. 585 (D.D.C. 1979) .................................................................. 14
*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998)....................................................................................... 10
*Sugar Cane Growers Co-op. v. Veneman,*
   289 F.3d 89 (D.C. Cir. 2002) ....................................................................... 21
*United States v. Price,*
   361 U.S. 304 (1960)..................................................................................... 24
*Utah v. Evans,*
   536 U.S. 452 (2002)..................................................................................... 21
*Whitfield v. United States,*
   543 U.S. 209 (2005)..................................................................................... 24
*Wright v. Foreign Serv. Grievance Bd.,*
   503 F. Supp. 2d 163 (D.D.C. 2007) ............................................................. 10
*Zivotofsky v. Clinton,*
   132 S. Ct. 1421 (2012) ................................................................................. 13

## UNITED STATES CONSTITUTION

U.S. Const. art. II, § 2 ....................................................................................... 13

## STATUTES

2 U.S.C. § 661c(b) ............................................................................................... 3
5 U.S.C. § 551(13) ............................................................................................. 12
5 U.S.C. § 701(a)(2) ........................................................................................... 17
5 U.S.C. § 702 .................................................................................................... 11
5 U.S.C. § 706(2) ............................................................................................ 9, 22

25 U.S.C. § 1463 ......................................................................................................... 20, 21
46 U.S.C. § 53701 ................................................................................................................ 3
46 U.S.C. § 53702 ........................................................................................................ passim
46 U.S.C. § 53703 ......................................................................................................... 4, 19
46 U.S.C. § 53704 ........................................................................................................... 3, 5
46 U.S.C. § 53706 ......................................................................................................... 3, 21
46 U.S.C. § 53707 ...................................................................................................... 4, 5, 19
46 U.S.C. § 53708 .................................................................................................. 4, 5, 19, 21
46 U.S.C. § 53709 ........................................................................................................... 3, 4
46 U.S.C. § 53710 ................................................................................................................ 3
46 U.S.C. § 53711 ................................................................................................................ 3
49 U.S.C. § 109 ...................................................................................................... 13, 24, 25

## RULES AND REGULATIONS

46 C.F.R. § 298.14 ......................................................................................................... 5, 19
46 C.F.R. § 298.17 ......................................................................................................... 5, 19
46 C.F.R. § 298.20 ............................................................................................................... 3
46 C.F.R. § 298.21 ............................................................................................................... 4
46 C.F.R. § 298.23 ......................................................................................................... 4, 18
46 C.F.R. § 298.3 ................................................................................................................. 3

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(1) ................................................................................................. passim
Fed. R. Civ. P. 12(b)(6) ................................................................................................. passim
Fed. R. Civ. P. 8(a)(2) ......................................................................................................... 15

## **INTRODUCTION**

The Department of Transportation's Maritime Administration ("MarAd") provides loan guarantees to ship owners in order to aid U.S. shipbuilding.  These government-backed guarantees allow ship owners to obtain funds from the private sector at substantially better rates than they would otherwise be eligible for because the loans are backed by the United States.  The availability of the funds for this loan guarantee program depends on Congress' appropriation of monies to support the cost of the loan guarantees.  Although up through the early 2000s this program saw numerous loan guarantee applications approved each year, dwindling appropriations have substantially reduced MarAd's ability to approve applications that are eligible under the applicable statute and regulations.  MarAd and its Administrator, thus, carefully evaluate each eligible application on a variety of factors to determine whether each application should be approved given this limited amount of available resources.

In 2012, the Administrator determined that Plaintiff American Petroleum Tankers Parent's ("APT") application for a $470 million loan guarantee (later reduced to $340 million) did not warrant approval, in part because approval would require disbursement of most of the agency's limited resources.  Plaintiff sought this loan guarantee in order to refinance its existing loans on five vessels it has built—meaning Plaintiff had borrowed money from private lenders at high interest rates and wanted the loan guarantee so that it could procure a lower interest rate and, thus, make more money.  The Administrator determined that the application was not economically sound, that the application for refinancing did not warrant priority over other applications, and that the guarantee amount was so large that it would consume almost all available money in this program.  The Administrator's decision was supported by a recommendation of the Department's Credit Council, which by order of the Secretary of

Transportation, reviews and opines on creditworthiness and financial viability of applications to any of the Department's credit programs.

Plaintiff now asks this Court to sit as a judicial loan review committee and embroil itself in a matter expressly committed to the Executive Branch. First, Plaintiff asks the Court to find that the Administrator is incompetent to evaluate Plaintiff's application and order him recused. The Court may not review this claim because the Executive alone has the power to decide the Administrator's qualification and appointment, and moreover, no statute provides a cause of action for this claim. Second, Plaintiff asks this Court to review the merits of the Administrator's decision to deny its application. The Court may not do so because the Administrator's decision is committed to agency discretion, and therefore the Administrative Procedure Act ("APA") does not provide the relief Plaintiff seeks. In addition, even if MarAd were to evaluate the loan guarantee application as Plaintiff suggests, there is still no basis for this Court to award relief, because MarAd could deny it on the basis that granting the application would exhaust MarAd's Title XI funds. As a result, Plaintiff does not have standing to pursue this APA claim since the Court cannot provide the relief Plaintiff seeks. Finally, Plaintiff asks this Court to order the Secretary of Transportation and the Credit Council to cease any involvement in evaluating loan guarantee applications. No statute or regulation prevents either the Secretary or the Credit Council from advising the Administrator on Plaintiff's application and, additionally, the Secretary has statutory authority to require the Credit Council's involvement in the application process. This claim, too, fails to state a claim for relief under the APA. The Court should decline Plaintiff's invitation to expand its jurisdiction into realms committed to the other political branches and dismiss this case in its entirety.

