**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN PETROLEUM TANKERS PARENT LLC, | ) ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:12-CV-001165-CKK |
| | ) | |
| v. | ) | Defendants' Reply on Motion to Dismiss |
| | ) | |
| The UNITED STATES OF AMERICA, *et al.*, | ) ) | Fed. R. Civ. P. 12(b)(1) & (6) |
| | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE SUPPLEMENTAL COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION.................................................................................................... 1

ARGUMENT ......................................................................................................... 2

    I.      Plaintiff's Efforts to Recuse the Administrator Must Be Dismissed
           by the Court, Regardless of How They Are Labeled................................. 2

          A.     The Language of the Complaint States a
                 Third Cause of Action................................................... 2

          B.     Plaintiff's Third Cause of Action Must Be Dismissed ................... 3

          C.     Plaintiff May Not Seek This "Additional Remedy,"
                 in Any Event ................................................................ 4

    II.     The Denial of Plaintiff's Application Is Committed to Agency
           Discretion and Plaintiff Has Failed to State an APA Claim ...................... 5

          A.     Nature of Defendants' Challenge.................................................... 5

          B.     The Agency's Decision Is Committed to Discretion ...................... 6

                1.     Precedent for Evaluating Commitment to Agency
                         Discretion Is Broader Than Plaintiff Implies...................... 6

                 2.     Application of Precedent Shows That the Denial of
                         Plaintiff's Application Is Committed to
                         Agency Discretion ........................................................... 8

                      i.   Nature of the Administrative Action............................. 8

                      ii.   Language and Structure of the Statute ....................... 11

    III.    Plaintiff Has Failed to State an APA Claim Regarding the
           Credit Council Because Its Involvement Is Permitted Under the Plain
           Language of the Statutes......................................................................... 15

          A.     The Plain Language of the Statutes Permit the Secretary's
                   and Credit Council's Involvement ............................................... 15

          B.     Court Need Not Rely on Other Sources of Statutory
                   Meaning, Which Support Defendant's Reading of the
                   Statutes In Any Event ................................................................. 19

                 1.     Plaintiff Misapplies Canons of Statutory
                         Interpretation, Which Favor Defendants' Reading........... 19

                 2.     Plaintiff Reliance on Legislative History Is Misguided.... 20

                 3.     Plaintiff's Interpretation of the Statute Is Unpersuasive... 22

   CONCLUSION ....................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>CASES</u>

*Adirondack Med. Ctr. v. Sebelius*,
  -- F. Supp. 2d --, Nos. 11-1671, 12-457, 2012 WL 4056114 (D.D.C. Sept. 17, 2012) ........... 20

\* *Air Transp. Ass'n of Am. v. Exp.-Imp. Bank*,
  878 F. Supp. 2d 42 (D.D.C. 2012) ................................................................ 8, 10

*Am. Cyanamid Co. v. FTC*,
  363 F.2d 757 (6th Cir. 1966) ................................................................................ 5

*Amos Treat & Co. v. SEC*,
  306 F.2d 260 (D.C. Cir. 1962) ............................................................................. 5

*Blackman v. Dist. of Columbia*,
  456 F.3d 167 (D.C. Cir. 2006) ........................................................................... 16

*Cnty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*,
  502 U.S. 251 (1992) ........................................................................................... 19

*Cody v. Cox*,
  509 F.3d 606 (D.C. Cir. 2007) ............................................................................. 7

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ........................................................................................... 15

\* *Drake v. FAA*,
  291 F.3d 59 (D.C. Cir. 2002) ............................................................................... 8

*Edmond v. United States*,
  520 U.S. 651 (1997) ........................................................................................... 20

*FDIC v. Bender*,
  127 F.3d 58 (D.C. Cir. 1997) ............................................................................... 3

*Floyd v. Dist. of Columbia*,
  129 F.3d 152 (D.C. Cir. 1997) ............................................................................. 4

*Freeman United Coal Mining Co. v. OWCP*,
  999 F.2d 291 (7th Cir. 1993) ............................................................................. 22

*FTC v. Cement Inst.*,
  333 U.S. 683 (1948) ............................................................................................. 5

\* *Heckler v. Chaney,*
    470 U.S. 821 (1985) ........................................................................................ 6, 9

\* *Helgeson v. BIA,*
    153 F.3d 1000 (9th Cir. 1998) ...................................................................... 11, 13

*Hubbard v. United States,*
    514 U.S. 695 (1995) ........................................................................................... 21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    533 F.3d 1 (1st Cir. 2008) .................................................................................... 3

*Jarrott v. Scrivener,*
    225 F. Supp. 827 (D.D.C. 1964) ...................................................................... 22

*Kelly v. Robinson,*
    479 U.S. 36 (1986) ............................................................................................. 21

\* *Lincoln v. Vigil,*
    508 U.S. 182 (1993) ......................................................................................... 7, 9

*Morton v. Mancari,*
    417 U.S. 535 (1974) ........................................................................................... 19

*N. W. Ry. Co. v. United Transp. Union,*
    402 U.S. 570 n.18 (1971) .................................................................................. 20

*Nat'l Rifle Assn. v. Fed. Election Comm'n,*
    854 F.2d 1330 n.11 (D.C. Cir. 1988) ................................................................. 3

\* *Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ............................................................................................... 4

*Omni Capital Intern., Ltd. v. Rudolf Wolff & Co.,*
    484 U.S. 97 (1987) ............................................................................................. 24

*Panama Canal Co. v. Grace Line, Inc.,*
    356 U.S. 309 (1958) ........................................................................................... 11

\* *Phrasavang v. Deutsche Bank,*
    656 F. Supp. 2d 196 (D.D.C. 2009) .................................................................... 3

*Randall v. Loftsgaarden,*
    478 U.S. 647 (1986) ........................................................................................... 20

*Rodriguez v. United States*,
     480 U.S. 522 (1987) ............................................................................................................ 22

*Sec'y of Labor v. Twentymile Coal Co.*,
     456 F.3d 151 (D.C. Cir. 2006) ............................................................................................. 8

*Shannon v. United States*,
     512 U.S. 573 (1994) ............................................................................................................ 21

*Sierra Club v. Jackson*,
     648 F.3d 848 (D.C. Cir. 2011) ............................................................................................. 8

*Skokie Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
     400 F. Supp. 1016 (N.D. Ill. 1975) ..................................................................................... 5

*Taylor v. Islamic Republic of Iran*,
     811 F. Supp. 2d 1 (D.D.C. 2011) ......................................................................................... 4

*Texaco, Inc. v. FTC*,
     336 F.2d 754 (D.C. Cir. 1964) ............................................................................................. 5

*United States v. Gonzales*,
     520 U.S. 1 (1997) .......................................................................................................... 19, 20

*United States v. Monsanto*,
     491 U.S. 600 (1989) ........................................................................................................... 19

