**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| AMERICAN PETROLEUM TANKERS PARENT, LLC, |
| Plaintiff, |
| v. |
| UNITED STATES OF AMERICA, *et al.*, |
| Defendants. |

**Civil Action No. 12-1165 (CKK)**

**MEMORANDUM OPINION**
(May 6, 2013)

Plaintiff American Petroleum Tankers Parent, LLC, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. 701 *et seq.*, challenges the Maritime Administration's decision denying the Plaintiff's application for loan guarantees intended to allow the Plaintiff to refinance loans used to construct five petroleum tankers. Presently before the Court is the Defendants' [18] Motion to Dismiss the Supplemental Complaint. Upon consideration of the pleadings[1] and the relevant legal authorities, the Court finds the Plaintiff has standing to challenge the Maritime Administrator's denial of the applications, and that the Administrator's decision on an application for a loan guarantee is not committed to agency discretion and is thus reviewable by the Court. The Court further finds the Plaintiff has stated a claim challenging the Secretary of Transportation's order requiring the Administrator to refer applications to the Credit Council for a recommendation. However, the Plaintiff failed to state a claim for relief or establish the Court's subject matter jurisdiction with respect to its request that the current Maritime

---

[1] See Defs.' Mot., to Dismiss, ECF No. [18]; Pl.'s Opp'n, ECF No. [19]; Defs.' Reply, ECF No. [22].

Administrator be recused from considering the Plaintiff's application if the case is remanded to the agency for further consideration. Accordingly, the Defendants' motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

American Petroleum Tankers Parent ("APT") is majority-owned by investment funds managed by affiliates of the Blackstone Group, L.P., a publicly traded private equity company. Suppl. Compl., ECF No. [14], ¶ 2. APT owns five 49,000 deadweight ton petroleum tankers, delivered to APT between January 2009 and December 2010. *Id.* at ¶ 1. Each of the five vessels are U.S.-flagged and employed in the coastwise trade of the United States. *Id.* Two of the tankers have (unspecified) specially designed features approved by the United State Navy and are currently on charter to the Navy's Military Sealift Command. *Id.*

A.    *Title XI Loan Guarantee Program*

Title XI of the Merchant Marine Act of 1936 authorizes the Administrator of the Maritime Administration, to guarantee loans intended to finance the construction, reconstruction, or reconditioning of vessels that, among other things, are designed principally for commercial use in the coastwise trade. 46 U.S.C. §§ 53702(a), 53706(a)(1)(A)(i).[2] Guarantees may also be issued for refinancing an existing obligation issued to finance the construction, reconstruction, or reconditioning of such vessels. *Id.* § 53706(a)(5). Applications for Title XI guarantees must be approved or denied within 270 days after the Administrator receives the signed application, though the applicant may request that the time for consideration be extended for up to two years from the date on which the application was received. *Id.* § 53703(a)(1), (2).

---

[2] Title XI also authorizes the Secretary of Commerce to guarantee loans in connection with fishing vessels and fishery facilities. 46 U.S.C. §§ 53701(13), 53702(a).

The statute sets forth a number criteria an application must satisfy in order to be eligible for a loan guarantee.  The obligor must have "the ability, experience, financial resources, and other qualifications necessary for the adequate operation and maintenance of each vessel that will serve as security for the guarantee."  46 U.S.C. § 53707(a).  The property for which the obligation will be executed must be "economically sound" in light of various factors, including "the market potential for employment of the vessel over the life of the guarantee," and "projected revenues and expenses associated with employment of the vessel."  *Id.* § 53708(a)(2), (3).  The Administrator may employ a third party expert to analyze "risk factors associated with markets, technology, or financial structures."  *Id.* § 53708(d).[3]  The statute also provides that the Administrator must give priority to vessels that, among other things, are suitable for service as a naval auxiliary in the time of war or national emergency.  46 U.S.C. § 53706(c).

