# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| American Petroleum Tankers Parent LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *v.* ) | Civil Action No. 12-1165-CKK |
| ) | |
| The United States of America, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL FILING OF FULL ADMINISTRATIVE RECORD AND FOR LIMITED DISCOVERY

Michael Joseph (DC Bar No. 6593)
Alex Blanton (DC Bar No. 169623)
Joseph O. Click (DC Bar No. 417294)
 Blank Rome LLP
 600 New Hampshire Ave. NW
 Washington, D.C.  20037
 (202) 772-5966
 click@blankrome.com

*Counsel for Plaintiff American Petroleum Tankers Parent LLC*

June 24, 2013

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................ii

Argument ......................................................................................................................2

I.    APT has Presented a Strong Case That it is Entitled to Limited
      Discovery and Supplementation of the Record ...........................................................2

      A.    APT's Complaint Seeks Judicial Review of the Process
            Employed by Defendnats, as Well as the Decisions Themselves.......................2

      B.    APT Has Made a Strong Case of Bad Faith and
            Improper Conduct by Defendants.........................................................................4

      C.    The AR is "so Bare that it Precludes Effective Judicial
            Review" of the Administrative Process Leading to the
            Decisions Under Review.....................................................................................10

II.   Defendants Cannot Withhold Documents or Information
      on the Basis of the Deliberative Process Privilege ....................................................11

III.  Defendants Have Failed to Include Key Documents in the AR ..................................14

Conclusion ..................................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

Cases

*American Wild Horse Preservation Campaign v. Salazar*,
    859 F. Supp. 2d 33 (D.D.C. 2012) ........................................................................16

*Banner Health v. Sebelius*, 2013 WL 2112169 (D.D.C. May 16, 2013) ..............10, 13, 14, 16, 17

*Blue Ocean Inst. v. Guitierezz,* 503 F. Supp. 2d 366 (D.D.C. 2007) ..............................11

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)................................13

*Commercial Drapery Contrs., Inc. v. United States*, 133 F.3d 1 (D.C. Cir. 1998) ........................3

*County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64 (D.D.C. 2008) ...................................16

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989)......................................................3

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
    156 F.3d 1279 (D.C. Cir. 1998) ........................................................................11

*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996)....................................16

*Jones v. Murphy*, 256 F.R.D. 510 (D. Md. 2008) ........................................................12

*Judicial Watch, Inc. v. Department of Justice*, 365 F.3d 1108 (D.C. Cir. 2004)...........................14

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 880 F. Supp. 2d 105 (D.D.C.
    2012) ........................................................................14

*Kent Cnty. Delaware Levy Crt. v. EPA*, 963 F.2d 391 (D.C. Cir. 1992) ....................................16

*Martinez v. District of Columbia*, 241 F.R.D. 1 (D.D.C. 2006) ..........................................12

*McClelland v. Andrus*, 606 F.2d 1278 (D.C. Cir. 1979)..................................................14

*National Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150 (D.D.C. 2012).....................................3

*National Wilderness Inst. v. U. S. Army Corps of Eng'rs*,
    2002 WL 34724414 (D.D.C. Oct. 9, 2002) ........................................................3, 9

*Northrup Corporation v. McDonnell Douglas Corp.*, 751 F.2d 395 (D.C. Cir. 1984).................12

*Pacific Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) ........................................................................16

*Stainback v. Winter*, 520 F. Supp. 2d 181 (D.D.C. 2007).................................................................13

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir 1997)........................................................................13

*TOMAC v. Norton*, 193 F. Supp. 2d 182 (D.D.C. 2002) ................................................................16

*United States v. American Telephone & Telegraph Co.*,
    516 F. Supp. 1237 (D.D.C. 1981) ............................................................................................5

*Wainwright v. Washington Metro. Area Trans. Auth.*, 163 F.R.D. 391 (D.D.C. 1995) ...............12

*Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788 (D.C. Cir. 1984).....................13, 15

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN PETROLEUM TANKERS PARENT LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 12-1165-CKK |
| | ) | |
| THE UNITED STATES OF AMERICA, *ET AL.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO
COMPEL FILING OF FULL ADMINISTRATIVE RECORD AND FOR
LIMITED DISCOVERY**

Defendants would have the Court believe that this case involves nothing more than "a Plaintiff that is unhappy at being denied government benefits, and an agency that is alleged to have changed its mind during the course of a pending matter." Mem. 18. But the essence of American Petroleum Tanker Parent LLC's complaint is not that the agency changed its mind; it is that the Secretary's Credit Council, which has no lawful role in the Title XI process, changed the agency's mind, and did so for reasons having nothing to do with the merits of APT's application. It is thus not just the decisions denying APT's Title XI application—as irrational as they are—that are at issue here. The very process by which these decisions were made is very much at issue.