## BACKGROUND

**I.      Federal Ship Financing Program & Application Process**

Title XI of Merchant Marine Act of 1936, as amended, authorizes the Maritime Administration (MarAd) of the Department of Transportation to issue Government-backed loan guarantees to owners of certain vessels and shipyards.   46 U.S.C. § 53702.   The MarAd Administrator authorizes loan guarantees using funds appropriated by Congress for the Title XI loan guarantee program.   2 U.S.C. § 661c(b); 46 U.S.C. § 53702(a).   Loan guarantees are intended to "foster the development and encourage the maintenance of" U.S. merchant marine and U.S. shipyards.   Merchant Marine Act of 1936, Pub. L. No. 74-835, § 101, 49 Stat. 1985 (1936).   The issuance of a loan guarantee backed by the full faith and credit of the United States reduces the cost of vessel financing in the U.S. maritime industry because private debt-holders are willing to finance vessels built in U.S. Shipyards and the modernization of U.S. Shipyards at a greatly reduced cost, compared to what would be demanded in the absence of a federal guarantee.   Once a loan guarantee is issued, the loan applicant can seek funds from the private sector through the issuance of Government-guaranteed debt instruments.

Applicants submit an application for a Title XI loan guarantee to MarAd, and once the application is complete,[1] MarAd staff review it to determine whether it is "eligible" for a loan guarantee.   Several eligibility requirements must be met in order to qualify for a Title XI loan guarantee.   *See generally* 46 U.S.C. §§ 53704, 53706, 53709-53711.   The maximum guarantee period allowed is twenty-five years, 46 U.S.C. § 53710(a)(3); 46 C.F.R. § 298.20(a), and the maximum permitted guarantee is 87.5% of the actual cost of the vessel construction, depending

---

[1] After receiving the application, MarAd staff reviews the application for deficiencies to determine if any items required to evaluate the application are incomplete.   46 C.F.R. § 298.3(f)(2).

upon the type of vessel to be financed, 46 U.S.C. § 53709(b); 46 C.F.R. § 298.21(a).   The amount guaranteed by the Government is based on the "actual cost" of the vessels.   46 C.F.R. § 298.21.

MarAd staff then evaluate eligible applications based on a variety of "factors" to determine whether the Administrator should approve a loan guarantee.   Issuance of a loan guarantee is discretionary and no statute or regulation mandates that loan guarantees be made. 46 U.S.C. § 53702(a) ("[The] Administrator, *on terms the . . . Administrator may prescribe*, *may* guarantee or make a commitment to guarantee the payment of the principal of and interest on an obligation eligible to be guaranteed under this chapter."   (emphasis added)); *see also* 46 C.F.R. § 298.23(a) (stating that "[w]e *may* approve guarantees" for refinancing (emphasis added)).   The statute and regulations do not provide an exclusive list of the factors MarAd and the Administrator must consider in making a loan guarantee and do not mandate that guarantees be made if certain factors are satisfied.   In addition, the authorities provide that the Administrator may consider any factors he deems relevant.   46 U.S.C. § 53702(a).   However, the Administrator is restricted from issuing loan guarantee *without* considering certain factors.   *See, e.g.*, 46 U.S.C. §§ 53703(b), 53707(a), 53708(a).   Some of the factors considered in the evaluation include, but are not limited to:  (i) the period for which an obligation is to be guaranteed; (ii) the amount of an obligation to be guaranteed in relation to the total cost of the project financed; (iii) the financial condition of an obligor or applicant; other guarantees related to the project; the projected employment of each vessel to be financed; (iv) the collateral provided for a guarantee for an obligation; the management and operating experience of an obligor or applicant; (v) the concentration risk presented by an unduly large percentage of loans outstanding by any one borrower or group of affiliated borrowers; and (v) the need for new or additional capacity

4

proposed in the particular segment of the maritime industry. *See, e.g.*, 46 U.S.C. § 53704(c)(4); 46 C.F.R. § 298.14(c), 298.17.

As part of the application evaluation, MarAd and the Administrator receive input from third-parties. In instances like this, Title XI applications are reviewed by a "third party expert[]" who conducts an "independent analysis" that provides MarAd staff further insight in evaluating the application. 46 U.S.C. § 53708(d). The independent analyst provides the agency with a report discussing the application's economic feasibility. Additionally, as with all of the credit programs administered by the Department of Transportation, Title XI applications are reviewed by the Department's Credit Council. DOT Order 2301.1B 2-3 (Sept. 29, 2010) (attached hereto as Exhibit A). The Credit Council consists of the heads of several of the Departments' sub-agencies, including the Administrator, and other senior Department officials, such as the Deputy Secretary and the General Counsel. *Id.* at 2. The Credit Council review is intended "to ensure the application of consistent credit policies and management practices across all DOT credit programs." *Id.* The Credit Council "will provide a recommendation regarding the financial viability of the proposed project and the merits of the requested credit assistance and its consistency with departmental credit policies" to the Administrator, who will then "approve or disapprove the request for credit assistance." *Id.* at 3-4. These same recommendations are provided to other DOT sub-agency heads who administer credit programs, such as the Administrator of the Federal Railroad Administration and the Director of the Office of Small Business and Disadvantaged Business Utilization. *Id.*

## II.    Plaintiff's Title XI Application

On August 30, 2010, Plaintiff submitted an application for a Title XI loan guarantee to MarAd. Supp. Compl. ¶ 26, Dec. 10, 2012 (ECF No. 14). The application requested a $470

million loan guarantee, which would cover the cost of refinancing five vessels already owned by Plaintiff. *Id.* Plaintiff intended to use the loan guarantees to refinance its existing debt, which it had incurred to construct these same five vessels. *Id.* ¶ 26. MarAd requested additional information from Plaintiff, and upon receipt of that information, determined that Plaintiff's application was complete in December 2010. *Id.* ¶ 28.