*United States v. Morgan*,
     313 U.S. 409 (1941) ............................................................................................................. 5

*United States v. Wiltberger*,
     18 U.S. (5 Wheat.) 76 (1820) ............................................................................................. 19

*Ventura v. Shalala*,
     55 F.3d 900 (3d Cir. 1995) ................................................................................................... 5

## **STATUTES**

2 U.S.C. § 661c .............................................................................................................................. 8

5 U.S.C. § 551(13) ..................................................................................................................... 3, 4

5 U.S.C. § 701(a)(2) ................................................................................................................... 6, 7

5 U.S.C. § 706(2) .................................................................................................................... 15, 18

12 U.S.C. § 635(b)(1)(B) ............................................................................................................ 10

46 U.S.C. § 53701 ...................................................................................................................... 18

46 U.S.C. § 53702 ................................................................................................................ passim

46 U.S.C. § 53703(b) .................................................................................................................. 12

46 U.S.C. § 53707 ...................................................................................................................... 12

46 U.S.C. § 53708(a) .................................................................................................................. 12

49 U.S.C. § 106 .......................................................................................................................... 23

49 U.S.C. § 109 .................................................................................................................... passim

49 U.S.C. § 701(a) ...................................................................................................................... 24

49 U.S.C. § 703(c) ...................................................................................................................... 24

## **REGULATIONS**

46 C.F.R. § 298.23(a).................................................................................................................. 11

46 C.F.R. Part 298....................................................................................................................... 12

## INTRODUCTION

Title XI of the Merchant Marine Act of 1936 authorized the Maritime Administration ("MarAd") to issue loan guarantees to "foster the development and encourage the maintenance of" the U.S. merchant marine and U.S. shipyards.  Merchant Marine Act of 1936, § 101, Pub. L. No. 74-835, 49 Stat. 1985 (1936).  Title XI funds do not exist for the benefit of any particular applicant; this is not an entitlement program for failing businesses who made risky investment decisions.  Rather, these funds are for the benefit of the United States, which seeks to have a capable and ready merchant marine through a strong maritime industry.  As the steward of these funds, especially given the current financial climate, the Maritime Administrator carefully evaluates loan guarantee applications to determine if the limited Title XI resources should be provided because a loan guarantee best furthers these statutory purposes and goals.

Plaintiff American Petroleum Tankers Parent ("APT") asks the Court to second-guess the Administrator's judgment that Title XI funds are not best spent on Plaintiff's application, which seeks a loan guarantee in order to refinance its existing high-interest debt.  Plaintiff's Opposition to the Motion to Dismiss asserts that the Administrator, the Secretary of Transportation, and the Department of Transportation's Credit Council have all inappropriately evaluated Plaintiff's loan guarantee application.  However, Plaintiff has failed to state any claim against Defendants under the Administrative Procedure Act ("APA"), as a matter of law.  Congress wisely did not limit the Administrator's discretion to deny loan guarantee applications for any reason, including the fact that an application would expend too much of the agency's limited resources, especially given other pending applications.  That exercise of discretion is not subject to judicial review under the APA.  Additionally, Congress did not prevent the Secretary or the Credit Council from reviewing applications for Title XI funds in furtherance of good governance objectives and, thus, their

actions in this case are not contrary to law and do not violate the APA.  Finally, the APA does not provide this Court ability to recuse the Administrator, a Senate-confirmed officer, from exercising his discretion to deny Plaintiff's application.  The Court should dismiss this case in its entirety.

<u>**ARGUMENT**</u>

I.     **Plaintiff's Efforts to Recuse the Administrator Must Be Dismissed by the Court, Regardless of How They Are Labeled**

**A.  The Language of the Complaint States a Third Cause of Action**

Plaintiff's Opposition attempts to recharacterize its Third Cause of Action as "only a remedy," and thus prevent the Court from dismissing it.  Pl.'s Mem. Opp'n to Motion to Dismiss 31 ("Pl.'s Opp'n"), Jan. 29, 2013 (ECF No. 19).  But Plaintiff is beholden to the plain language of its own Complaint.  The Third "Cause of Action" states that

> Past interference . . . with the Administrator's performance of his ministerial and discretionary responsibilities regarding APT's Title XI applications has so infected and prejudiced the deliberative process used by, and the judgment of, the incumbent Administrator that he is incapable of fairly assessing the merit of APT's Title XI application.

Supp. Compl. ¶ 115, Dec. 10, 2012 (ECF No. 14).  The Cause of Action then seeks a remedy:

> ACCORDINGLY, the Court should issue an order (a) requiring that the incumbent Administrator revoke his August 1, 2012 denial of APT's original Title XI application and his November 9, 2012 denial of APT's modified application and to *recuse himself from any further participation in the consideration of APT's application.*

*Id.* (emphasis added).

Plaintiff itself labeled this claim its "Third Cause of Action," which states both a claim and a request for relief distinct from Plaintiff's other two claims under the APA.  *See id.* ¶¶ 102-07 (making a claim under the APA for review of the agency's decision and seeking remand to the agency); *id.* ¶¶ 108-14 (making a claim under the APA regarding the Secretary and Credit

Council and seeking an order enjoining their further involvement).  Plaintiff cannot so easily "distance" itself "from [its] own complaint."  *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 533 F.3d 1, 5 (1st Cir. 2008) ("What matters here is what plaintiffs pled. . . ."); *see Nat'l Rifle Assn. v. Fed. Election Comm'n*, 854 F.2d 1330, 1335 n.11 (D.C. Cir. 1988) (rejecting plaintiff's interpretation of the complaint as belied by "plain language" of the complaint itself).

### B.  Plaintiff's Third Cause of Action Must Be Dismissed

To the extent the Third Cause of Action is an independent claim, it must be dismissed on several grounds.  First, this claim does not allege a cause of action under any statute, including the APA.  Plaintiff, addressing this issue in a footnote, asserts that it has "unarguably stat[ed] a claim under the APA."  The Third Cause of Action does not actually cite the APA and the APA does not cover this claim, in any event.  The APA only provides a claim for review of an "agency action," defined as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13)).  The "administrator's performance of his ministerial and discretionary responsibilities," Supp. Compl. ¶ 115, is not an "agency action" within the meaning of the statute.  The Opposition fails to respond to this argument and has conceded it.  Pl.'s Opp'n 31-35; *see also Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009) (citing *FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997)) (party's failure to address an argument in an opposition is a concession); *see also* L. Civ. R. 7(b).