Pursuant to Department of Transportation Order 2301.1B, after the Maritime Administrator completes his review of the application, the application must be referred to the Department of Transportation Credit Council for review.  Defs.' Ex. A ¶ 9(a).  The Credit Council is comprised of various officials within the Department of Transportation, including the General Counsel, the Federal Highway Administrator, the Federal Railroad Administrator, and the Maritime Administrator.  *Id.* at ¶ 5.  In addition to setting the Department's credit policies and procedures, the Credit Council makes recommendation to agencies within the Department regarding applications for various credit assistance programs, including the Title XI loan program.  *Id.* at ¶¶ 3, 9(a).  With respect to Title XI applications, the Credit Council provides "a

---

[3]   The Supplemental Complaint alleges the Secretary of Transportation requires the Credit Council to grant authorization to the Administrator before he may employ an independent expert.  Suppl. Compl. ¶ 32.  It is unclear from the Defendants' motion if this allegation is disputed.  Defs.' Mot. at 6.

recommendation regarding the financial viability of the proposed project and the merits of the requested credit assistance and its consistency with departmental credit policies." *Id.* at ¶ 9(a). The Maritime Administrator is not bound by the Credit Council's recommendation, and ultimately approves or denies the application. *Id.*

  B. *Plaintiff's Title XI Application and Litigation History*

   APT submitted an application for a Title XI guarantee on August 30, 2010, seeking loan guarantees to refinance the $400 million debt incurred to construct the tankers owned by APT. Suppl. Compl. ¶ 2. The Maritime Administration accepted APT's application as complete on December 2010. *Id.* As part of the review process, the Department of Transportation Credit Council makes a recommendation to the Maritime Administration regarding each application. *Id.* at ¶ 3. The Plaintiff alleges that the Credit Council refused to consider its application in light of the fact the Plaintiff is owned by a private equity firm. *Id.*

   Fearing that the Maritime Administration would not act on its application by the statutorily mandated two-year deadline, the Plaintiff filed suit in July 2012 seeking an emergency writ of mandamus to compel the Administrator to grant or deny the application by August 31, 2012. *See generally* Compl., ECF No. [1]. After an on-the-record conference call with the Court, the Defendants agreed to issue a decision on the Plaintiff's application by August 31, 2012. Jt. Stip., ECF No. [7]. The Plaintiff accordingly withdrew its motion for emergency relief. *Id.*

   On July 28, 2013, the Plaintiff modified its application, in relevant part, to reduce the guarantee amount to $340 million. Suppl. Compl. ¶ 5; Pl.'s Ex. B (8/1/12 Decision Ltr.) at 4. Two days later, the Administrator denied the Plaintiff's original application, acknowledging that it did not consider the July 28 revisions to the application, indicating a review of the amended

application would require "a comprehensive financial analysis" that could not be completed by August 31.  Pl.'s Ex. B at 4.  The Administrator explained that the denial of the Plaintiff's original application was based on several factors: (1) "[the] project is not economically sound overall"; (2) it seeks refinancing for two particularly vulnerable vessels"; and (3) "it seeks to refinance at least three ships over one year old at the time of closing."  *Id.*  Additionally, the Administrator explained that "the amount of the project to be refinanced, . . . if granted, would consume almost all of the remaining monies available for the ship financing program."  *Id.*

Following the initial denial of the Plaintiff's application, the Administrator agreed to consider the Plaintiff's amended application.  Jt. Mot. to Stay, ECF No. [9], ¶ 9.  The Administrator denied the amended application on November 9, 2012.  Pl.'s Ex. C.  In short, the Administrator explained that the amended application was denied because it "remains not economically sound overall," "seeks refinancing of two particularly vulnerable vessels," "seeks to refinance at last three ships over one year old," and if granted, the guarantees sought by the Plaintiffs would "consume almost all of the remaining monies available for the ship financing program."  *Id.* at 4.

The Plaintiff supplemented its complaint in this matter to reflect the denial of both its original and modified applications.  *See generally* Suppl. Compl., ECF No. [14].  The first count of the supplemental complaint alleges that the Administrator's decision denying the Plaintiff's application was arbitrary, capricious, or otherwise contrary to law in violation of 5 U.S.C. § 706(2).  Specifically, the Plaintiff challenges (1) the Administrator's consideration of the recommendation of the Credit Council; (2) the finding that the amended application is not economically sound; (3) the finding that the amended application does not warrant priority; and (4) the decision to deny the amended application in part because it would exhaust available

funds.  Suppl. Compl. ¶¶ 102-07.  The second count of the supplemental complaint seeks a

"remedy for the Secretary's unlawful interference," pursuant to the APA, namely

> an order declaring that the DOT Credit Council has no lawful or valid function
> with respect to Title XI applications, directing the Secretary to cease and desist
> from interfering with the Administrator's performance of his ministerial and
> discretionary responsibilities regarding Title XI applications in general and APT's
> application in particular, and directing the Administrator . . . to cease and desist
> from submitting such applications to the DOT Credit Council and to grant or deny
> APT's application without regard to the opinions, objections, recommendations or
> authorization of the Credit Council.