After a nearly two-year process during which MarAd's Title XI staff repeatedly told APT that its project was "economically sound"—indeed, one of the financially strongest ever considered by the agency—and the Maritime Administrator himself advocated for approval by

the Credit Council, the application was at the last minute denied.  The Administrator and his staff

indicated on a number of occasions, not only that the Credit Council was the obstacle to

approval, but that the Credit Council's objection was APT's ownership by private equity

investors.  Defendants persist in asserting that the Credit Council merely served as an advisor

making non-binding recommendations to the Administrator, and now claim that this is merely a

case of one agency—MarAd—changing its mind upon further reflection.  Even defendants

cannot deny that the Credit Council played some role in the process, but the Secretary has neither

filed an administrative record of the Credit Council's action nor contributed any documents to

the record compiled and filed by MarAd.  And that 3,532-page record contains only 153 pages

generated by MarAd staff over a 20-month period, with several pages heavily redacted, and

sheds little light on the procedures employed here by MarAd and the Credit Council.

APT is entitled to find out exactly what procedures defendants employed in assessing the

merits of APT's application, and to a judicial determination whether those procedures were

proper and legal.  Otherwise, neither APT nor any other person seeking Title XI guarantees can

ever be assured that they will not be subjected to the Credit Council's machinations.  If, as

defendants contend, there are no documents revealing those procedures, then it is essential that

APT be permitted to take the depositions it has requested.

## Argument

I.    **APT Has Presented a Strong Case That It Is Entitled to Limited Discovery and
      Supplementation of the Record.**

A.   **APT's Complaint Seeks Judicial Review of the Process Employed by
      Defendants, as Well as the Decisions Themselves.**

Defendants argue that this is an "ordinary" APA case and that the Court can determine

the substantive validity of the defendants' decisions on APT's Title XI application on the current

AR, without discovery or supplementation.  APT, however, has not challenged just the substance of defendants' decisions; it has also challenged the administrative process by which defendants reached those decisions.

While judicial review of agency action is ordinarily confined to the administrative record, that principle gives way where "there has been a 'strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review." *Commercial Drapery Contrs., Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), and *Community for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997-98 (D.C. Cir. 1990)); *see also National Wilderness Inst. v. United States Army Corps of Eng'rs*, 2002 WL 34724414 at *4 (D.D.C. Oct. 9, 2002); *National Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012).  Further, "[t]he applicability of the exceptions [ ] is at its zenith when extra-record evidence is needed to facilitate examination of the procedural soundness of an agency decision."  *National Mining Ass'n*, 856 F. Supp. 2d at 157; *see also Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (the principle that judicial review is confined to the administrative record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," but where "the procedural validity of the Department's action [is] in serious question" it may be appropriate "to resort to extra-record information to enable judicial review to become effective"); see also *National Wilderness Inst.*, 2002 WL 34714414 at *4 (D.D.C. Oct. 8, 2002) (presumption of regularity may be overcome by "'a strong, substantial, or prima facie showing" that the party seeking discovery "will find material in the agency's possession indicative of bad faith or an incomplete record.'") (internal quotations and citations omitted).  Defendants' refusal to acknowledge the Complaint's allegations and claims, in the face of APT's evidence and arguments concerning the procedures

employed by defendants with respect to APT's application, cannot serve as a basis for filing less than the full record or precluding discovery to ascertain what actually happened with respect to APT's application.

### B.  APT Has Made a Strong Case of Bad Faith and Improper Conduct by Defendants.

Defendants claim (Mem. 5, 6, 13, 16) that APT has failed to make the strong showing of defendants' bad faith or improper behavior necessary to rebut the presumption of regularity, overcome the deliberate process privilege, take discovery and supplement the AR.  They argue that the only evidence is "that Plaintiff had been told at certain points by MarAd staff members, and perhaps the Administrator, that MarAd would advocate for approval of APT's application and . . . that subsequent to discussions with the Credit Council, the agency reversed course and ultimately recommended, and decided, against approval" and that this "merely demonstrates that the agency changed its views after further consideration and analysis."  Mem. 16.