MarAd evaluated Plaintiff's application to determine whether it should be approved. As part of that process, MarAd sought authorization to engage an independent financial analyst to review Plaintiff's application. *Id.* ¶ 32. Although authorization was initially withheld, after Plaintiff amended its application to reduce the amount of the loan guarantee sought, an independent financial analysis was authorized in November 2011. *Id.* ¶¶ 32, 38-39. Scully Capital Services, Inc. provided a draft report in January 2012, *id.* ¶ 40, and a final report in June 2012, *id.*

MarAd discussed Plaintiff's application with the Credit Council on several occasions. *Id.* ¶¶ 40, 45, 47. The Credit Council considered whether the application was strong enough to warrant moving forward with an independent financial analysis, *id.* ¶¶ 32, 38-39, and then later, under the guidelines of DOT Order 2301.1B, considered the merits of the application at two of its meetings. *See id.* ¶¶ 41, 46. "[O]n July 31, 2012, the Credit Council unanimously recommended" to the MarAd Administrator "that APT's application should be denied." *Id.* ¶ 50 (quotation marks omitted).

The Administrator denied Plaintiff's application on August 1, 2012. *Id.* ¶¶ 50-51; *see also* Letter from David T. Matsuda, Administrator, MarAd, to Robert K. Kurz, Chairman, APT

(Aug. 1, 2012) ("August 1 Decision") (attached hereto as Ex. B).[2]   The basis for the denial

included a finding that the application "was economically unsound," as well as the fact that

approving the loan guarantee would "exhaust available program resources," and that the

"majority of the funds devoted to refinancing will be allocated to vessels that are not preferred by

statute" and other applications were also entitled to similar statutory priority.  Ex. B at 5-8; *see

also* Supp. Compl. ¶ 50.  The Administrator's decision "was informed by, but not dependent

upon, the Credit Council's recommendation."  Ex. B at 3; *see also* Supp. Compl. ¶ 50.

On July 30, 2012, a day before the issuance of the decision, Plaintiff formally proposed

changes to its application.  Ex. B at 4; *see also* Supp. Compl. ¶ 49 (stating that Plaintiff had first

proposed these changes in May 2012).  In his August 1 decision, the Administrator informed

Plaintiff that he did not consider these changes to the application, as they "constituted a material

change" to the application and the agency did "not have sufficient time to complete this review."

*Id.* ¶ 51.  However, the Administrator offered Plaintiff the opportunity to have the application

reviewed again with the proposed changes, and Plaintiff requested such review.  *Id.* ¶¶ 51, 53.

MarAd reviewed the "amended application" between August 9 and November 9.  *Id.* ¶¶ 53-58.

As part of this process, MarAd "made several requests for additional information."  *Id.* ¶ 55.

Scully Capital Services provided the agency with an updated financial report.  *Id.* ¶¶ 83-84.

---

[2] The Administrator's decisions on August 1 and November 9 are incorporated into the
Supplemental Complaint and may be considered by the Court without turning this action into a
Motion for Summary Judgment.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (holding
that documents "referred to in the complaint" and "integral" to the claim may also be considered
as part of a motion to dismiss); *see also Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir.
1999) (in ruling on a motion to dismiss for failure to state a claim, courts may consider
documents referred to in the complaint); *New Mem'l Assocs. v. Credit Gen. Ins. Corp.*, 973 F.
Supp. 1027, 1029 (Dist. N.M. 1997) (courts may consider documents "quoted, relied upon, or
incorporated by reference in the complaint as well as official public records pertinent to the
plaintiff's claims, so long as the documents are of unquestioned authenticity").

DOT's Credit Council again reviewed Plaintiff's application.  *Id.* ¶ 58.  The Credit Council again unanimously recommended to the Administrator that the application be denied.  *Id.* ¶ 61.

On November 9, 2012, the Administrator again denied Plaintiff's application.  *Id.* ¶ 61; *see also* Letter from David T. Matsuda, Administrator, MarAd, to Robert K. Kurz, Chairman, APT (Nov. 9, 2012) ("November 9 Decision") (attached hereto as Ex. C).  The denial was based on a finding that the application was "economically unsound," that the guarantee would "nearly exhaust available resources," and that although the evaluation "took into consideration" that some of Plaintiff's vessels were entitled to priority under the statue, other pending applications were similarly entitled to priority.  Ex. C at 5, 8, 10-11; *see also* Supp. Compl. ¶ 61.  The Administrator noted that "[a]lthough APT's July 28 [changes to the application] might ameliorate one aspect of APT's previously economically unsound proposal, the fundamental economic unsoundness of the APT project remains" because the changes to the application "do[] not change operative revenue or change flow projections and do[] not represent an infusion of new working capital into APT."  Ex. C at 5-6.  The Administrator again stated that his decision "was informed by, but not dependent upon, the Credit Council's recommendation."  Ex. C at 4; *see also* Supp. Compl. ¶ 61.

## III.    Litigation

Prior to the issuance of the Administrator's decision, on July 17, 2012, Plaintiff filed a Complaint seeking emergency relief in the nature of mandamus and relief under the Administrative Procedure Act ("APA") related to its pending application to DOT for a loan guarantee.  *See generally* Compl., July 17, 2012 (ECF No. 1).  On July 18, Plaintiff filed a Motion for Emergency Relief in the Nature of Mandamus and Related Injunction, seeking an order from this Court requiring the Administrator to act on Plaintiff's application by August 31.

(ECF. No. 4).  On July 23, the parties entered a stipulation whereby the agency agreed to issue a decision approving or denying Plaintiff's pending application on or before August 31, and Plaintiff withdrew its Motion for Emergency Relief in the Nature of Mandamus and Related Injunction and its Motion for an Expedited Hearing.  (ECF No. 7).