Second, for the same reasons, the United States has not waived sovereign immunity for a claim reviewing the Administrator's "performance of his ministerial and discretionary responsibilities."  Supp. Compl. ¶ 115.  Plaintiff wrongly alleges that the APA provides a waiver of sovereign immunity.  Pl.'s Opp'n 32.  The APA's waiver of immunity is limited to claims seeking review of a "discrete agency action," as defined in the APA.  *Norton v. S. Utah*

*Wilderness Alliance*, 542 U.S. 55, 62 (2004) (*SUWA*) (requiring that purported conduct fall within § 551(13)). "Without a record of federal agency action, [plaintiffs] have no APA cause of action and therefore no waiver of sovereign immunity." *Floyd v. Dist. of Columbia*, 129 F.3d 152, 156 (D.C. Cir. 1997) (no "agency action" where "no federal agency offered any interpretation or took any reviewable action"). APT fails to respond to Defendants' assertion that the Third Cause of Action does not seek review of a "discrete agency action," and Plaintiff has conceded this argument. *See* Pl.'s Opp'n 32, 35 n.12 (arguing that the Third Cause of Action states an APA claim, but failing to address what "agency action" is to be reviewed).

### C. Plaintiff May Not Seek This "Additional Remedy," in Any Event

To the extent the Court accepts Plaintiff's recharacterization of this claim as only seeking a remedy, it must still be dismissed. A remedy does not exist independent of a claim. *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 16-17 (D.D.C. 2011) (stating that a claim must allege "an independent cause of action" and not just a remedy). Had Plaintiff been seeking recusal as remedy for either APA claim, the Complaint would have stated as such in the request for relief, *see* Supp. Compl. ¶¶ 107, 114.

In any event, recusal is not a remedy available under the APA, and Plaintiff may only pursue a remedy that is available on claims actually pled, *see Taylor*, 811 F. Supp. 2d. at 17.

> [T]he only agency action that can be compelled under the APA is action legally *required*. This limitation appears in § 706(1)'s authorization for courts to 'compel agency action *unlawfully* withheld.' . . . [Section] 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'

*SUWA*, 542 U.S. at 63 (citation omitted). The Court may not order recusal because no statute or regulation "compel[s]" the Administrator to recuse himself in certain circumstances, nor has any been cited by Plaintiff. Moreover, an order from this Court "disqualify[ing]" the Administrator

and forcing him to "recuse" himself would be "directing [the agency] how it shall act," in direct contravention to *SUWA*.

Plaintiff has failed to cite any authority that allows the Court to order recusal of an agency official on an APA claim.  *See* Pl.'s Opp'n 32-33.  None of the cases cited by Plaintiff support the view that recusal is a remedy for APA claims like the ones at issue in this case.  Pl.'s Opp'n 32-33 (citing *Amos Treat & Co. v. SEC*, 306 F.2d 260, 267 (D.C. Cir. 1962) (remanding to SEC "solely on due process grounds"); *Texaco, Inc. v. FTC*, 336 F.2d 754, 760 (D.C. Cir. 1964) (participation of agency official "amounted . . . to a denial of due process"); *United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (prior to enactment of APA); *FTC v. Cement Inst.*, 333 U.S. 683, 701-02 (1948) (reviewing claim under the Federal Trade Commission Act); *Am. Cyanamid Co. v. FTC*, 363 F.2d 757, 763 (6th Cir. 1966) (due process claim); *Skokie Fed. Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 400 F. Supp. 1016, 1018-19 (N.D. Ill. 1975) (due process claim); *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (due process claim)).  Nor is Plaintiff's citation to Administrative Order 10-2, "Designation and Delegation of Authority to Act as the Maritime Administrator," helpful.  Pl.'s Opp'n 33-34.  The Order only provides the Deputy Administrator authority in the Administrator's absence, *id.* at 34, but does not *require* recusal of the Administrator.  It is not authority on which the Court can compel recusal under the APA.

## II.    The Denial of Plaintiff's Application Is Committed to Agency Discretion and Plaintiff Has Failed to State an APA Claim

### A.  Nature of Defendants' Challenge

The Administrator's denial decision is committed to agency discretion because the statute does not limit the reasons for which the Administrator deny an application, including because of the limited availability of Title XI funds or the application's failure to best promote the goals of the Title XI program.  Defs.' Motion to Dismiss ("Defs.' MTD") 17-19, Jan. 18, 2013 (ECF No.

18).  No statute or regulation provides guidance as to what factors are relevant for denials of applications or how the agency must allocate limited resources to further the goals of the Title XI Program.  If the Court were to evaluate a decision to deny an application, it "would have *no meaningful standard* against which to judge the agency's exercise of discretion.  In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (emphasis added).

The Opposition mistakes the forest for the trees.  Defendants did not argue that no standards are applicable to Title XI applications.  The relevant statute requires that certain factors must be considered prior to *approving* an application—*e.g.* economic soundness.  *See* Pl.'s Opp'n 11-13.  But this does not undermine the validity of Defendants' argument regarding the *denial* of an application.  Even if the agency applied each statute and regulation in the manner advocated by Plaintiff, the Administrator would still be at liberty to deny APT's application, for the policy concerns stated in the Administrator's denial letters or otherwise.  The question for this Court is not whether it could individually evaluate a *piece* of the Administrator's *evaluation*, but rather whether sufficient standards exist for it to meaningfully evaluate the *denial* decision, given that the statute does not limit the grounds for denial and that the decision necessitated "deal[ing] with the many variables involved in the proper ordering of [the agency's] priorities" and balancing those considerations in making a final decision.  *See Heckler*, 470 U.S. at 831-32.

**B.  The Agency's Decision Is Committed to Discretion**

**1.  Precedent for Evaluating Commitment to Agency Discretion Is Broader Than Plaintiff Implies**

Although the parties agree that the APA's judicial review provision do not apply to agency decisions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), Plaintiff wrongly implies that there are only three instances in which that exception to APA review

applies.  *See* Pl.'s Opp'n 5.  The Supreme Court has stated that "[o]ver the years, we have read § 701(a)(2) to preclude judicial review of *certain categories* of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'"  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (emphasis added).  Although the Court in *Lincoln* went on to reference those categories of decisions, it did not limit the application of the "committed to agency discretion" exception to only those categories.  *Id.*  In fact, in *Lincoln*, the Supreme Court found that the particular agency action challenged—the Bureau of Indian Affairs' ("BIA") decision to end a health service for Indian children—*was* committed to agency discretion, despite that it did not fall within the "traditional[]" categories, and noted that the BIA's decision was similar to the types of decisions that had previously been found committed to agency discretion.  *Id.* at 191, 192.  Neither the Supreme Court, nor the D.C. Circuit, has limited the application of this exception to *only* the three categories named by Plaintiff.  *See Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (noting only that the challenged decision "does not fall into one of the narrow categories that *usually satisfies*" the exception and referencing *Lincoln* (emphasis added)).[1]

Rather, the D.C. Circuit has provided clear guidance for how to evaluate whether a decision is committed to agency discretion.