Suppl. Compl. at 39.  Finally, in the third count of the supplemental complaint, the Plaintiff

alleges that "[p]ast interference by the Secretary . . . and the DOT Credit Council with the

Administrator's performance . . . has so infected and prejudiced the deliberative process used by,

and the judgment of, the incumbent Administrator that he is incapable of fairly assessing the

merits of APT's Title XI application."  *Id.* at ¶ 115.  The Plaintiff thus asks the Court to order the

Administrator to recuse himself from consideration of the Plaintiff's application on remanded,

and requiring a *de novo* review of the amended application by a new official within the Maritime

Administration.  *Id.* at 39-40.  The Defendants now move to dismiss the first and third counts for

lack of subject matter jurisdiction, the second count for failure to state a claim, and the third

count on the alternative grounds of failure to state a claim.

## II.  LEGAL STANDARD

The Defendants move to dismiss the supplemental complaint under Federal Rules of

Civil Procedure 12(b)(6) and 12(b)(1).  To survive a motion to dismiss pursuant to Rule 12(b)(1),

the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Moms*

*Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether there is

jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  The Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

# III.  DISCUSSION

*A.*      *Count One of the Supplement Complaint*

The Plaintiff's first cause of action alleges that the Administrator's denial of the Plaintiff's initial and amended applications was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, in violation of 5 U.S.C. § 706(2).  The Defendants move to dismiss this claim on two grounds:  (1) that the Plaintiff's injury is not redressable by the Court, therefore the Plaintiff lacks standing; and (2) that the Administrator's decision to grant or deny an application for a Title XI loan guarantee is committed to agency discretion by law, and is thus unreviewable.  Neither argument has merit.

1.      The Plaintiff Has Standing to Challenge the Denial of Its Applications for Title XI Loan Guarantees

"[T]he irreducible constitutional minimum of standing contains three elements":  (1) injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's favor.  *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 5 n.2 (D.C. Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The Defendants argue the Plaintiff lacks standing to challenge the Administrator's decisions because its injury is not redressable by the Court because on remand, "the Administrator could still deny the application because granting Plaintiff's loan guarantee application would 'exhaust available funds[.]'"  Defs.' Mot. at 22.  The Defendant contends that "[t]he Administrator has already made the determination that Plaintiff's application should be denied for this reason.  As a result, reconsideration of Plaintiff's application would not change the outcome, and thus will not 'redress' Plaintiff's injury."  *Id.*  Assuming for the sake of argument that the Defendant is correct that the Administrator could deny the application on the "exhaustion of funds" rationale alone, the Plaintiff still has standing to challenge the

Administrator's denial of its applications.

A claim is justiciable "so long as the relief sought would constitute a necessary first step on a path that could ultimately lead to relief fully redressing the injury." *Tel. & Data Sys., Inc. v. Fed. Commc'n Comm'n*, 19 F.3d 42, 47 (D.C. Cir. 1994) (citation omitted). The Plaintiff's requested relief—vacatur of the Administrator's denial and remand for further consideration—is a "necessary first step" on the course that could lead to the Administrator granting the Plaintiff's application. The Plaintiff may not ultimately prevail if the Court vacates the Administrator's decision, but it "cannot prevail unless [the Court] do[es] so," which is sufficient to satisfy the redressability requirement for constitutional standing. *Power Co. of Am., L.P. v. Fed. Energy Regulatory Comm'n*, 245 F.3d 839, 842 (D.C. Cir. 2001) (citation omitted).

> 2. <u>The Maritime Administrator's Decision Regarding Title XI Loan Guarantee Applications Is Not Committed to Agency Discretion by Law</u>

The Administrative Procedure Act provides for judicial review of certain agency actions, and requires the reviewing court to set aside any "agency action, findings, and conclusions" found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, judicial review is not available where the agency action "is committed to agency discretion by law." *Id*. § 701(a)(2). The Supreme Court has articulated as least two scenarios in which this exclusion applies: (1) "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); and (2) when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "Agency actions in these circumstances are unreviewable because the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the

agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (citation omitted).