The first problem with defendants' argument is that it essentially concedes that the AR is incomplete.  There is nothing in the record evidencing what defendants now claim to be the "further consideration and analysis" engaged in *by* MarAd, much less any documentation of the basis for the abrupt change of views following 20 months of consideration and analysis resulting in the "proposed" approval of APT's application.

The more fundamental problem with the argument is that defendants simply ignore the evidence.  Several exhibits consist of contemporaneous notes of conversations that APT's CEO had with the Administrator or the Associate Administrator for Business and Finance

Development, the most senior MarAd official with responsibility for the Title XI program.[1]

Further, the evidence goes beyond declarations and exhibits, and includes documents in the

current AR.  APT Mem. 28-31.  Defendants do not dispute or rebut any of this evidence either

with citations to the record or by submitting their own declarations.

Defendants also incorrectly claim that this evidence is mere speculation.  The evidence

makes out a very strong case that, despite the commands of the Title XI statute itself, the Credit

Council drove the process here.  The evidence shows:

- The Credit Council's "Guidelines" required MarAd to obtain an independent financial review of APT's application (AR 2871).

- The Credit Council required MarAd to obtain specific Credit Council authorization to hire an independent financial analyst (IFA) (AR 2866-72).

- In February 2011, the Administrator and MarAd were working to get Credit Council authorization to retain an IFA (Click Decl., Ex. 3).

- In March 2011, the Credit Council denied MarAd's first request for authorization to retain an IFA, largely because APT is owned by private equity firms (AR 2866-67, 2871).

- After the Credit Council's March 2011 denial, the Administrator worked on strategies to get Credit Council authorization to retain an IFA (Click Decl., Ex. 4).

- At the Administrator's suggestion, APT met with the Deputy Secretary of Transportation, who chairs the Credit Council, in September 2011 to discuss APT's application and its ownership by private equity firms (Kurz Decl., ¶¶ 19-21; Click Decl., Ex. 5).

- After the September 2011 meeting with the Deputy Secretary, MarAd again requested the Credit Council to authorize the retention of an IFA, and the Credit Council gave such authorization (AR 2868-73).

- From March 2011 through at least June 2012, MarAd's Title XI staff supported APT's application and recommended approval (AR 2466-72; 2917-53; Kurz Decl., ¶¶ 23, 26-28, 30).

---

[1] *See United States v. American Telephone & Telegraph Co.*, 516 F. Supp. 1237 (D.D.C. 1981) (explaining that statements describing events made during or shortly after their occurrence are unlikely to be misrepresentations and are reliable).

- On April 30, 2012, the Administrator expressed his support for APT's application, but noted that DOT officials had again raised concern about APT's ownership by private equity firms (AR 2442; Kurz Decl., ¶ 26).

- After APT, by letter dated May 2, 2012, lowered its requested guarantee amount from $400 million to $340 million, MarAd staff confirmed to APT that its application was among the strongest and lowest-risk applications ever presented to MarAd (Kurz Decl., ¶ 8).

- In late May 2012, MarAd staff indicated to APT that they considered APT's application to be financially and economically sound, and were advocating for approval of the application with the Credit Council (Kurz Decl., 28).

- On May 31, 2012, MarAd made a presentation to the Credit Council working group "proposing" approval of APT's application, and made other statements indicating its support for approval of the application (AR 2917-19).

- On June 12, 2012, MarAd made a presentation to the Credit Council in which it again "proposed" approval of APT's application and made other statements indicating its support for approval of the application (AR 2933, 2939-40, 2942).

- On June 13, 2012, MarAd staff advised APT that the Credit Council had considered APT's application at the June 12 meeting, but deferred action on the application (Kurz Decl., ¶ 29).

- On June 14, 2012, the Administrator informed APT's CEO that, while he (the Administrator) continued to advocate for approval of APT's application, "things do not look good." Kurz Decl., ¶ 30 and Exhibit 3.  When pressed for an explanation, the Administrator cited APT's ownership by private equity firms.  When APT's CEO indicated that APT was not going to stand for such unfair treatment, the Administrator asked for more time to deal with the issues.  *Id.*

- On July 9, 2012, the Administrator informed APT's CEO that he did not intend to ask for a vote on APT's application at the Credit Council meeting that was being held the next day because he felt that there was not support among the Credit Council members.  He stated that if a vote were taken at the July 10 meeting, it would not be good for APT.