Following the August 1 and November 9 decisions on Plaintiff's application, Plaintiff filed a Supplemental Complaint on December 10.  Supp. Compl. (ECF No. 14).  The Supplemental Complaint alleges three claims.  First, it seeks review of the Administrator's decision denying Plaintiff's loan guarantee application and alleges that the agency's action violated Section 706(2) of the APA because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," and it specifically lists four grounds on which it bases this allegation.  *See* Supp. Compl. ¶ 103-08 (quoting 5 U.S.C. § 706(2)).  As relief for this claim, Plaintiff seeks an order remanding the matter to the Administrator for reconsideration "in accordance with the Title XI statute and regulations."  *Id.* ¶ 107.  Second, the Supplemental Complaint alleges that the Secretary's and Credit Council's involvement in the application process is contrary to "the clear mandate of Congress," in violation of Section 706(2) of the APA.  Supp. Compl. ¶¶ 109-14.  The Credit Council claim seeks an order directing the agency to "cease and desist" submitting applications to the Credit Council.  *Id.* ¶ 114.  Third, the Supplemental Complaint generally alleges that the Administrator is "incapable of fairly assessing the merits of APT's Title XI application."  *Id.* ¶ 115.  As relief, this claim seeks an order from the Court mandating that the Administrator recuse himself.  *Id.*

## ARGUMENT

Defendants move to dismiss two of Plaintiff's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of jurisdiction questions

the Court's very "*power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).  The Court does not have subject matter jurisdiction over Plaintiff's recusal claim, as there is no waiver of sovereign immunity for that claim and it presents a political question outside of the Court's purview.  *See, e.g.*, *Gonzalez–Vera v. Kissinger*, 449 F.3d 1260, 1262 (D.C. Cir. 2006) (explaining that a dismissal under the political question doctrine constitutes a dismissal for lack of subject matter jurisdiction and "not an adjudication on the merits"); *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 181 (D.D.C. 2007) ("Because there is no waiver of sovereign immunity for [this type of claim], the Court grants defendants' motion to dismiss . . . for lack of subject-matter jurisdiction.").  Similarly, the Court does not have subject matter jurisdiction over Plaintiff's APA claim seeking review of the Administrator's decision because Plaintiff has not met constitutional standing requirements.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (The party invoking jurisdiction must "adduce facts showing . . . redressability of injury.").

In addition, all three of Plaintiff's claims should be dismissed for failure to state a claim for relief under to Fed. R. Civ. P. 12(b)(6).  A claim is subject to dismissal under Rule 12(b)(6) where it fails to provide "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the. . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Plaintiff's recusal claim has failed to properly plead the "elements of a cause of action," and does not meet the pleading standard set out in *Twombly*.  Additionally, a claim is subject to dismissal under Rule 12(b)(6) where the facts, even if assumed true, do not state show a violation of the law. *See, e.g.*, *Hoai v. Vo*, 935 F.2d 308, 314 (D.C. Cir. 1991) ("[The] failure to allege facts that would support a finding of [a legal violation] affords valid grounds for

dismissal . . . ."). Plaintiff's two APA claims fail to assert a violation of the APA sufficient to withstand this motion to dismiss.

I. **The Recusal Claim Must Be Dismissed Because the Court Lacks Jurisdiction to Hear It and Plaintiff Has Failed to State a Claim for Relief**

Plaintiff's claim attacking the Administrator must be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks jurisdiction to hear this claim and under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a cause of action. This claim alleges that "[p]ast interference" by DOT officials and the Credit Council "has so infected and prejudiced the deliberative process used by, and the judgment of, the incumbent Administrator that he is incapable of fairly assessing the merits of APT's Title XI application." Supp. Compl. ¶ 115 (Claim III). The claim seeks for this Court to issue an order "requiring that the incumbent Administrator . . . recuse himself from *any further participation* in the consideration of APT's application." *Id.* (emphasis added).

A. **The Court Lacks Jurisdiction Because There Is No Waiver of Sovereign Immunity**

The recusal claim must be dismissed under Fed. R. Civ. P. 12(b)(1) because the United States has not waived sovereign immunity for a claim such as this. "The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any [C]ourt define that [C]ourt's jurisdiction to entertain the suit." *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996) (citations and internal punctuation omitted). The only conceivably applicable waiver of sovereign immunity waiver is found in the APA, which waives sovereign immunity for "[a] person suffering legal wrong because of *agency action*, or adversely affected or aggrieved by *agency action* within the meaning of a relevant statute." 5 U.S.C. § 702 (emphasis added). An "agency action" is defined as "the whole or a part of an agency rule,

order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  "All of those categories involve circumscribed, discrete agency actions."  *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (*SUWA*) (requiring that purported conduct fall within § 551(13)).

The claim against the Administrator does not seek review of an "agency action" within the meaning of the APA and, thus, there is no waiver of sovereign immunity.  Plaintiff seeks review of the Administrator's qualifications and fitness, and a determination that the Administrator cannot continue to perform his duties.  Supp. Compl. ¶ 115.  This is not "agency action" within the meaning of § 551(13).  Plaintiff does not point to any specific "rule" or "order" of which it seeks review, as required by *SUWA*, 542 U.S. at 62 (citing § 551(13)).  Even "[o]vert conduct" by the agency must still "fall within the scope" of § 551(13) in order to waive sovereign immunity.  *Aleck v. United States*, No. CV 04-277, 2005 WL 2709502, at *3 (D. Ore. Oct. 21, 2005).  "Without a record of federal agency action, [plaintiffs] have no APA cause of action and therefore no waiver of sovereign immunity."  *Floyd v. United States*, 129 F.3d 152, 156 (D.C. Cir. 1997) (finding that the government's activity was not "agency action" because "no federal agency offered any interpretation or took any reviewable action").

### B.  This Claim Presents a Nonjusticiable Political Question

Alternatively, the Court should dismiss the recusal claim because it presents a nonjusticiable political question.  The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  The doctrine is "essentially a function of separation of power."  *Baker v. Carr*, 369 U.S.