> [Section] 701(a)(2) encodes the principle that an agency cannot abuse its discretion, and thus violate § 706(2)(A), where its governing statute confers such broad discretion as to essentially rule out the possibility of abuse.  In determining whether a matter has been committed solely to agency discretion, we consider both the *nature of the administrative action* at issue and the *language and structure of the statute* that supplies the applicable legal standards for reviewing that action.  The Supreme Court has recognized that certain categories of administrative decisions, including refusals to take enforcement actions, are *presumptively* outside the bounds of judicial review.

---

[1] In fact, the *Lincoln* Court specifically mentioned another category *not* mentioned by Plaintiff—"an agency's refusal to grant reconsideration of an action because of material error" —which belies that only three categories exist.  *Lincoln*, 508 U.S. at 191.

*Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) (citations omitted) (emphasis added).  The D.C.

Circuit has repeatedly used this two-part test to evaluate the applicability of the "committed to

agency discretion" exception.  *See Sierra Club v. Jackson*, 648 F.3d 848, 850, 855 (D.C. Cir.

2011) (citing *Drake* and finding that the EPA Administrator's decision not to "prevent the

construction of three proposed pollution-emitting facilities" was committed to agency

discretion); *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (finding

unreviewable the Secretary of Labor's decisions not to issue safety citations due to the nature of

the action and the fact that the statute provided no standard); *see also, e.g.*, *Air Transp. Ass'n. of

Am. v. Exp.-Imp. Bank*, 878 F. Supp. 2d 42, 66 (D.D.C. 2012) (apply the two-part test of *Drake*).

Applying the two-part test of *Drake*, the Administrator's decision to deny Plaintiff's application

is "committed to agency discretion."

### 2. Application of Precedent Shows That the Denial of Plaintiff's Application Is Committed to Agency Discretion

### i. Nature of the Administrative Action

The nature of the administrative action at issue weighs in favor of finding a commitment

to agency discretion.  At its core, the Administrator's decision to deny a loan guarantee

application is based on his determination that the United States' interest in "foster[ing] the

development and encourage[ing] the maintenance of" a U.S. merchant marine is not best

furthered by allocating funds to a particular applicant.  Merchant Marine Act of 1936, § 101, 49

Stat. 1985.  MarAd's ability to provide Title XI loan guarantees is limited by Congress's

appropriation of money for that purpose.  2 U.S.C. § 661c(b).  The Administrator's decision

whether to approve or deny a loan guarantee application is, thus, always a decision about when

and whether to spend down this limited pool of resources.  Thus, underlying any denial of an

application is a decision by the Administrator that the Title XI program is not best furthered through the allocation of limited appropriated funds to a particular applicant.

How an agency should allocate its resources is the type of decision that is left to the agency's discretion.  In *Lincoln*, the Court explained that how an agency spends a lump-sum appropriation is committed to agency discretion.  508 U.S. at 192.  Given a limited resource, the agency must "adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."  *Id.* at 192.  Citing *Heckler v. Chaney*, the Supreme Court in *Lincoln* noted that how an agency "allocat[es]" its funds involves "a complicated balancing of a number of factors which are peculiarly within its expertise," including "whether its 'resources are best spent' on one program or another," "whether a particular program 'best fits the agency's overall policies' and, 'indeed, whether the agency has enough resources, to fund a program 'at all.'"  *Id.* at 191, 193 (citing *Heckler*, 470 U.S. 831-32).[2]  Although the funds at issue here are not lump-sum appropriations, the analysis of *Lincoln* prevails—one need only substitute the word "application" for "program" in the above quotation to see the applicability of *Lincoln*'s analysis to this case.

These considerations, discussed in *Lincoln*, are the same considerations mentioned in the Administrator's denials of Plaintiff's application.  In both his denial letters, the Administrator stated that other pending applications were equally useful to the United States as naval and military auxiliaries.  Defs.' MTD Ex. B at 5; *id.* Ex. C. at 9.  The Administrator also stated that APT's application, if approved, would "nearly exhaust available resources" and leave the agency

---

[2] Contrary to Plaintiff's claim, the Supreme Court in *Lincoln* itself found similarity between an agency's decision about how to allocate funds and the decision about whether to enforce a statute, *Lincoln*, 508 U.S. at 192.  *Contra* Pl.'s Opp'n 16 ("Government enforcement action involves conduct of an entirely different order than a decision on a loan guarantee").  As described in Defendants' opening brief, the decision to make a loan guarantee is invariably a decision about allocation of resources.  Defs.' MTD 19-20.

unable to consider pending and forthcoming applications that may be more "preferable" than Plaintiff's.  Defs.' MTD Ex. C at 10; *see also id.* Ex. B. at 7.  Further, the Administrator stated that other applications did not involve refinancing of current vessels, but rather building of new vessels.  Defs.' MTD Ex. C at 11; *id.* Ex. B. at 7.  The Administrator's letters reflect his analysis that Plaintiff's application did not best promote the purposes of the Merchant Marine Act and the Title XI program, given the limited resources available and his inability to approve every Title XI application.

Plaintiff does not specifically attack the nature and characteristics of the agency's decision, but rather inaccurately cites aspects of two cases, relied upon by Defendants, in support of its opposition.  Pl.'s Opp'n 14-15.  First, the Court in *Air Transportation Association of America v. Export-Import Bank* ("*ATAA*") actually found that the nature of the administrative action showed a commitment to agency discretion.  Pl.'s Opp'n at 15.  In that case, several domestic airlines brought an APA challenge to the Bank's decision to issue a loan guarantee to Air India.  878 F. Supp. 2d at 47.  Although the Court later determined that the second prong of the *Drake* test (language and structure of the statute) was not met, Judge Boasberg nonetheless determined that "the nature of the administrative action at issue—the decision to issue a loan guarantee—tends to suggest that the agency's discretion should govern."[3]  878 F. Supp. 2d at 66.

Second, although *Helgeson v. BIA* comes from a sister circuit, it is instructive and also shows that the nature of the administrative action favors a commitment to agency discretion.  153

---

[3] Addressing the second prong of the *Drake* test, Judge Boasberg found that "[i]n more than one instance, moreover, the statute uses mandatory language in imposing upon the Bank specific responsibilities with respect to domestic interests."  878 F. Supp. 2d at 66.  The statute mandated that the Bank consider a specific factor in making loan determinations, and the Bank's alleged failure to do so was reviewable by the court.  *Id.* (citing 12 U.S.C. § 635(b)(1)(B) ("Board of Directors *shall* take into account" effects on U.S. industry)).  The statutes at issue here provide no similar requirements of what the Administrator must consider in denying a loan application, and thus this reasoning in *AATA* is not applicable.

F.3d 1000 (9th Cir. 1998).  That case involved the same type of action at issue here—the *denial*

of a loan application.  *Id.* at 1002.  The Ninth Circuit discussed the "nature" of such an action:

> Further, the question of whether, and in what amount, a government loan should
> be afforded is an area of executive action usually reserved to agency discretion as
> involving "nice issues of judgment and choice . . . which require the exercise of
> informed discretion." Discretionary government loans generally constitute such
> an executive action, for it is not our proper function to sit as a judicial loan review
> committee.