Section 701(a)(2) "provides a 'very narrow exception' that applies only in 'rare instances.'" *Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (quoting *Volpe*, 401 U.S. at 410). Courts "begin with the strong presumption that Congress intends judicial review of administrative action[] unless there is persuasive reason to believe that such was the purpose of Congress." *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1343-44 (D.C. Cir. 1996) (citations omitted).  To determine whether an action is committed to agency discretion courts consider "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (citation omitted).

a.      Nature of the Administrator's Decision

The Defendants initially argue that "the decision not to issue a loan guarantee [] is quintessentially a matter of agency discretion."  Defs.' Mot. at 17.  "The question of whether, and in what amount, a government loan should be afforded" often involves "issues of judgment and choice . . . which require the exercise of informed discretion." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000 (9th Cir. 1998); *cf. Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("The allocation of funds from a lump-sum appropriation is [an] administrative decision traditionally regarded as committed to agency discretion.").  However, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statute[]," as Congress did with respect to the Title XI loan guarantee program. *Lincoln*, 508 U.S. 193. Congress articulated a number of very specific criteria to consider in determining whether an obligation was eligible for a Title XI guarantee.  Moreover, the statute identifies certain types of

10

vessels that should be given priority.  46 U.S.C. § 53706(c).  Thus, the agency's decision is not unreviewable simply because it concerns a loan guarantee, although the nature of the decision may favor a more circumscribed review of that decision.  *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985).

    b.  Language and Structure of the Title XI Loan Guarantee Program

  With respect to the language and structure of the statute, the Defendants argue that permissive nature of the Administrator's authority—that he *may* guarantee eligible obligations— demonstrates the decision is committed to agency discretion by law.  Defs.' Mot. at 18 (citing 46 U.S.C. § 53702(a)).  "When a statute uses a permissive term such as 'may' rather than a mandatory term such as 'shall,' this choice of language suggests that Congress intends to confer some discretion on the agency, and that courts should accordingly show deference to the agency's determination."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1401 (D.C. Cir. 1995).  "However, such language does not mean the matter is committed exclusively to agency discretion."  *Id.*  "[L]anguage allowing for discretion does not create unlimited discretion. . . . Thus, courts routinely conclude that judicial review is available notwithstanding statutory language that seemingly allows for unlimited discretion."  *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 348 (4th Cir. 2001) (citation omitted) (finding regulation providing that the Provider Reimbursement Review Board "*may* dismiss" an appeal was reviewable); *cf. Mulloy v. United States*, 398 U.S. 410, 415 (1970) ("Though the language of 32 CFR § 1625.2 is permissive, it does not follow that a board may arbitrarily refuse to reopen a registrant's classification.").

  The D.C. Circuit in *Menkes v. Department of Homeland Security*, 486 F.3d 1307 (D.C. Cir. 2007), considered a challenge to the Coast Guard's decision not to permit an independent

pilot to provide pilotage service pursuant to 46 C.F.R. § 401.720(b).  *Id.* at 1310.  Section 401.720(b) provides in relevant part that "[w]hen pilotage service is not provided [by the authorized pool] because of a physical or economic inability to do so, . . . the Director may order any U.S. registered pilot to provide pilotage service."  46 C.F.R. § 401.720(b).  In finding that the decision as to whether the pool is physically or economically able to provide pilotage service, the court noted that "[t]o be sure, the Director might be entitled to a good deal of deference in determining whether the pool was physically or economically able to provide adequate service, but that does not mean the Director could make such decisions unreasonably."  *Menkes*, 486 F.3d at 1313; *see also Dickson*, 68 F.3d at 1401 (statute providing that Army Board for Correction of Military Records "may excuse a failure to file" within the statute of limitations did not preclude review under the APA); *see Amador Cnty., Cal. v. Salazar*, 640 F.3d 373, 381 (D.C. Cir. 2011); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993).[4]  The fact that the Administrator is not by statute commanded to guarantee all eligible obligations does not preclude this Court from reviewing the Administrator's decision to deny an application for a loan guarantee.

  c.  Standard to Apply in Reviewing the Administrator's Exercise of Discretion

The Defendants further argue that the Administrator's decision is unreviewable because "[n]o statute or regulation prescribes an exclusive list of criteria that the Administrator considers