- At this point, all communication between APT and the Administrator ceased.  On July 11, MarAd's Chief Counsel and Associate Administrator for Business and Finance Development informed APT's CEO that they could not provide any information regarding the July 10 Credit Council meeting (Kurz Decl., 34).

- The AR currently contains eight PowerPoint presentations made by MarAd to the Credit Council or Credit Council Working Group between May 31, 2012 and November 8, 2012 (AR 2917-77).

6

- The August and November decision letters find that APT's application is not economically sound, even though MarAd's own IFA found otherwise (Compare AR 3515 with 3215; 3523 with 3390).

- The August and November decision letters indicate that APT's application was repeatedly considered by the Credit Council, that the Credit Council unanimously voted to deny approval of APT's application at its July 31 and November 8 meetings, and the Credit Council's "recommendation" "informed" the Administrator's decision to deny APT's application.

- The Credit Council likely would never have acted on APT's application if APT had not forced a decision by filing this lawsuit.[2]

- The Credit Council, and in particular the Deputy Secretary of Transportation, continually raised APT's ownership by private equity firms as the principal objection to approval of APT's application. *Id.*, ¶¶ 16, 17, 19, 26, 30, 33 and Ex. 3, 5; *see also* AR 2421-22, 2871.

If all this were not enough, the Declaration of Daniel C. Ladd submitted in support of defendants' Opposition further shows that there was something seriously wrong with whatever process defendants employed here.  Mr. Ladd does not deny that MarAd's Administrative Orders and normal Title XI procedures require a comprehensive formal memorandum in which MarAd's staff analyzes an application in terms of all of the factors prescribed by the Title XI statute and regulations and presents the staff's recommendation to the Administrator, but states that this comprehensive memorandum was never prepared and thus does not exist in this case.  Ladd Decl., ¶ 5.  He goes on to state that the *only* memorandum prepared and considered by MarAd concerned the market for APT's tankers and was not prepared until October 12, 2012—well after defendants' August 1, 2012 denial of APT's original application.  *Id.*

Other aspects of the Ladd Declaration set off alarms about the procedure here.  Mr. Ladd acknowledges that staff prepared "many draft versions" of a memorandum regarding Title XI

---

[2]  After rejecting MarAd's proposed approval of APT's application on June 12, 2012, the Credit Council twice deferred action on APT's application (in June and early July) before "recommending" that MarAd deny it on July 31, after this lawsuit was filed.

priorities that the Credit Council had demanded as a predicate to its consideration of APT's

application, but states that to his knowledge there is no final version.  Given the confused

discussion of priorities in the decisions under review (AR 3516-17, 3526-28), it is more than

reasonable to infer that disclosure of these "drafts" will show that the staff concluded, contrary to

the decision letters, that APT was entitled to a statutory priority.  Mr. Ladd's declaration further

reveals (¶ 2) that in September 2012—in the midst of defendants' consideration of APT's

amended application—he was removed from his position as the Director of Ship Financing (the

office directly responsible for processing Title XI applications) and effectively demoted to his

prior position of "Financial Analyst."  Given that MarAd's Title XI staff, led by Mr. Ladd,

recommended approval of APT's application until at least June 2012, it is a more than reasonable

inference that defendants demoted him because of their displeasure with his involvement in

processing APT's application and supporting its approval.

And to top all this off, it is now apparent that not only have the Secretary or his Credit

Council failed to file an administrative record of their actions respecting APT's application, they

have not even contributed any documents or other information to the AR filed by MarAd.

Against this record, defendants' assertion that APT's request for supplementation of the

record and discovery is based on "speculation" boggles the mind.[3]  Discovery in particular is

likely to uncover further evidence of the controlling, heavy-handed and unlawful role played by

the Credit Council, the true reason APT's application was denied, and that absent interference

---

[3] Throughout their opposition, defendants incorrectly assert that APT is not here really
seeking supplementation and discovery, but is instead trying to prematurely litigate the
substantive merits of its case.  *See, e.g.*, Mem. 2, 3, 8, 19.  APT's Complaint explains in detail
why the decisions are substantively arbitrary and capricious, and an abuse of discretion.
Complaint, ¶¶ 62-101.  As a comparison of these allegations and the above recital of evidence
makes clear, APT's motion and supporting memorandum do not at all concern the substantive
merits of the decisions.