186, 217 (1962); *accord, e.g.*, *El Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010). *Baker v. Carr* identified six factors for consideration under the political question doctrine, any one of which may render a claim nonjusticiable, including a "textually demonstrable constitutional commitment of the issue to a coordinate political department," or "the impossibility of a court's undertaking independent resolution without expressing lack of respect due to coordinate branches of government." *Baker*, 369 U.S. at 217; *see also Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (quoting first and second *Baker v. Carr* factors); *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir. 2008) (noting that the "textual commitment" factor is one of the strongest).

Adjudicating this claim would interfere with the President's appointment and removal power, which is "constitutionally commit[ed]" to the Executive Branch and, thus, the claim is not justiciable. *Baker*, 369 U.S. at 217. The Constitution provides that the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint . . . all other officers of the United States." U.S. Const. art. II, § 2. This includes the "head of the Maritime Administration," who "is appointed by the President by and with the advice and consent of the Senate." 49 U.S.C. § 109(b). The President's power to appoint the Administrator likewise carries with it the exclusive power to remove him. "The power to remove inferior executive officers, like that to remove superior executive officers, in an incident of the power to appoint them, and is in its nature an executive power." *Myers v. United States*, 272 U.S. 52, 161 (1926), *overruled in part on other grounds*, *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138 (2010).

This claim implicates the appointment power because Plaintiff asks the Court to evaluate a Presidential appointee, a task left to the Executive. "No function is more *completely internal* to

a branch of government than the *selection* and *retention* or dismissal of its employees.  So it has been held many times that the power of removal is an incident of the power of appointment." *Bailey v. Richardson*, 182 F.2d 46, 57 (D.C. Cir. 1950) (emphasis added) (explaining that Congress may not encroach on the Executive's appointment power), *aff'd* 341 U.S. 918, *disapproved on other grounds Jalil v. Hampton*, 460 F.2d 923 (D.C. Cir. 1972).  In order to find for Plaintiff on this claim, the Court would need to review the Administrator's skills and performance and determine that he is "prejudiced" against Plaintiff and not "capable" of doing his job.  Supp. Compl. ¶ 115.  Plaintiff asks this Court to so find and to order, as a remedy, that the Administrator "recuse himself" from performing his official duties.  *Id.*  Such action by this Court encroaches on the Executive's constitutionally-mandated role to appoint and "retain" executive officers and thus would "infringe the constitutional principle of the separation of governmental powers."  *Myers*, 272 U.S. at 161.  "[T]he power of removal must remain where the Constitution places it, with the President, as part of the executive power . . . ."  *Id.*; *cf. Staebler v. Carter*, 464 F. Supp. 585, 599 (D.D.C. 1979) ("[I]t is appropriate to consider that the President was intended by the framers of the Constitution to possess the *active*, initiating, and *preferred* role with respect to the appointment of officers of the United States." (emphasis added)).

Additionally, this claim is not justiciable because it would be "impossible" for the Court to "undertak[e] independent resolution without expressing a lack of respect due coordinate branches of government."  *Baker*, 369 U.S. at 217.  The Administrator is an Executive official appointed by the President.  If the Court were to require his recusal, it would be second-guessing the Executive's determination that the Administrator remains capable of performing his assigned duties.  The political question doctrine bars this claim because it would "call into question the

14

*prudence* of the political branches in matters . . . constitutionally committed to their discretion." *El Shifa Pharm. Indus. Co.*, 607 F.3d at 842 (emphasis added).

### C.  Plaintiff Has Failed to Plead Any Legal Basis for the Recusal Claim

This claim must also be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state any cause of action for this claim.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)(2)).  Plaintiff here has not even attempted a "recitation of the elements of a cause of action." *Id.*  Unlike the other two claims in the Complaint, the claim against the Administrator does not seek relief under the APA, or any statute whatsoever. Plaintiff has not cited, and Defendants are unaware, of any statute that provides a cause of action for the recusal claim.  It should be dismissed on that ground alone for failure to state a claim.

Moreover, even if Plaintiff were seeking relief under the APA, that statute does not provide any cause of action or remedy here.  The APA only provides a claim for an "agency action," *SUWA*, 542 U.S. at 62, and as discussed above, this claim does not seek review of an agency action but rather of an agency official's performance and credentials.  Additionally, the APA does not provide the relief Plaintiff seeks.  "[T]he only agency action that can be compelled under the APA is action legally *required*." *Id.* at 63.  Plaintiff seeks an order from this Court "disqualify[ing]" the Administrator and forcing him to "recuse" himself.  Supp. Compl. ¶ 115. Such agency action is not "required" by any statute or regulation and, therefore, is far beyond the remedy available under the APA.  To the extent this claim references any agency action at all, it restates Plaintiff's general dissatisfaction with the Administrator's decision to deny its loan

guarantee application and is a restatement of Plaintiff's other claim.  The Court should reject the invitation to require a recusal where there is no legal basis for Plaintiffs to seek such relief.

## II.   Plaintiff's Claim Seeking Review of the Administrator's Decision Fails to State a Claim For Relief and Is Not Redressable by This Court

Plaintiff's APA claim seeking review of the Administrator's decision must be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a cause of action under the APA.  *See.* Supp. Compl. ¶¶ 102-07 (Claim I).  Further, the claim should be dismissed under Fed. R. Civ. P. 12(b)(1) because Plaintiff's injury is not redressable by this Court and, thus, Plaintiff lacks standing to proceed on this claim.  The claim alleges that the Administrator's denial of Plaintiff's loan guarantee application violated the APA and lists four grounds on which the decision should be reversed as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law":

- "[D]efendants took into account . . . the opinion and recommendation of the DOT Credit Council." Supp. Compl. ¶ 104.[3]
- The agency's "decision that APT's [application] was not economically sound." *Id.* ¶¶ 66, 105; *see also id.* ¶¶ 62-85.
- The agency's "decision that APT's [application] does not warrant priority under the Title XI statute and regulations." *Id.* ¶¶ 89, 106.
- The agency's decision that granting Plaintiff's application "would exhaust available funds that might otherwise be used to grant pending and possibly forthcoming applications that may be more sound and desirable." *Id.* ¶¶ 96-97, 107.