*Id.* at 1004 (quoting *Panama Canal Co. v. Grace Line*, Inc., 356 U.S. 309, 317 (1958)).

Plaintiff's argument ignores both courts' analysis of the "nature of the administrative action,"

which favors that the Administrator's denial decision is committed to agency discretion.

### ii.  Language and Structure of the Statute

The language and structure of the statutes and regulations demonstrate that the decision

to deny a loan application is committed to agency discretion.  First, as a general matter, the

statutes and regulations provide the Administrator complete discretion about whether and when

to make a loan guarantee.

> [The] Administrator, on terms the . . . Administrator may prescribe, *may*
> guarantee or make a commitment to guarantee the payment of the principal of and
> interest on an obligation eligible to be guaranteed under this chapter.

46 U.S.C. § 53702(a) (emphasis added).   MarAd's regulations implementing the statutory

language do not further limit the Administrator's discretion, or otherwise bind the agency to

issue a loan guarantee under certain circumstances.  46 C.F.R. § 298.23(a) provides that "We

*may* approve guarantees of Obligations to be secured by one or more Vessels or a Shipyard

Project issued to refinance existing Title XI debt for either Vessels or for Shipyard Project and

existing non-Title XI debt."   As the Administrator stated in both his letters to Plaintiff, "the

Federal Ship Financing Program is discretionary." Defs.' MTD Ex. B at 1; *id.* Ex. C at 2.[4] The Opposition does not specifically challenge the discretionary nature of 46 U.S.C. § 53702(a), nor does it cite to any statute or regulation mandating that loan guarantees be made in certain circumstances. Pl.'s Opp'n 17-19.

Second, the statutes and regulations place *no* limitation on what factors the Administrator considers in *denying* a loan guarantee application. As explained in the opening brief, the relevant authorities provide a *floor* of what must be considered prior to *approving* a loan guarantee. Defs.' MTD 19. For instance, a loan guarantee "may not" make a guarantee "unless": it is "economically sound," 46 U.S.C. § 53708(a); certain statutory factors are met, *id.* § 53703(b); and the borrower is responsible, *id.* § 53707. These factors do not purport to be an exclusive list; they do not set a *ceiling* on the factors that the Administrator may consider in approving applications.[5] More specific to this case, this language does not apply to the *denial* of an application *at all*, but rather only restricts approving an application "unless" certain factors are met. 46 U.S.C. §§ 53708(a); 53703(b); 53707. Thus, when read together, the language and

---

[4] Plaintiff objects that the Administrator's letters did not also state that the Administrator's decision is "committed to agency discretion by law." Pl.'s Opp'n 6. It is unclear why Plaintiff believes the Administrator would be required to make a legal argument such as this in his decision denying the application or what relevance such a statement would have to the Administrator's decision, in any event.

[5] Moreover, even the statutory provisions that apply to the approval of a loan guarantee provide the Administrator discretion in his evaluation. *See* 46 U.S.C. § 53707(a) ("[The] Administrator may not guarantee . . . [debt]. . . unless the . . . Administrator finds that the obligor is responsible and has the ability, experience, financial resources, and *other qualifications* necessary . . . . (emphasis added)); *id.* § 53708(a)(5) ("The Administrator may not guarantee . . . [debt] . . . unless the Administrator finds that the property or project . . . will be economically sound. In making that finding, the Administrator shall consider— . . . (5) *other relevant criteria* . . . ." (emphasis added)). MarAd's implementing regulations further evidence the Administrator's discretion. 46 C.F.R. Pt. 298. For instance, the Administrator has discretion in determining acceptable risk (§ 298.3(g)), whether the operator of the vessels possess the necessary experience, ability and other qualifications to properly operate and maintain the vessel (§ 2 98.12(a)), feasibility factors for finding economic soundness (§ 298.14(b)(6)), and additional assurances regarding not well established entities (§ 298.3(h)).

structure of the statute provide no limitation on the Administrator's authority to *deny* an application.

Plaintiff seems to argue that the Administrator may only consider the aforementioned factors in the statute, whether he approves or denies an application. *See* Pl.'s Opp'n 17 (stating that the factors apply "in deciding whether to approve or deny an application"). This reading of the statute leads to absurd results. If the Administrator could only deny an application on basis of the aforementioned factors, the Administrator would be forced to approve any application that met these factors (which purport to be minimum criteria, in any event), even if the agency did not have sufficient funds to provide the requested loan guarantee. Additionally, the Administrator would be unable to decide between two identical applications that were both equally sound. Such a reading is not only unsupported by the language and structure of the statute, but contravened by common sense. The Federal Ship Financing Program is not an entitlement program. Rather, the Administrator must carefully allocate this limited pool of resources when doing so best furthers the purposes of the Merchant Marine Act.

Moreover, Plaintiff fails to cite to any language in the statute that implies such a restriction on the Administrator's ability to deny applications. Plaintiff's reference to *Helgeson* is unpersuasive, as the court's reasoning in that case supports a commitment to agency discretion here. In *Helgeson*, the Ninth Circuit found that the statute at issue restricted the factors the Secretary of Interior could consider in deciding whether an applicant was eligible for a BIA loan.[6] 153 F.3d at 1003 ("Loans *may be made only when*, in the judgment of the Secretary, there

---

[6] Plaintiff faults Defendants' citation to *Helgeson*, Pl.'s Opp'n 14 (stating the precedent is "not binding"), but simultaneously cites *Helgeson* for its own support, Pl.'s Opp'n 19 (stating that *Helgeson* "is actually instructive"). Defendants agree that the case is helpful because of the similarities of the "nature of the administrative action" as well as the Court's analysis of the discretion provided by statute. 153 F.3d at 1002-04.

is a reasonable prospect of repayment, and only to applicants who in the opinion of the Secretary are unable to obtain financing from other sources on reasonable terms and conditions." (emphasis added)).  But the Ninth Circuit also noted that these statutory eligibility factors did not limit the Secretary's ability to deny a loan application.

> The statute does not equate loan eligibility with loan entitlement, but provides that loans "may" be issued to eligible applicants. Hence, *even if* the Helgesons had met eligibility criteria, *the statute proffered no guarantee that they would receive a loan.*

*Id.* at 1004 (emphasis added).  The same holds true here, especially because the statute in this case provides more discretion than that in *Helgeson*.  46 U.S.C. § 53702(a) simply states that the Administrator, "on terms the . . . [he] may prescribe, may guarantee or make a commitment to guarantee."  Nothing in this language, or the structure of the statute, limits the factors on which the Administrator can deny a loan application.  Nor does the plain language of the statute indicate that the usage of the word "terms" only allows the Administrator to dictate the terms of the loan guarantee itself, and not more broadly the terms on which he will (or will not) provide the loan guarantee.[7]  Pl.'s Opp'n 17.  To the contrary, and unlike Plaintiffs' cramped interpretation, *id.*, MarAd reads the word "terms" broadly as including the criteria on which the Administrator will (or will not) provide the loan guarantee in the first instance.[8]

In sum, the language and structure of the statute provide the Administrator wide discretion to deny Title XI applications, so much so that the Court would have no standard against which to meaningfully evaluate whether the factors considered by the Administrator were "proper" reasons for denying the application.