---

[4] The Defendants' reliance on the Ninth Circuit's decision in *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000 (9th Cir. 1998), is misplaced in large part because it is contrary to the D.C. Circuit's approach to permissive statutory language.  Moreover, even under *Helgeson*, the Court could still entertain claims that the Administrator's decision was based on factors outside those permitted by statute, *id.* at 1003, including the Plaintiff's claim that the Defendants' consideration of the Credit Council's recommendation was contrary to law, Suppl. Compl. ¶ 104.

in making his decisions." Defs.' Mot. at 19.[5]  Although the statute permits the Administrator to consider "other relevant criteria" with respect to particular issues, it does not provide the Administrator unbridled discretion to deny an application.   In fact, each of the statutory provisions cited by the Defendants places some bounds on the criteria the Administrator may consider in reviewing an application.  Section 53708(a) articulates five criteria the Administrator shall consider in determining whether the obligation at issue "will be economically sound."  46 U.S.C. § 53708(a).  This section further provides that the Administrator may consider "other relevant criteria."  *Id.* § 53708(a)(5).  Plainly, the Administrator's discretion is limited to considering other criteria *relevant* to whether the underlying obligation will be economically sound.  The same limitation applies to criteria set forth in 46 C.F.R. § 298.14(b)(6), which indicates the Administrator will consider "other relevant criteria" in "making the economic soundness finding."

The Defendants also point to section 53707(a), which indicates the Administrator cannot guarantee an obligation unless the obligor has "other qualifications *necessary* for the adequate operation and maintenance of each vessel that will serve as security for the guarantee."  46 U.S.C. § 53707(a) (emphasis added).  Congress limited the Administrator's discretion to considering qualifications necessary for a specific purpose, namely the operation and maintenance of the underlying collateral.  Finally, Defendants rely on 46 C.F.R. § 298.17(a), which indicates that "[i]n evaluating project applications, we shall also consider whether the

---

[5] Elsewhere in their motion, the Defendants assert that "[t]he Administrator can consider any factors he 'may prescribe' in evaluating a loan guarantee application."  Defs.' Mot. at 22 (quoting 46 U.S.C. § 53702(a)).  The plain text of section 53702(a) permits the Administrator to prescribe the terms of guarantees issued by the Maritime Administration, but does not address the Administrator's authority to determine the criteria for reviewing applications for loan guarantees.  46 U.S.C. § 53702(a) ("The [] Administrator, on terms the [] Administrator may prescribe, may guarantee [obligations].").

application provides for" any one of six factors.  46 C.F.R. § 298.17(a).  By its plain text this regulation articulates a closed universe of factors; it does not contain any language indicating the Administrator will consider "other criteria" or that the relevant factors "including but are not limited to" those listed in the regulation.  *Id.*

In sum, Congress may not have articulated an exhaustive list of criteria the Administrator may consider in reviewing an application for a Title XI loan guarantee, but Congress did limit the Administrator to considering factors *relevant* to particular inquiries, such as the economic soundness of the application, or the obligor's qualifications to maintain the vessels used as collateral.  Nor do the Defendants argue that these standards—e.g., economic soundness—are unmanageable for the Court to apply upon review of the Administrator's decision.  Similar standards have been found to provide sufficient guidance to courts in reviewing agency decisions.  *Cody*, 509 F.3d at 610 ("high quality and cost-effective" medical care); *Menkes*, 486 F.3d at 1314 ("physical and economic" ability to provide sufficient service).

For the first time in their reply, the Defendants argue that the statute fails to provide a manageable standard for the Court to employ because the statute does not articulate factors to consider in *denying* an application, but rather sets forth only the criteria to determine if an application is *eligible* for a guarantee.  Defs.' Reply at 6.  Confronted with similarly structured statutes, the D.C. Circuit has concluded that courts can use the factors outlined in the statute to review the agency's eligibility determination, and courts may also review the agency decision to ensure it was not based on factors not disclosed in the relevant statute or regulations.

The regulation at issue in *Menkes* provided that the Coast Guard *may* order independent pilots to provide pilotage service if the pool of pilots authorized to provide services could not "physical[ly] or economic[ally]" provide pilotage services.  486 F.3d at 1310 n.3 (quoting 46

14

C.F.R. § 401.720(b)). The D.C. Circuit found the regulation provided a sufficiently manageable standard for a court to employ in reviewing the decision not to appoint an independent pilot. *Id.* at 1313. The court explained

> To be sure, the Director might be entitled to a good deal of deference in determining whether the pool was physically or economically able to provide adequate service, but that does not mean the Director could make such decisions unreasonably. For example, it would be presumably arbitrary and capricious for the Coast Guard to ignore an obvious unfilled demand for pilotage service, or to change its standards for determining what level of service is adequate without explanation. Also dubious would be a refusal to appoint a pilot for reasons not mentioned in the regulations, such as an effort to force the pilot to join the Association.