and control by the Credit Council, APT's Title XI application would have been approved.  In short, APT has made "'a strong, substantial, or prima facie showing" that discovery "will find material in the agency's possession indicative of bad faith or an incomplete record.'"  *National Wilderness*, 2002 WL 34714414 at \*4 (quoting *Amfac Resorts, LLC v. U.S. Dep't of the Interio*r, 143 F. Supp. 2d 7, 12 (D.D.C. 2001); and citing *Overton Park*, 401 U.S. at 420; *San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1325-26 (D.C. Cir. 1986); and *Natural Resources Defense Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975))

Rather than discussing the evidence, defendants assert (Mem. 17) that APT has not shown the type of bad faith or improper conduct necessary to overcome the deliberative process privilege, citing two cases that involved politically motivated leaks of information about the plaintiffs.  This Court has already determined that Congress took away the Secretary's authority over the Title XI program and vested it exclusively in the Administrator.  APT has made a strong showing that (1) the Credit Council exercised controlling authority over the Administrator with respect to APT's application throughout the administrative process, (2) the Credit Council denied APT's application and directed the Administrator to deny it, (3) the Credit Council did so based on its impermissible bias against private equity firms, and (4) the decision letters contain misleading statements about both the Credit Council's role in, and the authority it exercised over, the processing and determination of APT's application and the reason APT's application was denied.  On the basis of the evidence submitted by APT alone, Defendants cannot seriously maintain that they acted in good faith.  APT's evidence, of course, is largely circumstantial, based on reasonable inferences from the highly unusual circumstances it has managed to piece together.  Discovery is likely to eliminate the need for inferences by providing direct evidence of what really happened.

9

**C. The AR Is "So Bare that It Precludes Effective Judicial Review" of the Administrative Process Leading to the Decisions under Review.**

APT's opening memorandum (at 27-29) established that (1) the Secretary has not compiled and filed an AR, even though he is a defendant and his Credit Council played a pivotal role in processing APT's application, (2) the Court cannot, on the current AR, determine what process the Credit Council employed, the information it considered, and the basis for its purported "recommendations" to deny APT's application, and (3) defendants have engaged in bad faith and improper behavior in processing and denying APT's application.

Defendants attempt to avoid supplementing the AR and discovery by asserting that the AR contains plenty of evidence upon which the Court may review the substantive validity of their decisions denying APT's Title XI application.  This argument, again, ignores the fact that APT's Complaint also seeks review of the procedures employed by defendants in processing and deciding APT's application.  And as to that issue, the AR is plainly deficient.

Defendants go on to claim (Mem. 22) that APT's argument about the lack of any documents reflecting the Credit Council's role as nothing more than a complaint that "the wrong entity filed and certified the record."  They then assert, without citation to authority, that they are entitled to a "presumption" that the proper agency filed the AR.  But APT does not claim that MarAd should not have filed the record; its claim is that either the Secretary should also have filed a record of the Credit Council's actions or that the AR filed by MarAd should include such record.  Rather than doing so, defendants merely ask the Court to presume that MarAd was the proper entity to file the AR and this is good enough to relieve defendants of their responsibility to file the full administrative record.[4]

---

[4]  Defendants also cite (Mem. 23) *Banner Health v. Sebelius*, 2013 WL 2112169 at *11 (D.D.C. May 16, 2013) to claim that the wording of the record certification does not defeat the

The Court cannot possibly determine, from the AR as filed, exactly what the Credit Council's role was with respect to APT's application, and the information it considered in connection therewith.  Discovery is highly likely, if not certain, to uncover evidence of that role. APT has made a strong case that the AR is so bare that discovery is necessary to supplement the AR with evidence of the Credit Council's role in this process.

## II.   Defendants Cannot Withhold Documents or Information on the Basis of the Deliberative Process Privilege.

APT's opening memorandum explained (at 15-27) why defendants cannot redact documents in, or withhold documents from, the AR on the basis of the deliberative process privilege, and APT has shown above that it has made a strong showing of bad faith and improper conduct sufficient to overcome this qualified privilege.  Defendants' other arguments in support of their claim of privilege are without merit.