---

[3] Plaintiff's argument that the Credit Council should not have taken part in the application review process is duplicative of Plaintiff's APA claim related to the Credit Council (Claim II), which also fails to state a claim for relief and should be dismissed.  For the reasons discussed below, the Credit Council was authorized to review Plaintiff's application and provide a recommendation to the Administrator, *see infra* Part III, and the relevant statute allows the Administrator discretion to consider that recommendation, *see infra* Part II.A.2.

### A.  Plaintiff Has Failed to State an APA Claim Because the Loan Decision Is Committed to Agency Discretion

The APA does not provide a cause of action for decisions, such as this one, that are committed to agency discretion.   Although agency action is subject to a presumption of reviewability, the APA does not apply to "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).   An agency action is "committed to agency discretion" where a "statute is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.   In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (emphasis added).

To determine whether a matter is committed to agency discretion, the Court must "'consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing the action.'"  *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)).   In this case, both considerations show that the matter has been committed to agency discretion.

#### 1.  Nature of Agency Action

MarAd's action in this matter—the decision not to issue a loan guarantee—is quintessentially a matter of agency discretion.   "[T]he question of whether, and in what amount, a government loan should be afforded is an area of executive action usually reserved to agency discretion as involving 'nice issues of judgment and choice . . . which require the exercise of informed discretion.'"  *Helgeson v. BIA*, 153 F.3d 1000, 1004 (9th Cir. 1998) (quoting *Gifford v. SBA*, 626 F.2d 85, 87 (9th Cir. 1980)); *see also Air Tranp. Ass'n. of Am. v. Export-Import Bank*, No. 11-cv-02024, --- F.Supp.2d ----, 2012 WL 2914442, at *20 (D.D.C. July 18, 2012) ("[T]here

17

is certainly reason to think [a loan] decision might best be left to the Bank's good judgment."). A loan decision involves considerations similar to those evaluated when an agency decides not to enforce a statute—an agency action that is not reviewable.  Just like a decision not to enforce a statute, the Administrator's decision "involves a complicated balancing of a number of factors which are peculiarly within [his] expertise."  *Heckler*, 470 U.S. at 831-32.  Where the agency must consider how "agency resources are best spent," whether the particular action "best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all, . . . [t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Id.*  "Discretionary government loans generally constitute such an executive action for it is not [the courts'] proper function to sit as a judicial loan review committee."  *Helgeson*, 153 F.3d at 1004.

### 2.  Language and Structure of the Statute

The relevant statute and regulations also support that this agency action is committed to agency discretion.  First, loan guarantees under the Title XI program are entirely discretionary. 46 U.S.C. § 53702(a) provides that the "Administrator, *on terms the . . . Administrator may prescribe*, *may* guarantee or make a commitment to guarantee the payment of the principal of and interest on an obligation eligible to be guaranteed under this chapter."  *Id.* (emphasis added); *see also* 46 C.F.R. § 298.23(a) (stating that "[w]e *may* approve guarantees" for refinancing (emphasis added)).  No statute or regulation mandates that loan guarantees be made.  *Contra Air Transp. Ass'n*, 2012 WL 2914442, at *21 (noting that the statute at issue "impos[ed] upon the Bank specific responsibilities" and limited the Bank's discretion to extend a loan guarantee in certain instances).

Additionally, under 46 U.S.C. § 53702(a), the Administrator has discretion about which factors to consider in evaluating a loan guarantee application.  No statute or regulation prescribes an exclusive list of criteria that the Administrator considers in making his decisions.  The only limitations on this discretion are that the Administrator "may not" issue a loan guarantee *without* considering certain factors.  *See, e.g.*, 46 U.S.C. § 53708(a) (the Administrator "may not guarantee" an obligation without considering "economic soundness" of the application); 46 U.S.C. § 53703(b) (the Administrator "may not guarantee" an obligation without considering statutory factors); 46 U.S.C. § 53707(a) (the Administrator "may not guarantee" an obligation unless the obligor is responsible).  However, even then the statute provides the Administrator room to consider "other relevant criteria" without limitation.  *Id.* § 53708(a)(5); 46 C.F.R. § 298.14(b)(6); *see also* 46 U.S.C. § 53707(a) (in determining whether an obligor is responsible, the Administrator should consider several factors "*and other qualifications* necessary for the adequate operation and maintenance of each vessel" (emphasis added)); 46 C.F.R. § 298.17(a) (stating that "[i]n evaluating project applications, [the agency] shall *also consider*" several factors, but not limiting the universe of factors that may be considered (emphasis added)).  Thus, the statute provides a *floor* of what must be considered prior to approving a loan guarantee, but does not set a *ceiling* on the factors that may be considered at the Administrator's discretion in reviewing an application.

Given this discretion, the statute provides no standards on which the Court can evaluate MarAd's decision to deny Plaintiff's loan guarantee application.  The statute provides ample room for the Administrator to consider those factors he deems wise, and the Court would have no way to determine if those factors were "proper" reasons for denying the application.  Moreover, to the extent the Administrator considered policy concerns in denying Plaintiff's

application, Supp. Compl. ¶¶ 96-97, such as how "agency resources are best spent," whether the particular action "best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all," the Court is not in a position to assess those choices.  *Heckler*, 470 U.S. at 831-32; *cf. Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("[A]llocation of funds from a lump-sum appropriation is . . . traditionally regarded as committed to agency discretion . . . . [Such appropriation] give[s] an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what is seen as the most effective or desirable way. . . .").