---

[7] The broad usage of the word "terms" only supports that the Administrator has discretion to decide whether and when a loan guarantee will be issued.

[8] To the extent the Court finds the statute ambiguous, MarAd's interpretation of the word "terms" in Section 53702(a) is reasonable, and Plaintiff can point to no MarAd statement or interpretation of the word "terms" to the contrary.

### III.   Plaintiff Has Failed to State an APA Claim Regarding the Credit Council Because Its Involvement Is Permitted Under the Plain Language of the Statutes

Defendants' Motion to Dismiss argues that, even if the Secretary and Credit Council acted in the manner stated in the Supplemental Complaint, Plaintiff has still failed to state a claim under the APA as a matter of law.  Defs.' MTD 22-23.  The plain language of the relevant statutes does not preclude the Secretary and the Credit Council from being involved in the Title XI application review process, as alleged by Plaintiff.  The Credit Council was established to ensure that credit decisions across all of the Department's sub-agencies are consistent with one another.[9]   Nothing in the statutes Plaintiff cites preclude this kind sensible approach to governance.  Thus, the Secretary's and Credit Council's actions are "in accordance with law" and not "in excess of statutory jurisdiction, authority, or limitations," and there is no APA violation, 5 U.S.C. § 706(2).  Contrary to Plaintiff's claim, Pl.'s Opp'n 24, Defendants' Motion to Dismiss is procedurally proper under Fed. R. Civ. P. 12(b)(6).

### A.   The Plain Language of the Statutes Permit the Secretary's and Credit Council's Involvement

Defendants' Motion to Dismiss presents a statutory interpretation question that is resolved by looking at the plain language of the applicable statutes.  "When the words of a statute are unambiguous . . . this first canon [(plain meaning)] is also the last: 'judicial inquiry is complete.'"  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in

---

[9] The Credit Council was created out of the Secretary's management authority.  It is an agency-wide body composed of officers from the Department's several subdivisions, including the Federal Highway Administration, the Federal Railroad Administration, and the Office of Small Business and Disadvantaged Business Utilization.  The Secretary created the Credit Council "to ensure the application of consistent credit policies and management practices across all DOT credit programs."  Defs.' MTD Ex. A at 2.  The Department's sub-agencies span eleven in number, and the Department's credit programs provide hundreds of millions of dollars in direct loans, lines of credit, and loan guarantees.

a statute what it says there."). "We start with the plain meaning of the text, looking to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. If the language has a plain and unambiguous meaning, our inquiry ends so long as the resulting statutory scheme is coherent and consistent." *See Blackman v. Dist. of Columbia*, 456 F.3d 167, 176 (D.C. Cir. 2006) (internal quotation marks and citations omitted).

The plain language of the applicable statutes defines the scope of the Secretary's and the Credit Council's involvement in the Title XI application process. Two different provisions are applicable here. First, 46 U.S.C. § 53702(a) places authority for issuing Title XI loan guarantees in the Administrator.

> The . . . Administrator, on terms the . . . Administrator may prescribe, may guarantee or make a commitment to guarantee the payment of the principal of and interest on an obligation eligible to be guaranteed under this chapter.

46 U.S.C. § 53702(a). The Administrator is the decision-maker on Title XI applications and has discretion about whether and when to issue loan guarantees. However, contrary to Plaintiff's claim, nothing in the statute's language "specifically . . . "eliminate[s] [the Credit Council's] interference" in the Title XI application process. Pl.'s Opp'n 24.

This provision must be read in context of "the broader context of the statute as a whole," which contains other statutory provisions governing how MarAd and the Administrator function within the Department of Transportation's structure. *Blackman*, 456 F.3d at 176. 49 U.S.C. § 109 provides that

> The head of the Maritime Administration . . . shall *report directly* to the Secretary of Transportation and carry out the duties prescribed by the Secretary. . . . All duties and powers of the Maritime Administration *are vested in the Secretary*.

*Id.* (emphasis added). This provision makes clear that MarAd is an interior office to the Department of Transportation, and that Administrator is an inferior officer to the Secretary.

16

Moreover, by vesting the Secretary with "all" of MarAd's "duties and powers," *id.*, the statute dictates that the Secretary ultimately controls all of MarAd's responsibilities.

The plain language of these statutory provisions permits the Secretary's and the Credit Council's involvement in the Title XI application process. The statutes provide authority for the Secretary to be involved in all MarAd decisions and issues, even if he is not specifically making a decision himself. The statute, thus, leaves room for the Secretary and the Credit Council to review pending applications and provide a recommendation to the Administrator regarding the issuance of a Title XI guarantee. Plaintiff admits that the "bare words" of these provision lead to a "reasonabl[e] conclu[sion] that the Secretary may properly inject his Credit Council into the Title XI application evaluation process." Pl.'s Opp'n 29.

Moreover, *nothing* in these, or any other statute, restricts the Secretary and the Credit Council from taking *any* of the actions alleged in Plaintiff's Supplemental Complaint. *See* Pl.'s Opp'n 23-24. The only other statutory provisions Plaintiff cites for support are sections of the National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3 (2008). Pl.'s Opp'n 25-27. Plaintiff specifically cites two sections: First, Section 3517 states

> (a) FINDINGS.—The Congress makes the following findings:
>> (1) The maritime loan guarantee program was established by the Congress through the Merchant Marine Act, 1936 to encourage domestic shipbuilding by making available federally backed loan guarantees for new construction to ship owners and operators.
>> (2) The maritime loan guarantee program has a long and successful history of ship construction with a low historical default rate.
>> (3) The current process for review of applications for maritime loans in the Department of Transportation has effectively discontinued the program as envisioned by the Congress.
>> (4) The President has requested no funding for the loan guarantee program despite the stated national policy to foster the development and encourage the maintenance of a merchant marine in section 50101 of title 46, United States Code.

(5)  United States commercial shipyards were placed at a competitive disadvantage in the world shipbuilding market by government subsidized foreign commercial shipyards.

(6)  The maritime loan guarantee program has the potential to modernize shipyards and the ships of the United States coastwise trade and restore a competitive position in the world shipbuilding market for United States shipyards.

(7)  The maritime loan guarantee program is a useful tool to encourage domestic shipbuilding, preserving a vital industrial capacity critical to the security of the United States.