*Id.* Similarly in *Dickson*, the Army Board for Correction of Military Records' *could* excuse a party's failure to file within the statute of limitations if it was "in the interest of justice." 68 F.3d at 1399. The court concluded that it could review the Board's finding that it would not be in the interest of justice to excuse late filings in three cases pending before the Board. *Id.* at 1404.

Likewise here, the Court can review the Administrator's determination that the Plaintiff's applications were not economically sound, as well as consider the Plaintiff's allegation that the Administrator denied its applications for reasons not mentioned in the statute or accompanying regulations. In the end, the Court may owe a great deal of deference to a determination by the Administrator that the funds available to the Title XI loan guarantee program are not best spent on the Plaintiff's application. But before reaching that question, the Court has jurisdiction to review the Administrator's threshold finding that the Plaintiff's applications were not economically sound and thus ineligible for the requested guarantees.

###### B. *Count Two of the Supplemental Complaint*

The Plaintiff's second cause of action alleges that in light of the 2006 and 2008 amendments to the Title XI loan program authorizing the Administrator to grant or deny

applications, "the Secretary's continued interference with the Administrator's performance of his ministerial and discretionary responsibilities regarding Title XI applications in general and APT's application in particular is arbitrary, capricious and otherwise not in accordance with law." Suppl. Compl. ¶ 113. The Defendants move to dismiss the second cause of action, arguing that "Plaintiff has failed to state a claim under the APA because no statute or regulation prevents the Secretary or the Credit Council from advising the Administrator about loan guarantee applications." Defs.' Mot. at 23.

Before turning to the amendments to the Title XI loan guarantee program, the Court notes that the Defendants' characterization of the issue is misleading. The question is not whether the Secretary of Transportation or Credit Council can offer advice to the Maritime Administrator. Rather, the relevant question is whether the Secretary of Transportation can *require* the Maritime Administrator to submit applications to the Credit Council for review, and to obtain the Council's non-binding recommendation before the Maritime Administrator issues a final decision on the application. In other words, the second cause of action turns on whether the Secretary of Transportation can impose additional burdens on the Administrator in reviewing applications under Title XI despite the fact that Congress transferred authority over the Title XI loan guarantee program to the Administrator.[6]

Prior to 2006, the Secretary of Transportation (or the Secretary of Commerce, where relevant) was vested with the authority to guarantee obligations under the Title XI loan program, and the Secretary delegated that authority to the Maritime Administrator. 49 C.F.R. § 1.66(e) (2005). The National Defense Authorization Act for Fiscal Year 2006 amended the Title XI

---

[6] This case does not require the Court to consider whether the Maritime Administrator, on his accord, may seek the advice of the Credit Council or others within the Department of Transportation before granting to denying applications for Title XI loan guarantees.

program to grant the Maritime Administrator the authority to guarantee loan obligations rather than the Secretary of Transportation. Pub. L. 109-163, § 3507, 119 Stat. 3136 (2006).  However, the changes enacted by the 2006 National Defense Authorization Act were not reflected in the subsequent codification of Title 46 of the United States Code.  *See* Codification of Title 46, Pub. L. 109-304, 120 Stat. 1485 (2006).  Accordingly, the National Defense Authorization Act for Fiscal Year 2008 amended the now-codified provisions of the loan program to reflect that the Administrator was authorized to guarantee obligations under Title XI.  Pub. L. 110-181, § 3522, 122 Stat. 3 (2008).

The 2008 National Defense Authorization Act also made certain "findings" as to the Title XI loan guarantee program, including that the program "has a long and successful history of ship construction with a low historical default rate," but that "[t]he current process for review of applications for maritime loans in the Department of Transportation has effectively discontinued the program as envisioned by the Congress," and "[t]he President has requested no funding for the loan guarantee program."  Pub. L. 110-181, § 3517(a)(2)-(4).  Congress thus required the Administrator to develop and implement "a comprehensive plan for the review of applications," in order to ensure that each application is accepted or rejected within the statutory timeframes.  *Id.* at § 3517(b).