As an initial matter, defendants cannot redact or withhold documents on the basis of the deliberative process privilege, because they have failed properly to invoke the privilege.  In this Circuit, a governmental party invoking the deliberative process privilege must make a formal claim consisting of a statement asserting the privilege by "the head of the department with control over the information" that "must include a description of the documents involved, a statement by the department head that she has reviewed the documents involved, and an

---

presumption of regularity and that there is no requirement to certify an administrative record in any event.  But defendants did file a certification, and APT's complaint is not merely linguistic, but goes to the substance of the AR's contents.  Defendants also quote *Blue Ocean Inst. v. Guitierezz* 503 F. Supp. 2d 366, 372 (D.D.C. 2007), for the proposition that "the very documents [plaintiff] seeks, if they exist, are unavailable under the clear command of the D.C. Circuit [that privileged documents are excluded from the record]". Mem. 23.  The D.C. Circuit has *never* held that privileged documents are not part of the record.  The case upon which the Magistrate Judge relied in *Blue Ocean Inst.*, *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279 D.C. Cir. 1998), states that the *privilege* is unavailable when the claim challenges agency action as being in bad faith or improper, not that privileged documents are unavailable and excluded from the AR if the agency so asserts.

assessment of the consequences of disclosure of the information." *Northrup Corporation v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 n.11 (D.C. Cir. 1984).  These procedural requirements "are 'designed to ensure that the privilege[e] [is] presented in a deliberate, considered, and reasonably specific manner.'" *Martinez v. District of Columbia*, 241 F.R.D. 1, 4 (D.D.C. 2006).  Further, courts have little trouble rejecting claims of deliberative process privilege if it is not invoked in accordance with these requirements.  *See Northrup*, 751 F.2d at 405 n.11 (denying the State Department's claim of the deliberative process privilege for failure to meet the procedural requirements for claiming the privilege); *Martinez*, 241 F.R.D. at 4-5; *Wainwright v. Washington Metro. Area Trans. Auth.*, 163 F.R.D. 391, 396 (D.D.C. 1995).

These procedural requirements are not mere formalities.  A party's claim of any privilege, by definition, withholds relevant information from the opposing parties and the Court.  Thus, where the government asserts the deliberative process privilege, "[t]he pivotal question is: 'whether the materials bear on the formulation or exercise of policy-oriented judgment [and] whether disclosure would tend to diminish candor within an agency.'" *Jones v. Murphy*, 256 F.R.D. 510, 518 (D. Md. 2008) (quoting *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1254 (4th Cir. 1993)).  Here, defendants have never even attempted to describe the information for which they claim privilege, let alone how or why disclosure of the information would somehow "diminish candor within the agency." *Jones*, 256 F.R.D. at 518.

Defendants have had at least three opportunities to comply with the law and properly invoke the privilege: (1) when they filed the AR in the public docket, (2) when they filed the AR under seal, and (3) when they filed their opposition to the present motion.  They have not done so, and the Court must for this reason alone reject their claims of privilege.

12

Defendants also seek to justify their redactions and the exclusion of certain documents in the AR, by asserting (Mem. 13) that privileged documents are not part of the administrative record.  A few district court decisions support this notion, and some go so far as to state that an agency need not even provide a privilege log identifying documents that are withheld from the record.  Apparently emboldened by these statements, defendants admit that they have withheld an unspecified number of unidentified documents from the AR as privileged.  These cases, which are not binding on this Court, are simply wrong.

The APA itself requires that judicial review be based on the whole administrative record. 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 420; *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).  "[A] complete administrative record should include all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision."  *Stainback v. Winter*, 520 F. Supp. 2d 181, 186 (D.D.C. 2007); *see also Banner Health v. Sebelius*, 2013 WL 2112169 at *9 (D.D.C. May 16, 2013).  Neither the Supreme Court nor the D.C. Circuit has created a carve-out from the legal requirement of a full administrative record for privileged documents.

There is good reason for this.  As noted, there are formal requirements that a government agency must employ to invoke the privilege in the first place, and failure to follow those procedures will result in denial of the privilege.  The government "has the burden of showing that materials were 'generated *before* the adoption of an agency policy' and 'reflect [ ] the give-and-take of the consultative process."  *Tax Analysts v. IRS*, 117 F.3d 607, (D.C. Cir 1997) (emphasis in original) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  "[T]he agency must make the additional showing that disclosure

13

would cause injury to the decisionmaking process." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 880 F. Supp. 2d 105, 111 (D.D.C. 2012).  Further, the privilege does not protect factual material, *McClelland v. Andrus*, 606 F.2d 1278, 1287 (D.C. Cir. 1979), and where a document contains both factual and deliberative material, it can be withheld in full only where the materials are "inextricably intertwined."  *Judicial Watch, Inc. v. Department of Justice*, 365 F.3d 1108, 1121 (D.C. Cir. 2004).  Moreover, the deliberative process privilege is a qualified privilege.  *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).  It can be overcome on a showing of need.  *Id.*  And as defendants concede (Mem. 16), it can be overcome in APA cases on a strong showing of bad faith or improper conduct by the agency.