The Ninth Circuit's opinion in *Helgeson* is instructive and explains why the court may not sit as a "judicial loan review committee."  153 F.3d. at 1004.  In that case, the Bureau of Indian Affairs had authority to provide loans "when, in the judgment of the Secretary, there is a reasonable prospect of repayment, and only to applicants who in the opinion of the Secretary are unable to obtain financing from other sources on reasonable terms and conditions."  *Id.* at 1003 (quoting 25 U.S.C. § 1463).  The Court found that "[t]he language and structure of the authorizing statute establish that neither the [agency's] decision-making process nor its outcome is subject to judicial review, as long as the [agency] relies on the statutory factors [prospect of repayment and ability to obtain financing] in arriving at its loan decisions."  *Id.*  The Administrator's decision here is even more clearly committed to agency discretion because no such statutory factors limit his discretion—a loan guarantee application may be approved on those "*terms* the . . . Administrator *may prescribe*."  46 U.S.C. § 53702(a) (emphasis added). Moreover, just like in *Helgeson*, the statute here "does not equate loan eligibility with loan entitlement, but provides that loans 'may' be issued to eligible applicants.  Hence, even if the [plaintiffs] had met eligibility criteria, the statute proffered no guarantee that they would receive

20

a loan." *Helgeson*, 153 F.3d at 1004.  Plaintiff may not challenge the Administrator's denial of

the application.  *See id.*[4]

### B. Plaintiff's Injury Is Not Redressable by This Court and Thus Plaintiff Lacks Standing to Proceed on This Claim

For similar reasons, the claim seeking review of the Administrator's decision must be

dismissed under Fed. R. Civ. P. 12(b)(1) because Plaintiff's injury is not redressable by this

Court and Plaintiff lacks standing.  In order to meet the constitutional standing requirements, it

must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision."[5]  *See Lujan*, 504 U.S. at 561 (citation and quotation marks omitted).  Plaintiff's injury

is the "den[ial of] APT's Title XI application."  Supp. Compl. ¶ 107.  Specifically, Plaintiff

---

[4] The *Helgeson* Court went on to consider whether the BIA wrongly considered other factors not listed in the statute.  "Although the BIA has a discretion to determine loan eligibility by assessing whether applicants fulfill the criteria of 25 U.S.C. § 1463, nothing in section 1463 empowers the BIA to apply non-statutory factors to evaluate eligibility."  153 F.3d at 1004.  Such an analysis is not proper here because 46 U.S.C. § 53702(a) specifically provides the Administrator room to consider any factors he may "prescribe."  *Compare* 25 U.S.C. § 1463 ("Loans may be made only when, in the judgment of the Secretary, there is *a reasonable prospect of repayment*, and only to applicants who in the opinion of the Secretary *are unable to obtain financing* from other sources on reasonable terms and conditions." (emphasis added)), *with* 46 U.S.C. § 53702 ("The Secretary or Administrator, *on terms the Secretary or Administrator may prescribe*, may guarantee or make a commitment to guarantee the payment of the principal of and interest on an obligation eligible to be guaranteed under this chapter." (emphasis added)).

[5] Although a lesser showing of redressability is permitted when a plaintiff seeks to enforce procedural requirements, that standard only applies to "a procedural requirement *that was intended to protect a plaintiff's interests*."  *Air Transp. Ass'n.*, 2012 WL 2914442, at *17 (citing *Renal Physicians Ass'n v. U.S. Dept. of Health and Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007); *Sugar Cane Growers Co-op. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002)).  In such cases, a plaintiff must only show that a court order requiring the agency to follow the procedures at issue would result in "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered."  *Utah v. Evans*, 536 U.S. 452, 464 (2002).  Here, however, the statutes and regulations invoked by Plaintiff are not "intended to protect plaintiff's interests" but rather intended to protect the government's interests in not losing money on the loan guarantee and ensuring naval strength.  *E.g.*, 46 U.S.C. § 53708(a) (requiring "economic[] soundness"); 46 U.S.C. § 53706(c) (providing priority to vessels that serve a U.S. naval need).  Thus, this lesser showing of redressability is inapplicable.

alleges that the injury was caused by the Administrator's improper application of the regulations related to "economic[] sound[ness]," *id.* ¶¶ 66, 105, and "priority," *id.* ¶¶ 94, 106. *See also id.* ¶¶ 96-97 (noting that no statute or regulation applies to the other policy concerns used as a basis for denial). As a remedy for this injury, Plaintiff asks the Court to "set[] aside the decision" and "remand[] this matter to the Administrator for further consideration in accordance with the Title XI statute and regulations." *Id.* at ¶ 107.

Plaintiff's injury is not redressable. First, the agency's considerations were appropriate. The Administrator can consider any factors he "may prescribe" in evaluating a loan guarantee application. 46 U.S.C. § 53702(a). *See supra* Part II.A.2. Second, even if the Administrator found that Plaintiff's application was "economically sound" and that it "warranted priority," the Administrator could still deny the application because granting Plaintiff's loan guarantee application would "exhaust available funds," *id.* ¶¶ 106. As the guardian of limited public funds, the Administrator must consider whether funding one application will mean that other pending applications and/or future applicants will be denied. The Title XI Program was never intended to benefit a single entity. The Administrator has already made the determination that Plaintiff's application should be denied for this reason. As a result, reconsideration of Plaintiff's application would not change the outcome, and thus will not "redress" Plaintiff's injury.