(b)  REQUIREMENTS.—

(1)  IN GENERAL.—Within 180 days after the date of enactment of this Act, the Administrator of the Maritime Administration shall develop and implement a comprehensive plan for the review of applications for loan guarantees under chapter 537 of title 46, United States Code.

Pub. L. No. 110-181, § 3517.  Second, Section 3522 amends various provisions of 46 U.S.C. § 53701 *et seq.* to vest the Administrator, as opposed to the Secretary, with authority to make Title XI loan guarantees.  *Id.* § 3522.  But nothing in either provision actually restricts the Secretary's and Credit Council's involvement in the Title XI application process, including the conduct described in Plaintiff's Supplemental Complaint.  The Opposition does not cite a single statute or regulation that even *mentions* the Credit Council.  Yet Plaintiff contends it was Congress's "purpose" to exclude these actors from Title XI decisions, despite the absence of statutory text prohibiting their involvement.  Pl.'s Opp'n 25-26.  Plaintiff's subjective view of what the statute must mean is not relevant.  What matters instead is that there is no specific statutory provisions showing that the Secretary's and the Credit Council's actions are contrary to law and in violation of the APA, 5 U.S.C. §706(2).

Because no statute prohibits the conduct complained of in the Supplemental Complaint, and other statutes provide authorization for the Secretary's involvement in MarAd decisions, the actions of the Secretary and the Credit Council are not "in excess of statutory jurisdiction, authority, or limitations," and do not violate the APA, 5 U.S.C. § 706(2).

### B. Court Need Not Rely on Other Sources of Statutory Meaning, Which Support Defendant's Reading of the Statutes, In Any Event

Rather than citing to applicable statutory language, Plaintiff asks this Court to apply statutory interpretation principles to find in its favor.  Pl.'s Opp'n 25-31 (referring to legislative history and canons of statutory construction).  Plain and clear statutes, such as these, do not need interpretation.  "'Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest.'" *United States v. Gonzales*, 520 U.S. 1, 8 (1997) (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95-96 (1820) (Marshall, C.J.)).  "[I]nterpretive canon[s are] not a license for the judiciary to rewrite language enacted by the legislature."  *United States v. Monsanto*, 491 U.S. 600, 611 (1989).  The Court need not, and should not, take up Plaintiff's invitation to look past the plain language of the statute.

### 1. Plaintiff Misapplies Canons of Statutory Interpretation, Which Favor Defendants' Reading

In any event, Plaintiff misapplies canons of statutory interpretation to support its argument.  The Court is confronted with two applicable statutes—46 U.S.C. § 53702(a), which vests authority in the Maritime Administrator to make Title XI loan guarantee decisions, and 49 U.S.C. § 109, which vests authority in the Secretary over all the "duties and powers of the Maritime Administration."  "Judges 'are not at liberty to pick and choose among congressional enactments, and when two [or more] statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"  *Cnty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 265 (1992) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).  The statutory

provisions can be read in harmony to allow the Secretary and the Credit Council to advise and make recommendations to the Administrator on pending Title XI loan guarantee applications, although the final decision belongs to the Administrator.

Plaintiff argues that it is "unnecessary to harmonize" these provisions because 46 U.S.C. § 53702(a) has repealed 49 U.S.C. § 109 by implication. Pl.'s Opp'n 30. Plaintiff cites to two maxims for support: that the "specific terms prevail over the general" and that the later in time provision prevails over an earlier provision. *Id.* at 30. Plaintiff contends that because 46 U.S.C. § 53702(a) is specific and later in time, it has stripped the Secretary of his authority over the MarAd and the Administrator, with respect to Title XI loan guarantees. Pl.'s Opp'n 30-31.

Plaintiff's argument for repeal by implication is based upon an apparent misunderstanding of canons of interpretation. Generally, "repeals by implication are not favored" and the Court must first attempt to give both statutes their effect. *Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986). Only where the Court finds statutory provisions to be "in conflict" would either statutory canon of interpretation apply to resolve the conflict. *See Edmond v. United States*, 520 U.S. 651, 657 (1997) (the canon applies when "a specific provision conflicts with a general one"); *Chi. & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 582 n.18 (1971) (where there is an "irreconcilable conflict" the later in time statute governs). "Here, there simply is no conflict" because the statutes can be read, and must be read, harmoniously. *See Adirondack Med. Ctr. v. Sebelius*, -- F. Supp. 2d --, Nos. 11-1671, 12-457, 2012 WL 4056114, at *7 (D.D.C. Sept. 17, 2012) (rejecting a similar argument).

### 2.   Plaintiff Reliance on Legislative History Is Misguided

Plaintiff refers to legislative history, which should not be considered and does not, in any event, support a prohibition of the Secretary and the Credit Council's involvement in the Title XI

application process.  "Given the straightforward statutory command, there is no reason to resort to legislative history."  *Gonzales*, 50 U.S. at 6.  Courts should be wary of legislative history as "a historical analysis normally provides less guidance to a statute's meaning than its final text."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995).

Regardless, the Opposition does not specifically cite or refer to legislative history that would be helpful in divining legislative intent, and in fact only generally refers to one potential source of legislative history. *See* Pl.'s Opp'n 25 n.8 (generally summarizing one Report of a House Subcommittee Hearing, without citing any language in that Report that supports Plaintiff's argument or even where in the Report such language could be found).[10]  Even if this document did support Plaintiff's argument, Plaintiff cannot solely rely on legislative history to show a prohibition on the Credit Council's involvement.  "[C]ourts have no authority to enforce [a] principl[e] gleaned solely from legislative history that has no statutory reference point."  *Shannon v. United States*, 512 U.S. 573, 584 (1994) (citation omitted).  The applicable statutes do not reference the Credit Council or restrict its activity.

Moreover, if as Plaintiff argues, Congress was actually so concerned about the Secretary's and the Credit Council's involvement in the Title XI application process, Congress

---

[10] The Report of a hearing before a House Seapower and Expeditionary Forces Subcommittee, contains statements of only two Representatives, neither of which refers to the Secretary or the Credit Council.  *The Fed. Ship Const. Loan Guarantee Program: Hearing Before the Subcomm. on Seapower & Expeditionary Forces of the H. Comm. on Armed Servs.*, 110th Cong. 1, 1-2 (2007) (statement of Rep. Gene Taylor, Chairman, Subcomm. on Seapower & Expeditionary Forces); *id.* at 2-3 (statement of Rep. Roscoe G. Bartlett, Ranking Member, Subcomm. on Seapower & Expeditionary Forces).  Although other individuals provided testimony, including maritime industry experts and lobbyists, the Report does not specifically reflect what weight this testimony had on Congress's own views about the Secretary's and the Credit Council's involvement in the Title XI application process and how, if at all, those views were incorporated into the final statute.  Comments made at hearings, which were not statements of Congressional members, are insignificant in determining legislative intent. *Kelly v. Robinson*, 479 U.S. 36, 50 n. 13 (1986).

presumably would have referenced and resolved this problem in the legislation it passed. Congress could have worded the legislation to explicitly prohibit their involvement.  The fact that it did not do so may reflect Congress's wise judgment that such a prohibition would run contrary to the authority granted the Secretary in 49 U.S.C. § 109.