The plain text of the Title XI loan guarantee program, as modified by the 2006 and 2008 amendments, grants the Maritime Administrator exclusive authority to grant or deny applications.  46 U.S.C. § 53702(a) ("[The] Administrator, on terms . . . [the] Administrator may prescribe, may guarantee or make a commitment to guarantee the payment of the principal of and interest on an obligation eligible to be guaranteed under this chapter.").  The Administrator also has exclusive authority to determine whether an independent analysis of an application should be

17

conducted by third party experts.  46 U.S.C. § 57308(d).  The Defendants argue that if Congress had intended to eliminate the Secretary's involvement in the Title XI program, it would have done so explicitly.  It is hard to see how Congress could have been any more explicit: in transferring authority over the program to the Administrator, Congress eliminated all references to the Secretary of Transportation in the relevant statutory provisions and inserted the Maritime Administrator in his place.  There simply is no textual basis for the Defendants' assertion that the Secretary can impose additional conditions on the Administrator's approval or denial of applications for Title XI loan guarantees after Congress gave authority over the program to the Administrator.

The legislative history of the 2006 amendments lends further support to the notion that the Secretary cannot impose additional conditions on the Administrator's exercise of authority in connection with the Title XI loan guarantee program.  The Conference Report for Public Law 109-163 explained that "[t]he conferees intend for the [Maritime Administration] to retain adequate resources with sufficient expertise *to perform all functions of this program without requiring assistance from the Department of Transportation or other agencies*."  H.R. Conf. Rep. 109-360, at 906 (2005), *reprinted in* 2005 U.S.C.C.A.N. 1678, 1887 (emphasis added).  With respect to the need for independent analysis of applications, the report indicates

> The conferees also agree that the decision to subject loan guarantee applications to a third-party independent analysis should be based on risk factors enumerated in [46 U.S.C. § 53702], as amended by this Act.  The conferees agree there should be no rule, regulation, or procedure governing the Maritime Guaranteed Loan Program that requires a third-party independent analysis for all applications without regard to these risk factors.  When an independent analysis is required, the conferees would expect only experts in maritime finance or operations be funded to conduct the analysis.

*Id.*  Admittedly, the Conference Report does not explicitly refer to the Credit Council, but these statements demonstrate Congress intended for the Maritime Administrator to independently

exercise authority over the Title XI loan guarantee program and to exercise his discretion in deciding when to obtain third party analysis of applications.

In support of their assertion that the Secretary of Transportation may require the Administrator to refer applications to the Credit Council, the Defendants rely on 49 U.S.C. § 109. Section 109 outlines the general structure and authority of the Maritime Administration, including that the Maritime Administrator "report[s] directly to the Secretary of Transportation and carr[ies] out the duties prescribed by the Secretary." 49 U.S.C. § 109(b). Furthermore, "[a]ll duties and powers of the Maritime Administration are vested in the Secretary." *Id.* § 109(d). The Defendants thus argue that "Section 109 provides the Secretary authority to administer his Department in the manner he sees fit, including requiring the [Maritime Administration] and its Administrator to follow his orders and submit loan guarantee applications to the Credit Council." Defs.' Mot. at 24.

When both specific and general provisions cover the same subject, the specific provision will control. *Norwest Bank Minn. Nat'l Ass'n v. Fed. Deposit Ins. Corp.*, 312 F.3d 447, 451 (D.C. Cir. 2002). This is particularly true, "if applying the general provision would render the specific provision superfluous." *Id.* If, as the Defendants suggest, the Secretary of Transportation has plenary authority to determine how the Administrator runs the Title XI loan guarantee program, the 2006 and 2008 amendments replacing all references to the Secretary with "the Administrator," were meaningless: the Secretary would have the same authority over the program as he did prior to the statutory amendments. The Court acknowledges that "[i]t is a cardinal rule [of statutory construction] that repeals by implication are not favored." *Bullcreek v. Nuclear Regulatory Comm'n*, 359 F.3d 536, 542 (D.C. Cir. 2004) (quoting *Morton v. Mancari*, 417 U.S. 535, 549 (1974)). But absent an implied repeal of 49 U.S.C. § 109(b) and (d) as to the

Title XI loan guarantee program, the 2006 and 2008 statutory amendments to the program are rendered superfluous.