Neither a plaintiff nor a court can possibly assess the legitimacy of an agency's claim of privilege under these well-established rules if they have no idea that documents are being withheld, much less what the purportedly privileged documents are.  An agency may be able to prevent disclosure in the administrative record of documents that are properly protected by the deliberative process privilege, but existence of the privilege does not mean they are not part of the full administrative record—*i.e.*, the documents that were before the agency at the time the decision was made and that were capable of influencing the agency's decision.  *See Banner Health*, 2013 WL 2112169, at *9.  To allow an agency to withhold documents as privileged merely on the agency's say-so is contrary to long and well established law governing privileges.

## III.   Defendants Have Failed to Include Key Documents in the AR.

APT established in its opening memorandum that defendants had failed to include a number of specific documents that should be in the AR.  Defendants' justifications for not including these documents are either meritless or underscore the need for discovery.

Defendants say the formal staff recommendation memorandum required by MarAd's Administrative Orders and routine procedures was not included in the AR because it was not prepared and does not exist.  The failure of MarAd staff even to prepare this key mandatory memorandum only serves to highlight the need for discovery and supplementation of the AR with the other documents identified by APT.

Both the July and November decision letters found that APT's vessels and application were not entitled to a priority, but the basis for this finding is confusing.  In its opening memorandum (at 13) APT shows that the Credit Council required MarAd staff to prepare a memorandum for the Council concerning priorities for Title XI financing as a predicate to its consideration of APT's application.  Mr. Ladd's declaration (¶ 6) confirms that "[t]here were many draft versions of this memorandum prepared by MarAd" but no final version, and defendants did not include the drafts in the AR based on the deliberative process privilege. Mem. 11.  It is almost certain that the draft memorandums concluded that APT's vessels were entitled to a priority, but there was no finalized version because they did not come to the conclusion that the Credit Council wanted.  In short, the drafts provide further evidence of bad faith and improper conduct and should be included in the AR.

Defendants apparently have not even attempted to locate and review the periodic reports concerning the status of all Title XI applications, asserting that "[t]hese documents, *to the extent they exist*, were merely generated for the purpose of apprising relevant individuals of the status of various agency matters (*including, potentially, APT*)."  Mem. 9 (emphasis added).  This is further evidence that defendants have prepared an AR that is not full and complete, but only contains documents that either support, or do not detract from, the decisions at issue here, in derogation of their duties under the APA.  *See Boswell Memorial Hosp.*, 749 F.2d at 792 ("To

15

review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of the 'whole record'"); *see also American Wild Horse Preservation Campaign v. Salazar*, 859 F. Supp. 2d 33, 41 (D.D.C. 2012) ("[a]n agency 'may not skew the record in its favor by excluding pertinent but unfavorable information, [n]or may the agency exclude information on the grounds that it did not 'rely' on the excluded information in its final decision") (quoting *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005)); *Banner Health*, 2103 WL 2112169, at *9 (same).

Noting (Mem. 8) that the AR must contain documents that the agency considered directly or indirectly, defendants assert (Mem. 9) that these records may be excluded because "[t]here is no reason to believe that they were 'considered' by the Maritime Administrator in rendering his decisions[.]"[5] But the requirement that the administrative record must include all materials considered directly or indirectly by the agency requires agencies to include "all materials that were compiled by the agency that were *before the agency* at the time the decision was made." *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (emphasis added) (internal quotations and citations omitted). "[I]t is axiomatic that documents created by an agency itself or otherwise located in its files were before it." *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008). Further, "[i]f the agency decisionmaker

---

[5]  Parenthetically quoting cases such as *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), and *Pacific Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006), defendants claim (Mem. 8) that they do not have to include "all documents in an agency's files that may pertain to or mention the administrative matter in any way." What agencies do not have to do is "find *all* documents discussing '[the administrative matter] located in *any* office of the [agency]." *Kent Cnty. Delaware Levy Crt. v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (emphasis in original). This is what the cases provide. *See, e.g.*, *TOMAC*, 193 F. Supp. 2d at 195 (agency need not include "every scrap of paper that could or might have been created"); *Pac. Shores Subdiv.*, 448 F. Supp. 2d at 7 (agency need not include "every potentially relevant document existing within its agency") (emphasis added). The materials APT seeks do not even arguably fall into this category of minutia.