## III.   The Credit Council Claim Fails to State a Claim for Relief Under the APA Because the Secretary and Credit Council's Involvement Is Not Contrary to Law

Plaintiff's claim against the Credit Council should be dismissed under Fed. R. Civ. P. 12(b)(6) because the Secretary's and Credit Council's involvement in the application process is not contrary to law, and therefore Plaintiff has failed to state a claim under the APA, 5 U.S.C. § 706(2)(a). *See* Supp. Compl. ¶ 108-114 (Claim II). Plaintiff claims that Congress "expressly transferred authority over the Title XI loan guarantee program from the Secretary to the

Maritime Administrator." *Id.* ¶ 110.  According to Plaintiff, the Secretary and Credit Council are wrongly interfering with the Administrator's decision-making process in violation of this alleged congressional delegation.  *Id.* ¶ 111-14.

Plaintiff has failed to state a claim under the APA because no statute or regulation prevents the Secretary or the Credit Council from advising the Administrator about loan guarantee applications.  Plaintiff is correct that under 46 U.S.C. § 53702(a), the Administrator has authority to make a guarantee "on terms the . . . Administrator may prescribe."  While the Administrator is the final decision maker, nothing prevents him from considering the recommendations of other parties, including the Secretary and the Credit Council.  In fact, the statute allows the Administrator to consider any factors he deems proper in making a decision on a loan guarantee.  *Id.*  By Plaintiff's own admission, that is what the Administrator did here:  In both of his letters to Plaintiff he stated that his decision was "informed by, but not dependent upon, the Credit Council's recommendation."  Supp. Compl. ¶¶ 50, 61.

Nothing in § 53702(a) precludes the Secretary or Credit Council's involvement in decision making.  Although Congress changed the statute in 2006 to make the Administrator the final decision maker, instead of the Secretary, the changed language did not strip the Secretary of any involvement in the evaluation process.  *See* National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 3507, 119 Stat 3136 (2006).  Had Congress wanted to explicitly prevent the Administrator's receipt of advice from either the Secretary or the Credit Council, it could have plainly precluded their involvement.  Its failure to do so does not restrict the Secretary's ability to be involved in the Title XI application process, just as he was before this statutory change.  *See Kucana v. Holder*, 558 U.S. 233, 130 S. Ct. 827, 838-39 (2010) (finding that "had Congress" wanted to do something, "it could have so specified" and

interpreting "the Legislature's silence" as meaning that "Congress left the matter where it was" before the act was passed).   The statute is not ambiguous and thus the Court must not look beyond its plain terms, which do not exclude the Secretary's or Credit Council's recommendations.[6]   *Whitfield v. United States*, 543 U.S. 209, 215-16 (2005). ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history.").

Moreover, the Secretary's and the Credit Council's involvement is permissible under the hierarchy set out by Congress.   49 U.S.C. § 109 provides that

> The head of the Maritime Administration . . . shall *report directly* to the Secretary of Transportation and carry out the duties *prescribed by the Secretary*. . . . All duties and powers of the Maritime Administration are *vested* in the Secretary.

49 U.S.C. § 109(b), (d) (emphasis added).   One duty "prescribed by the Secretary" is to submit applications for loan guarantees to the Credit Council for review and recommendation.   The Secretary requires that all of his subordinates who administer credit programs take part in Credit Council review in order "to ensure the application of consistent credit policies and management practices across all DOT credit programs."   Ex. A, DOT Order 2301.1B at 2.   Thus, Section 109 provides the Secretary authority to administer his Department in the manner he sees fit, including requiring the MarAd and its Administrator to follow his orders and submit loan guarantee applications to the Credit Council.   *See Hein v. Freedom From Religion Found., Inc.*, 551 U.S.

---

[6] Moreover, the legislative history cited by Plaintiff is not persuasive.   Supp. Compl. ¶¶ 24-25.   The relevant statutory amendment occurred in 2006.   National Defense Authorization Act for Fiscal Year 2006, § 3507, 119 Stat 3136.   Plaintiff wrongly looks for support from the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-191, § 3527(a), 122 Stat. 3 (2008).   *See* Supp. Compl. ¶¶ 22-24.     The 2008 Act *postdates* the relevant statutory change by two years and does not to specifically address the change of authority to the Administrator.   "'[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'"   *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117-18 (1980) (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)).

587, 612 (2007) (cautioning that courts must not be "deputize[d]" into serving as "continuing monitors of the wisdom and soundness of Executive action" because such is "most emphatically . . . not the role of the  judiciary") (internal quotation marks and citation omitted); *Id.* at 617 (Kennedy, J., concurring) ("The courts must be reluctant to expand their authority by requiring intrusive and unremitting judicial management of the way the Executive Branch performs its duties.").

Both statutes, 46 U.S.C. § 53702(a) and 49 U.S.C. § 109, are applicable here and they must be read in harmony and given their full effect.  "'It is, of course, a cardinal principle of statutory construction that" where two statutes appear to conflict, they should "whenever possible, statutes should be read consistently." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 524 (1986) (citation omitted).  The statutory provisions here leave room for the Credit Council and the Secretary to advise and make recommendations to the Administrator on pending loan guarantees, although the final decision belongs to the Administrator.  The Credit Council only makes a recommendation to the Administrator, and it did so in this case.  *See* Ex. A at 3-4; Ex. B at 2; Ex. C. at 2.  Consequently, the Credit Council's recommendation does not conflict with the Administrator's prerogative to make loan guarantees under 46 U.S.C. § 53702(a).

No statute or regulation prevents the Secretary and the Credit Council from advising the Administrator about loan guarantee applications, and thus such action by Defendants cannot be "contrary to law" under the APA.  Plaintiff has failed to state a claim for relief and this claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted and this case should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) & (6).

DATED: January 18, 2013

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director

/s/ Karen P. Seifert
KAREN P. SEIFERT
Trial Attorney (NY Bar)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6112
Washington, D.C. 20530
Tel. (202) 305-0891 / Fax: (202) 616-8470
Email: karen.p.seifert@usdoj.gov

*Attorneys for Defendants*