> Legislative history frequently points in a direction, but to carry out the statute we must identify not only the direction but also the distance.  "[N]o legislation pursues its purposes at all costs.  Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law."  *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987).

*Freeman United Coal Mining Co. v. OWCP*, 999 F.2d 291, 292 (7th Cir. 1993) (Easterbrook, J., concurring).

### 3.  Plaintiff's Interpretation of the Statute Is Unpersuasive

Finally, Plaintiff's interpretation of the statute should be rejected as inconsistent with other Congressional statutes related to the structure and independent authority of the Department's sub-agencies.  According to Plaintiff, under 46 U.S.C. § 53702(a), "[t]he Credit Council's participation would be improper even if, as defendants suggest, its role were merely advisory."  Pl.'s Opp'n 26.  Plaintiff asserts that Congress's choice to vest Title XI guarantee decisions in the Administrator, § 53702(a), strips the Secretary of *any* involvement in Title XI decisions.  Otherwise, the Administrator would always suffer from the "insidious effect[s]" of the Credit Council's influence.  Pl.'s. Opp'n 27; *id.* (citing *Jarrott v. Scrivener*, 225 F. Supp. 827, 834 (D.D.C. 1964)).[11]

---

[11] *Jarrott* evaluated a due process challenge to a zoning board decision.  225 F. Supp. at 836.  It provides little assistance in determining whether the statutes at issue prevent the Secretary and Credit Council from reviewing Plaintiff's loan guarantee application, or otherwise acting in the manner described in the Supplemental Complaint.

If Congress intended to divest the Secretary of *any* involvement in Title XI decisions, it would have done so explicitly.  Indeed, in prior legislation, Congress has divested the Secretary of authority over two different sub-agencies.  First, in 1996, Congress amended the statute that establishes the Secretary's authority over the Federal Aviation Administration ("FAA"), 49 U.S.C. § 106, a statute that is analogous to 49 U.S.C. § 109 as to MarAd.  *See* Federal Aviation Reauthorization Act of 1996, Pub. L. No. 104-264, 110 Stat. 3213 (1996).  This statutory change expressly divested the Secretary of certain authority over FAA, and granted the FAA Administrator express autonomy with regard to certain internal functions of the agency.  *See* 49 U.S.C. § 106(f), (g).

> Authority of the [FAA] Administrator. --The Administrator--
> (A) *is the final authority for carrying out all functions, powers, and duties of the Administration* relating to--
>> (i) the appointment and employment of all officers and employees of the Administration (other than Presidential and political appointees);
>> (ii) the acquisition and maintenance of property, services, and equipment of the Administration;
>> (iii) except as otherwise provided in paragraph (3), the promulgation of regulations, rules, orders, circulars, bulletins, and other official publications of the Administration; and
>> (iv) any obligation imposed on the Administrator, or power conferred on the Administrator, by the Air Traffic Management System Performance Improvement Act of 1996 (or any amendment made by that Act);
> . . .
> (D) except as otherwise provided for in this title, and notwithstanding any other provision of law, *shall not be required to coordinate, submit for approval or concurrence, or seek the advice or views of the Secretary or any other officer or employee of the Department of Transportation on any matter with respect to which the Administrator is the final authority.*

*Id.* § 106(f)(2) (emphasis added).  In addition to amending the FAA Administrator's duties, Congress also amended the statutory provisions related to the Secretary's authority.  *See id.* § 106(b) ("*Except as provided in subsection (f)* or in other provisions of law, the Administrator reports directly to the Secretary of Transportation." (emphasis added)); *id.* § 106(f)(1) ("*Except*

*as provided in paragraph (2),* the Secretary of Transportation shall carry out the duties and powers, and controls the personnel and activities, of the Administration." (emphasis added)).

Second, when Congress created the Surface Transportation Board ("STB") within Department of Transportation in 1995, the relevant legislation provided that the STB was independent from the Secretary. *See* 49 U.S.C. § 701(a). Congress created the STB to assume some (but not all) of the functions of the former Interstate Commerce Commission. ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995). Congress used unequivocal language to establish the STB's independent authority.

> INDEPENDENCE.—In the performance of their functions, the members, employees, and other personnel of the Board [*i.e.*, the STB] shall not be responsible to or subject to the supervision or direction of any officer, employee, or agent of any other part of the Department of Transportation.

49 U.S.C. § 703(c).

Plaintiff's interpretation that 46 U.S.C. § 53702(a) excludes any the Secretary and the Credit Council from Title XI decisions is unpersuasive given Congress's prior statutory revisions to the Secretary's authority and the Department's structure. "It would appear that Congress knows how to" divest the Secretary of his authority over sub-agencies "when it wants to provide for it. That Congress failed to do so here argues forcefully that such [an action] was not its intention." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987). Congress failed to use specific language, as it did with the FAA and the STB, when it made the Administrator the final decisionmaker for Title XI loan guarantee applications. The language used in those instances starkly contrasts that of 49 U.S.C. § 109, which states that the Administrator "shall report directly to the Secretary of Transportation and carry out the duties prescribed by the Secretary" and vests in the Secretary "[a]ll duties and powers of the Maritime

Administration."  Congress's choice of language undermines reading 49 U.S.C. § 109 to strip the Secretary of any involvement in Title XI decisions.  Pl.'s Opp'n 26.

Moreover, the statutes here should not be interpreted to so easily make the Maritime Administrator's decisions unaccountable.  The Secretary's supervision of the Administrator and of Title XI decisions ensures that the actions of MarAd are accountable and consistent across the various credit programs administered by the Department and its sub-agencies.  *See, e.g.*, U.S. Const. art. II, § 2 ("[The President] may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices.").  Absent express intent of Congress, reading the statutes as Plaintiff suggests—to wholly remove the Secretary's superintending authority and make Title XI decisions unaccountable to the Executive Branch—is contrary to good government

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening brief, the motion to dismiss should be granted and this case dismissed under Fed. R. Civ. P. 12(b)(1) & (6).


DATED: February 11, 2013                              Respectfully submitted,

                                                      STUART F. DELERY
                                                      Principal Deputy Assistant Attorney General

                                                      DIANE KELLEHER
                                                      Assistant Director

                                                      /s/ Karen P. Seifert
                                                      KAREN P. SEIFERT
                                                      Trial Attorney (NY Bar)
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      20 Massachusetts Ave., NW, Room 6112
                                                      Washington, D.C. 20530
                                                      Tel. (202) 305-0891 / Fax: (202) 616-8470
                                                      Email: karen.p.seifert@usdoj.gov
                                                      *Attorneys for Defendants*