In sum, Congress specifically amended the Title XI program so that the Maritime Administrator, rather than the Secretary of Transportation, would have authority to administer the program, request independent analysis of applications, and ultimately grant or deny applications.   The Defendants failed to identify any statutory or other authority by which Secretary of Transportation can require the Maritime Administrator to submit applications for Title XI loan guarantees to the Credit Council to obtain the Council's recommendation before the Administrator may grant or deny the applications.   Accordingly, the Defendants' motion to dismiss the Plaintiff's cause of action for failure to state a claim is denied.

### C.     Count Three of the Supplemental Complaint

The third count of the supplemental complaint alleges, in its entirety, that

> Past interference by the Secretary, other Department of Transportation officials and the DOT Credit Council with the Administrator's performance of his ministerial and discretionary responsibilities regarding APT's Title XI applications has so infected and prejudiced the deliberative process used by, and the judgment of, the incumbent Administrator that he is incapable of fairly assessing the merits of APT's Title XI application.

Suppl. Compl. ¶ 115.  The Plaintiff thus asks the Court to issue an order directing (1) that the Administrator revoke his August 1, 2012 and November 9, 2012 denials of the Plaintiff's original and amended applications; and (2) that the Plaintiff's application be considered *de novo* "by the official designated by statute or regulation to succeed to the position of Maritime Administrator when the incumbent Administrator is disqualified." *Id.* at 39-40.

The Defendants move to dismiss the third cause of action, for four reasons: (1) that the United States has not waived sovereign immunity as to this claim because it does not concern a final agency action under the APA; (2) recusal of the Administrator constitutes a nonjusticiable

political question; (3) the claim fails to state a legal basis for recusing the Administrator; and (4) recusal is not a remedy authorized by the APA.  The Plaintiff responds by asserting that the third cause of action "unarguably" states a claim under the APA."  Pl.'s Opp'n at 35 n.12.  The Plaintiff thus relies on the APA to find a waiver of sovereign immunity and avoidance of the political question doctrine.  *Id.* at 31-34.

The Supplemental Complaint cannot reasonably be construed to raise any claim under the APA.  In the first cause of action, the Plaintiff outlines the reasons it argues the Administrator's decision was arbitrary and capricious, but omits any reference to any purported bias on the part of the Administrator.  Suppl. Compl. ¶¶ 103-07.  The Plaintiff then requests that the Court set aside the Administrator's decision "and remand[] this matter to the *Administrator* for further consideration."  *Id.* at 38.  The third cause of action, without any citation to the APA, the first cause of action, or *any* legal basis for the claim, alleges the Administrator is "incapable of fairly assessing the merits" of the Plaintiff's application, and asks that he be removed from reconsideration upon remand.  *Id.* at ¶ 115.  In its current form, the third cause of action does not state a claim for relief under the APA.  Because the third count does not state a claim under the APA, there is no apparent waiver of sovereign immunity, and the Plaintiff failed to meet its burden to show the Court has subject matter jurisdiction over this claim.[7]  Therefore, the Court shall dismiss count three of the Supplemental Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the agency action at issue in this case is reviewable.  The Plaintiff has standing to challenge the Administrator's denial of its applications

---

[7]  Moreover, because the third cause of action does not purport to state a claim under the APA, the Court does not reach the issue as to whether the Plaintiff *could* state a claim under the APA seeking recusal of the Administrator upon remand.

for loan guarantees because a favorable decision from this Court is necessary to remedy the asserted injury, even if the Administrator ultimately denies the application upon further review. Moreover, the Administrator's decision regarding a Title XI loan guarantee application is not committed to agency discretion by law, and thus reviewable under the Administrative Procedure Act.   The Plaintiff has stated a claim challenging the Secretary of Transportation's order requiring the Administrator to refer all applications to the Department of Transportation Credit Council in order to obtain the Council's recommendation before the Administrator rules on each application.   Finally, the Plaintiff failed to state a claim under the APA with respect to its request that the current Administrator be recused from ruling on the Plaintiff's application on remand. Absent a viable APA claim, the Defendants have not waived sovereign immunity with respect to this claim, and the Court lacks subject matter jurisdiction to consider the request for relief. Accordingly, the Defendants' [18] Motion to Dismiss the Supplemental Complaint is GRANTED IN PART and DENIED IN PART.   The third cause of action shall be dismissed.

An appropriate Order accompanies this Memorandum Opinion.


                                    _____/s/_____
                                    **COLLEEN KOLLAR-KOTELLY**
                                    UNITED STATES DISTRICT JUDGE