based his decision on the work and recommendations of subordinates, those materials should be included as well." *Banner Health v. Sebelius*, 2013 WL 2112169 at *9 (citations and quotation marks omitted).  It also requires inclusion of all information and materials that are adverse to the decision under review.  *Id.* at *19 (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) and citing *Ad Hoc Metals Coalition v. Whitman*, 227 F. Supp. 2d 134 (D.D.C. 2002) and *Public Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986)).

Defendants assert (Mem. 9-10) that there is no reason to believe that the Administrator considered the documents concerning Scully Capital, the IFA retained by MarAd to review APT's application, characterizing as "rank speculation"  APT's claim that communications between MarAd and Scully are likely to reveal that MarAd unsuccessfully attempted to convince Scully to change its conclusions that APT's project was economically feasible.  While both the June IFA Report and the November IFA report conclude that APT's project was economically feasible, there are some differences indicating that defendants tried to manipulate the process. First, the November IFA Report changed the assumptions for one of the stress cases used to evaluate APT's cash flow—"Stress Case 2 -Extended Off-hire Period."  The June IFA Report assumed that one vessel would be off-hire (idle) for the entire 2013 year.  AR 3209.  The November IFA report assumed that one vessel would be off-hire for the entire 2019 year.  AR 3383.  The November 9 letter denying APT's application emphasized the revised Stress Case 2, stating that "[t]he IFA's projections forecast debt service ratios as low as 0.64:1" (AR 3525), which was the result for 2019 under the revised Stress Case 2.  Second, the November IFA Report's statement as to economic feasibility was softened.  The June IFA Report states "The analysis supports a conclusion that *the Project is economically feasible*."  AR 3215 (emphasis added).  In contrast, the November IFA Report states "The analysis supports a conclusion that

that the Project *economics and market application appear feasible*."  AR 3390 (emphasis added).

Third, while APT was given a chance to review and discuss with MarAd the January 2012 Draft

IFA Report that preceded the June Report (*see* AR 2978-3035, 3535-62), Defendants denied

APT access to any draft report that preceded the November IFA Report.

APT noted in its opening memorandum (at 13-14) that the August and November

decisions both found that the two APT vessels chartered to the Navy's Military Sealift Command

(MSC) were "economically vulnerable" due to possible budget cuts, but that the AR does not

contain any documents or information indicating that MarAd consulted with MSC or the Office

of Management and Budget (OMB) (as recommended by the IFA) concerning MSC's plans for

these vessels.  APT's opening memorandum also noted that the AR did not even include the

speeches made by then-Secretary of Defense Panetta upon which defendants relied for their

finding in the November decision.

As to documents concerning MSC or OMB, defendants refuse to confirm or deny

whether any such documents exist, or even whether they consulted with these agencies.  Instead,

they merely assert that APT has not shown that they exist.  This response further demonstrates

the need for discovery.  If defendants did not bother to consult with these agencies about the two

vessels currently serving the military, then they should be forthright enough to say so rather than

leaving APT and the Court to wonder whether there is any basis in the record for their

conclusions other than two speeches.

**Conclusion**

For the foregoing reasons, and those stated in APT's opening Memorandum, the Court should grant APT's motion to compel defendants to file the full administrative and for limited discovery.

Respectfully submitted,


/s/Michael Joseph
Michael Joseph (DC Bar No. 6593)
Alex Blanton (DC Bar No. 169623)
Joseph O. Click (DC Bar No. 417294)
  Blank Rome LLP
  600 New Hampshire Ave. NW
  Washington, D.C.  20037
  (202) 772-5966
  click@blankrome.com

*Counsel for Plaintiff American Petroleum Tankers Parent LLC*

June 24, 2013

19

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 24, 2013, the foregoing was filed electronically with the court's CM/ECF system and will be served on parties of record by the Court's CM/ECF system.


         /s/ MICHAEL JOSEPH     
         Michael Joseph (DC Bar No. 6593)
         Blank Rome LLP
         600 New Hampshire Avenue, N.W.
         Washington, D.C.  20037
         (202) 772-5966
         click@blankrome.com

         *Counsel for Plaintiff American Petroleum*
          *Tankers Parent LLC*