# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN PETROLEUM TANKERS PARENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> Defendants. | Civil Action No. 12-1165 (CKK) |

## MEMORANDUM OPINION
(July 10, 2013)

Plaintiff American Petroleum Tankers Parent, LLC, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. 701 *et seq.*, challenges the Maritime Administrator's decision denying the Plaintiff's applications for loan guarantees intended to allow the Plaintiff to refinance loans used to construct five petroleum tankers. Presently before the Court is the Plaintiff's [60] Motion to Compel Filing of the Full Administrative Record and for Leave to Conduct Limited Discovery. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds the Defendants must supplement the Administrative Record to include two speeches by the Secretary of Defense cited by the Maritime Administrator in his denial of the Plaintiff's revised application, but the Plaintiff's remaining grounds for supplementation and discovery are unpersuasive. Accordingly, the Plaintiff's motion is GRANTED IN PART and DENIED IN PART as set forth below.

## I. BACKGROUND

American Petroleum Tankers Parent ("APT") is majority-owned by investment funds

---

[1] Pl.'s Mot., ECF No. [60]; Defs.' Opp'n, ECF No. [64]; Pl.'s Reply, ECF No. [65].

managed by affiliates of the Blackstone Group, L.P., a publicly traded private equity company. Suppl. Compl., ECF No. [14], ¶ 2.  APT owns five 49,000 deadweight ton petroleum tankers, delivered to APT between January 2009 and December 2010.  *Id.* at ¶ 1.  Each of the five vessels is U.S.-flagged and employed in the coastwise trade of the United States.  *Id.*  Two of the tankers have (unspecified) specially designed features approved by the United State Navy and are currently on charter to the Navy's Military Sealift Command.  *Id.*

A.     *Title XI Loan Guarantee Program*

Title XI of the Merchant Marine Act of 1936 authorizes the Maritime Administration, a division of the Department of Transportation, to guarantee loans intended to finance the construction, reconstruction, or reconditioning of vessels that, among other things, are designed principally for commercial use in the coastwise trade.  46 U.S.C. §§ 53702(a), 53706(a)(1)(A)(i).[2]  Guarantees may also be issued for refinancing an existing obligation issued to finance the construction, reconstruction, or reconditioning of such vessels.  *Id.* § 53706(a)(5). Applications for Title XI guarantees must be approved or denied within 270 days after the Administrator receives the signed application, though the applicant may request that the time for consideration be extended for up to two years from the date on which the application was received.  *Id.* § 53703(a)(1), (2).

The statute sets forth a number criteria an application must satisfy in order to be eligible for a loan guarantee.  The obligor must have "the ability, experience, financial resources, and other qualifications necessary for the adequate operation and maintenance of each vessel that will serve as security for the guarantee."  46 U.S.C. § 53707(a).  The property for which the

_____

[2]  Title XI also authorizes the Secretary of Commerce to guarantee loans in connection with fishing vessels and fishery facilities.  46 U.S.C. §§ 53701(13), 53702(a).

obligation will be executed must be "economically sound" in light of various factors, including "the market potential for employment of the vessel over the life of the guarantee," and "projected revenues and expenses associated with employment of the vessel." *Id.* § 53708(a)(2), (3). The Administrator may employ a third party expert to analyze "risk factors associated with markets, technology, or financial structures." *Id.* § 53708(d). The statute also provides that the Administrator must give priority to vessels that, among other things, are suitable for service as a naval auxiliary in the time of war or national emergency. 46 U.S.C. § 53706(c).

Pursuant to Department of Transportation Order 2301.1B, after the Maritime Administrator completes his review of the application, the application must be referred to the Department of Transportation Credit Council for review. Defs.' Mot. to Dismiss Ex. A, ECF No. [18-2], ¶ 9(a). The Credit Council is comprised of various officials within the Department of Transportation, including the General Counsel, the Federal Highway Administrator, the Federal Railroad Administrator, and the Maritime Administrator. *Id.* at ¶ 5. In addition to setting the Department's credit policies and procedures, the Credit Council makes recommendations to agencies within the Department regarding applications for various credit assistance programs, including the Title XI loan program. *Id.* at ¶¶ 3, 9(a). With respect to Title XI applications, the Credit Council provides "a recommendation regarding the financial viability of the proposed project and the merits of the requested credit assistance and its consistency with departmental credit policies." *Id.* at ¶ 9(a). The Maritime Administrator is not bound by the Credit Council's recommendation, and ultimately approves or denies the application. *Id.*

B.    *Plaintiff's Title XI Application and Litigation History*

APT submitted an application for a Title XI guarantee on August 30, 2010, seeking loan guarantees to refinance the $470 million debt incurred to construct the tankers owned by APT.

Decl. of R. Kurz, ECF No. [60-4], ¶ 10 (indicating the initial application sought $470 million in guarantees).   The Maritime Administration accepted APT's application as complete on December 2010.  Suppl. Compl. ¶ 2.  The Plaintiff reduced the requested guarantee amount to $400 million in September 2011.  Kurz Decl. ¶ 19.  The Credit Council initially recommended against the Maritime Administration retaining a third party financial expert to review the application, but subsequently recommended that the Administration proceed with the third party expert analysis.  *See* A.R. 2868-2872.  The Maritime Administration retained Scully Capital Services, Inc., to perform the external review in November 2011.  Kurz Decl. ¶¶ 21-22.[3]

The Plaintiff's application was discussed during the June 12 and July 10, 2012, Credit Council meetings.  Kurz Decl. ¶¶ 29, 35.  Fearing that the Maritime Administration would not act on its application by the statutorily mandated two-year deadline, the Plaintiff filed suit in July 2012 seeking an emergency writ of mandamus to compel the Administrator to grant or deny the application by August 31, 2012.  *See generally* Compl., ECF No. [1].  After an on-the-record conference call with the Court, the Defendants agreed to issue a decision on the Plaintiff's application by August 31, 2012.  Jt. Stip., ECF No. [7].  The Plaintiff accordingly withdrew its motion for emergency relief.  *Id.*

On July 28, 2012, the Plaintiff modified its application in relevant part to further reduce the guarantee amount to $340 million.  Suppl. Compl. ¶ 5.  Two days later, the Administrator denied the Plaintiff's original application, acknowledging that it did not consider the July 28 revisions to the application because a review of the amended application would require "a comprehensive financial analysis" that could not be completed by the August 31 deadline.

---

[3] The parties and hereinafter the Court refer to the third party expert as the Independent Financial Analyst, or "IFA."

4

Defs.' Mot. to Dismiss Ex. B (8/1/12 Decision Ltr.), ECF No. [18-3], at 4.  The Administrator explained that the denial of the Plaintiff's original application was based on several factors: (1) "[the] project is not economically sound overall"; (2) it seeks refinancing for two particularly vulnerable vessels"; and (3) "it seeks to refinance at least three ships over one year old at the time of closing."  *Id.*  Additionally, the Administrator explained that "the amount of the project to be refinanced[] . . . if granted, would consume almost all of the remaining monies available for the ship financing program."  *Id.*

Following the initial denial of the Plaintiff's application, the Administrator agreed to consider the Plaintiff's amended application.  Jt. Mot. to Stay, ECF No. [9], ¶ 9.  The Administrator denied the amended application on November 9, 2012.  Defs.' Mot. to Dismiss Ex. C (11/9/12 Decision Ltr.), ECF No. [18-4].  In short, the Administrator explained that the amended application was denied because it "remains not economically sound overall," "seeks refinancing of two particularly vulnerable vessels," "seeks to refinance at last three ships over one year old," and if granted, the guarantees sought by the Plaintiffs would "consume almost all of the remaining monies available for the ship financing program."  *Id.* at 4.

The Plaintiff supplemented its complaint in this matter to reflect the denial of both its original and modified applications.  *See generally* Suppl. Compl.  The first count of the supplemental complaint alleges that the Administrator's decisions denying the Plaintiff's applications were arbitrary, capricious, or otherwise contrary to law in violation of 5 U.S.C. § 706(2).  Specifically, the Plaintiff challenges (1) the Administrator's consideration of the recommendation of the Credit Council; (2) the finding that the amended application is not economically sound; (3) the finding that the amended application does not warrant priority; and (4) the decision to deny the amended application in part because it would exhaust available

funds.  Suppl. Compl. ¶¶ 102-07.  The second count of the supplemental complaint seeks a

"remedy for the Secretary's unlawful interference," pursuant to the APA, namely

> an order declaring that the DOT Credit Council has no lawful or valid function
> with respect to Title XI applications, directing the Secretary to cease and desist
> from interfering with the Administrator's performance of his ministerial and
> discretionary responsibilities regarding Title XI applications in general and APT's
> application in particular, and directing the Administrator . . . to cease and desist
> from submitting such applications to the DOT Credit Council and to grant or deny
> APT's application without regard to the opinions, objections, recommendations or
> authorization of the Credit Council.

Suppl. Compl. at 39.  Finally, in the third count of the supplemental complaint, the Plaintiff

alleges that "[p]ast interference by the Secretary . . . and the DOT Credit Council with the

Administrator's performance . . . has so infected and prejudiced the deliberative process used by,

and the judgment of, the incumbent Administrator that he is incapable of fairly assessing the

merits of APT's Title XI application."  *Id.* at ¶ 115.  The Plaintiff thus asked the Court to order

the Administrator to recuse himself from consideration of the Plaintiff's application on remand,

and requiring a *de novo* review of the amended application by a new official within the Maritime

Administration.  *Id.* at 39-40.

Upon the Defendant's motion to dismiss, the Court determined that the Plaintiff has

standing to challenge the Maritime Administrator's denial of the applications, and that the

Administrator's decision on an application for a loan guarantee is not committed to agency

discretion by law and is thus reviewable by the Court.  5/6/13 Mem. Op., ECF No. [25], at 8-15.

The Court further concluded that the Defendants failed to identify any statutory or other

authority by which Secretary of Transportation can require the Maritime Administrator to submit

applications for Title XI loan guarantees to the Credit Council to obtain the Council's

recommendation before the Administrator may grant or deny the application.  *Id.* at 15-20.

Finally, the Court found that the Plaintiff failed to state a claim for relief or establish the Court's

subject matter jurisdiction with respect to its request that the current Maritime Administrator be recused from considering the Plaintiff's application if the case is remanded to the agency for further consideration. *Id.* at 20-21.

The Court set a briefing schedule for the parties' cross-motions for summary judgment, and also set a schedule for briefing any motions regarding the scope of the Administrative Record. 6/3/13 Order, ECF No. [28]. The Plaintiff subsequently filed the present motion to compel, which is now ripe for consideration by the Court.

## II. LEGAL STANDARD

The Administrative Procedure Act directs the Court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This requires the Court to review "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Courts in this Circuit have "interpreted the 'whole record' to include all documents and materials that the agency directly or indirectly considered . . . [and nothing] more nor less." *Pac. Shores Subdivision, Cal. Water Dist. v. U .S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (citation omitted). "[A]bsent clear evidence, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Id.* at 5.

"Supplementation of the administrative record is the exception, not the rule." *Pac. Shores*, 448 F. Supp. 2d at 5 (quoting *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1105 (D.C. Cir. 1979)); *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) ("A court that orders an administrative agency to supplement the record of its decision is a rare bird."). This is because "an agency is entitled to a strong presumption of regularity, that it properly designated

the administrative record." *Pac. Shores*, 448 F. Supp. 2d at 5.   "The rationale for this rule derives from a commonsense understanding of the court's functional role in the administrative state[:] 'Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President.'" *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 11 (D.D.C. 2001) (quoting *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325–26 (D.C. Cir. 1984)).   However, an agency "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made." *Blue Ocean Inst. v. Guttierez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007).   The agency may not exclude information from the record simply because it did not "rely" on the excluded information in its final decision. *Maritel, Inc. v. Collins*, 422 F.Supp.2d 188, 196 (D.D.C. 2006).   Rather, "a complete administrative record should include all materials that might have influenced the agency's decision[.]" *Amfac Resorts*, 143 F. Supp. 2d at 12 (citations omitted).   "[W]hile it is true that data and analysis compiled by subordinates may be properly part of the administrative record despite not having actually passed before the eyes of the Secretary," to be included in the Administrative Record, "the data or analysis must be sufficiently integral to the final analysis that was considered by the [Administrator], and the [Administrator's] reliance thereon sufficiently heavy, so as to suggest that the decisionmaker constructively considered it." *Banner Health v. Sebelius*, --- F. Supp. 2d ---, 2013 WL 2112169, at *21 (D.D.C. 2013).

## III. DISCUSSION

The Administrative Record may be "supplemented" in one of two ways, "either by (1) including evidence that should have been properly a part of the administrative record but was

excluded by the agency, or (2) adding extrajudicial evidence that was not initially before the agency but the party believes should nonetheless be included in the administrative record." *Wildearth Guardians v. Salazar*, 670 F.Supp.2d 1, 5 n. 4 (D.D.C. 2009). Much of the Plaintiff's motion focuses on the first type of "supplementation"—that is, documents the Plaintiff contends were considered by the Administrator in making his decision but that have been excluded from the Administrative Record. The Plaintiff also challenges the Defendants' invocation of the deliberative process privilege as grounds for redacting certain documents in the Administrative Record and withholding certain documents from the record in their entirety. Finally, the Plaintiff seeks discovery regarding the process through which the Maritime Administrator made his decision to deny the Plaintiff's applications. The Court addresses each category in turn.

> A.    *Documents Purportedly Considered by the Agency but Excluded from the Administrative Record*

The Plaintiff seeks to compel the Defendants to supplement the Administrative Record to include five categories of documents the Plaintiff contends were considered by the Maritime Administrator in reaching his decision denying the Plaintiff's applications: (1) memoranda prepared to reflect analysis required by certain Maritime Administration Orders; (2) periodic progress reports to the Credit Council regarding the status of pending applications and weekly activity reports within the Maritime Administration; (3) communications between the Maritime Administration and Scully Capital; (4) communications between the Maritime Administration and Military Sealift Command; and (5) certain communications between employees or agents of the Plaintiff and individuals within the Maritime Administration.[4]   Pl.'s Mot. at 12-15.   In

---

[4] Within this section of its motion, the Plaintiff also argued that the Defendants should be required to supplement the Administrative Record to include "a memorandum for the Credit Council regarding priorities for Title XI financing." Pl.'s Mot. at 13. The Defendants indicated that this memorandum was excluded from the Administrative Record pursuant to the deliberative

seeking to force the Defendants to supplement the Administrative Record with documents that were purportedly before the agency, the Plaintiff cannot merely assert that the documents "are relevant, were possessed by the entire agency at or before the time the agency action was taken, and were inadequately considered." *Banner Health v. Sebelius*, 2013 WL 2112169 at *10. Rather, the Plaintiff must articulate "when the documents were presented to the agency, to whom, and under what context." *Pac Shores*, 448 F. Supp. 2d at 7 ("Although Plaintiffs imply that the Corps possessed some of the documents because Plaintiffs obtained them through a Freedom of Information Act request, there is no evidence that the Corps' decisionmaker(s) were actually aware of the fourteen documents Plaintiffs seek to include."). Furthermore, the Plaintiff must offer "reasonable, non-speculative" grounds for their belief that the documents were directly or indirectly considered by the Maritime Administrator. *Banner Health*, 2013 WL 2112169, at *10. If the Plaintiff "can present such proof showing that [the Administrator] did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate." *Nat'l Mining Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156 (D.D.C. 2012) (citation omitted).

      1.    <u>Memoranda Reflecting Analysis Required by Maritime Administration Orders</u>

With respect to the first category of documents, the Defendants indicated that the "memoranda and presentations prepared by MarAd's offices and personnel in connection with APT's application have been produced in the administrative record (although some have been redacted in part[)]," and that a "formal memorandum" similar to what the Plaintiff describes in

---

process privilege. The Plaintiff does not dispute that the memorandum is privileged, but suggests in the Reply that "the drafts provide further evidence of bad faith and improper conduct and should be included in the AR." Pl.'s Reply at 15. Therefore, the Court addresses this memorandum only in the context of the Plaintiff's request for discovery, *infra*, Section III.C.

its motion does not exist.  Defs.' Opp'n at 7; Decl. of D. Ladd, ECF No. [64-1], ¶ 5.[5]  The

Plaintiff argues that this "only serves to highlight the need for discovery and supplementation of

the AR with the other documents identified by APT."  Pl.'s Reply at 15.  The Court addresses the

Plaintiff's request for discovery *infra*, but based on the Defendants' representation that the

document at issue does not exist and the lack of a response from the Plaintiff, the request to

supplement the Administrative Record with memoranda reflecting certain analysis required by

Maritime Administrative Orders is denied.

> 2.   Periodic Progress Reports & Weekly Activity Reports

Turning to the Plaintiff's request to supplement the record with "periodic progress

reports" and "weekly activity reports" prepared by the Maritime Administration, the Defendants

argue that "[t]hese documents, to the extent they exist, were merely generated for the purpose of

apprising relevant individuals of the status of various agency matters (including, potentially,

APT).  There is no reason to believe that they were 'considered' by the Maritime Administrator

in rendering his decisions[.]"  Defs.' Opp'n at 9.  In responding to this contention, the Plaintiff

cites case law regarding the scope of the Administrative Record, but offers no evidence to

suggest the Maritime Administrator actually considered these documents, or that the documents

were "sufficiently integral to the final analysis that was considered by the [Maritime

Administrator], and the [Maritime Administrator's] reliance thereon sufficiently heavy, so as to

suggest that the decisionmaker constructively considered" these documents.  *Banner Health*,

2013 WL 2112169, at *21.  The Court agrees that based on the Plaintiff's own description of the

documents, it is unlikely that the Maritime Administrator considered the reports, constructively

---

[5]   Daniel C. Ladd was the Director of the Office of Marine Financing in the Maritime
Administration from September 2011 until September 2012, and oversaw the processing of Title
XI applications.  Ladd Decl. ¶ 2.

or otherwise.[6]   Accordingly, the Plaintiff's motion to compel the Defendants to supplement the Administrative Record with periodic progress reports and weekly activity reports is denied.

3.   <u>Communications between the Maritime Administration & Scully Capital</u>

The third category of documents includes communications between the Maritime Administration and Scully Capital, including "the retainer agreement between MarAd and Scully, as well as MarAd's instructions to Scully as to its duties and responsibilities." Pl.'s Mot. at 13.   The Plaintiff suggests documents evidencing communications between the Maritime Administration and Scully Capital must exist because (1) Scully Capital's final June 2012 report addressed some of the concerns regarding the draft report which the Plaintiff raised in a presentation to various Maritime Administration and Credit Council staff; and (2) Scully Capital produced a supplemental report concerning the Plaintiff's amended application. *Id.* at 14.   The Defendants contend that these documents "relate to MarAd's decisions in only the most tangential of ways," and "[w]ritten communications between MarAd and Scully, to the extent they exist, were [] not considered by the Maritime Administrator; rather, Scully's reports themselves were considered." Defs.' Opp'n at 9-10.   The Plaintiff does not dispute this contention, and offers no evidence to show the Maritime Administrator relied on communications between the Administration and Scully Capital.  Therefore, there is no basis for ordering the Defendants to supplement the Administrative Record with these communications and documents.

---

[6]   Furthermore, because there is no evidence to suggest the Maritime Administrator considered these documents, the fact that the Defendants may not have searched for the documents is not "evidence that defendants have prepared an AR that is not full and complete" as the Plaintiff contends.  Pl.'s Reply at 15.

4.   Communications between the Maritime Administration and Military Sealift Command

The Defendant also seeks to supplement the Administrative Record with communications between the Maritime Administration and the Military Sealift Command, as well as two public speeches by then-Secretary of Defense Leon Panetta that were cited by the Maritime Administration in the November 9, 2012, letter denying the Plaintiff's revised application.  With respect to the speeches, the Defendants notes the speeches are publicly available, and that the Defendants do not object to the Plaintiff citing the speeches in its summary judgment briefs.  Defs.' Opp'n at 12, n.2.  "As to the other communications referenced," the Defendants argue that the Plaintiff "offers no evidence beyond mere speculation that any such written communications existed or that they properly would be considered part of the administrative record in this matter."  *Id.* at 12.  Once again, the Plaintiff does not dispute the Defendant's contention, but rather suggests that the Defendants' response "further demonstrates the need for discovery."  Pl.'s Reply at 18.[7]  Accordingly, the Plaintiff's motion to compel the Defendant to supplement the administrative record with communications between the Maritime Administration and the Military Sealift Command is denied.  However, because the Defendants do not dispute that the decision letters from the Maritime Administrator explicitly relied on the public speeches in denying the Plaintiff's revised application, the Defendants shall be required to supplement the Administrative Record with the text of those speeches.  *See Banner Health*, 2013 WL 2112169, at *27.[8]

---

[7]   The Plaintiff offers no explanation as to why discovery is warranted if such communications do not exist, *see* Pl.'s Reply at 18, therefore the Court does not discuss these communications in the context of the Plaintiff's request for discovery.

[8]   "The Secretary does not dispute that Tables 8a and 8b belong in the administrative record. Rather, the Secretary asserts that Plaintiffs' request is meaningless . . . [because] the

13

5.    Communications between the Plaintiff & Maritime Administration

Fifth and finally, the Plaintiff seeks to supplement the Administrative Record with certain communications between employees or agents of the Plaintiff and individuals within the Maritime Administration, specifically Exhibits 3 through 10 to the Declaration of Joseph Click. Initially, the Court notes that Exhibits 6 and 7 are in the Administrative Record from pages 1715 to 1718 and 2450 to 2451, respectively.  The presentation included in Exhibit 10 is also in the Administrative Record at pages 2573 to 2579.  The cover email transmitting the presentation to the Maritime Administrator does not appear to be in the Administrative Record, but the email itself does not discuss the merits of the Plaintiff's application.  Rather, the email addresses the Plaintiff's strategy for moving forward with its application, providing no reason to believe that the cover email itself was considered by the Maritime Administrator.  Decl. of J. Click, ECF No. [60-2], Ex. 10 at 1.

With respect to the remaining exhibits, the Defendants emphasize "there is simply no indication" that any of these documents "were considered by the Maritime Administrator, directly or indirectly, when he rendered his decisions. Indeed, the sheer number of communications sent by APT to MarAd throughout the course of its application made it virtually impossible for the Maritime Administrator to have considered each and every such submission." Defs.' Opp'n at 10-11.  The Court agrees.  Exhibits 3 and 4 are comprised of emails between the Maritime Administrator and the Plaintiff, but address scheduling issues and ways to approach the Credit Council regarding the application.   Neither exhibit addresses the substance of the

contents of the Federal Register are subject to judicial notice and can be considered in the Court's review. . . . [T]hat is not the point. The point is that Tables 8a and 8b are admittedly part of the administrative record in this case, and the Court shall therefore compel the Secretary to file them as part of the administrative record and for the Court's convenient reference." *Banner Health*, 2013 WL 2112169, at *27.

Plaintiff's application.  Thus, although the Maritime Administrator *received* the emails, the Plaintiff offers no basis for concluding that he considered these emails—which do not relate to the merits of the Plaintiff's application—in deciding to deny the Plaintiff's applications. Similarly, Exhibit 5 is a letter from the Plaintiff to the Chairman of the Credit Council requesting a meeting to discuss the Plaintiff's application, and Exhibit 8 is an email from the Plaintiff to the Associate Maritime Administrator of Business and Financial Development in which the Plaintiff requests a "debriefing" following a Credit Council meeting.  Neither the letter nor the emails were addressed to the Maritime Administrator, and the Plaintiff offers no evidence to suggest the Administrator considered either exhibit in reaching his decision.  Finally, Exhibit 9 is a series of emails between the Plaintiff and the Associate Maritime Administrator in which the Associate Maritime Administrator asks a question in connection with the preparations for a Credit Council Working Group meeting.  The Plaintiff also provides some unsolicited advice regarding what the administration should emphasize to the Credit Council regarding the Plaintiff's application. Once again, the Plaintiff offers no evidence or argument to suggest the Maritime Administrator considered these emails, or relied heavily on the content of these emails such that they should be deemed to be part of what the Administrators "considered" in reach his decision.

B.      *Redactions & Withholdings Pursuant to the Deliberative Process Privilege*

The Plaintiff also challenges the Defendants' redaction and withholding of certain documents from the Administrative Record pursuant to the deliberative process privilege.  It is well established in this District that materials protected by the deliberative process privilege are not part of the Administrative Record for purposes of review of agency action.  *Banner Health*, 2013 WL 2112169, at *15 (citing *Amfac Resorts*, 143 F. Supp. 2d at 13 ("[D]eliberative intraagency memoranda and other such records are ordinarily privileged, and need not be

included in the record.")).   As a corollary to this principle, the agency need not provide a privilege log of the documents withheld pursuant to the privilege.  *Oceana, Inc. v. Locke*, 634 F. Supp. 2d 49, 52-53 (D.D.C. 2009), *reversed on other grounds*, 670 F.3d 1238 (D.C. Cir. 2011) (collecting cases).   "Two requirements are essential to the deliberative process privilege: (1) the material must be predecisional and (2) it must be deliberative."  *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  A document is predecisional "if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process."  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (citation omitted).  Documents including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," are considered deliberative.  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Recommendations from consulting bodies may also fall within the scope of the deliberative process privilege.  *Citizens for Responsibility & Ethics in Wa. v. U.S. Dep't of Homeland Sec.*, 514 F. Supp. 2d 36, 44 (D.D.C. 2007).

The Plaintiff objects to the redactions to the following documents in the Administrative Record made pursuant to the deliberative process privilege: (1) "three short memorandums [sic] that staff prepared, two of which concern requesting permission from the Credit Council to retain an independent financial advisor," AR 2866-2867, 2870-2871; (2) a memorandum concerning recommendations made by the Independent Financial Advisor in his draft January 2012 report, AR 2888-2891; (3) spreadsheets and accompanying e-mails of projected financial results for the Plaintiff's vessels during the guarantee period, AR 2899-2903, 2915-2916; and (4) PowerPoint presentations made by the Maritime Administration to the Credit Council, AR 2917-2977.  Pl.'s Mot. at 15-16.  The Defendants' Opposition indicates that it also withheld draft versions of a

memorandum from the Maritime Administration for the Credit Council regarding priorities for XI funding, internal communications and recommendations between the Maritime Administration staff and offices, and communications between the Maritime Administration and Scully Capitol pursuant to the deliberative process privilege. Defs.' Opp'n at 12-13. Apart from the Plaintiff's general arguments regarding the Defendants' invocation of the privilege, the Plaintiff does not dispute that the documents the Defendants indicated were withheld are in fact privileged. Accordingly, the Court begins with the parties' arguments regarding the general applicability of the privilege in this case, and then addresses the specific redactions challenged by the Plaintiff.

1.   General Applicability of the Privilege

a.   Invocation of the Privilege

As a threshold issue, for the first time in its Reply brief, the Plaintiff argues that the Defendants cannot rely on the deliberative process privilege to redact or withhold documents "because they have failed to properly invoke the privilege." Pl.'s Reply at 11; *see also id.* at 14 ("Neither a plaintiff nor a court can possibly assess the legitimacy of an agency's claim of privilege under these well-established rules if they have no idea that documents are being withheld, much less what the purportedly privileged documents are."). This argument appears nowhere in the Plaintiff's initial motion, despite the fact that the Plaintiff knew the Defendants were relying on the deliberative process privilege as the basis for redacting certain documents before the Plaintiff even filed its motion. *See* Pl.'s Mot. at 15 ("Defendants have redacted large portions of the few documents in the AR that were created by defendants, claiming that the redacted portions contain information protected by the deliberative process privilege."). The Court shall not consider an argument raised for the first time in the Plaintiff's Reply, depriving the Defendants of the

17

opportunity to respond.  *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir.

2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in

their reply brief."); *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986)

("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an

appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues

tendered.") (citation omitted).  Therefore, the Defendants are entitled to rely on the deliberative

process privilege, and are not required to submit a log of privileged documents.

b.      Bad faith/Improper Motive

The Plaintiff also argues that the deliberative process privilege does not apply in this case

because "its action both questions the defendants' subjective intent and challenges the decision-

making process itself."  Pl.'s Mot. at 23.

> When a party challenges agency action as arbitrary and capricious the
> reasonableness of the agency's action is judged in accordance with its stated
> reasons.  Agency deliberations not part of the record are deemed immaterial.  That
> is because the actual subjective motivation of agency decisionmakers is
> immaterial as a matter of law—unless there is a showing of bad faith or improper
> behavior.

*In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (citations omitted).  The

Plaintiff must make a "strong showing of bad faith" to justify supplementing the Administrative

Record.  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (citation omitted).

The Plaintiff does not attempt to make this showing in the section of its motion dedicated to the

deliberative process privilege, but rather assumes that challenging the Defendants' subjective

intent in the Supplemental Complaint is sufficient.  Moreover, as discussed *infra*, the Plaintiff's

"evidence" of bad faith and improper motive falls short of the "strong showing" of bad faith and

improper motive necessary to warrant discovery in this administrative action.  *Infra*, Section

III.C.  For the same reasons, the Plaintiff has failed to make the strong showing of bad faith and

18

improper motive necessary to overcome the deliberative process privilege.

c.      Pretext

The Plaintiff also suggests that "[t]he redacted portions, moreover, must be disclosed because they will confirm that defendant's stated rationale in denying APT's applications was merely a pretext masking its true basis."  Pl.'s Mot. at 24.  The Plaintiff cites *Public Citizen v. Heckler*, 653 F. Supp. 1229 (D.D.C. 1986), for the proposition that it need only make a "prima facie showing" that "the agency's stated rationale is but a pretext masking the true basis of its decision," to overcome the invocation of the deliberative process privilege.  *Id.* at 1237 (quoting *San Luis Obispo*, 751 F.2d at 1325).  It is unclear that the "prima facie" standard articulated in *San Luis Obispo* is still applicable in light of the D.C. Circuit's subsequent decisions in *In re subpoena duces tecum*, 156 F.3d at 1279-80, and *Ludwig*, 82 F.3d at 1095.  However, assuming the Plaintiff need only make a prima facie showing of pretext to overcome the deliberative process privilege, the Plaintiff fails to do so in this case.

The information redacted in this case was "known to [the agency] at the time of [its] decisionmaking [and] are directly related to the decision made."  *Public Citizen*, 653 F. Supp. at 1237.  However, the Defendants indicated—and the Plaintiff does not dispute—that the redactions include information that is both favorable and unfavorable to the agency's decision.  Defs.' Opp'n at 19 & n.5; *cf. Public Citizen*, 653 F. Supp. at 1237 (discussing extra-record documents that were "adverse to the agency's position").  The Plaintiff argues that "[o]ther than the irrational reasoning in the August 1, and November 9, 2012 decision letters, there is nothing in the AR to support the Administrator's stated reasons for denying APT's application."  Pl.'s Mot. at 26 (citation omitted); *see also id.* (discussing redactions to memoranda prepared by Maritime Administration staff for the Maritime Administrator).  These redactions and alleged omissions do not

demonstrate "pretext," but rather go to whether the record is sufficient to allow the Court to effectively review the Administrator's decision. *Id.* ("The MarAd staff analysis on which the Administrator relied is not further identified; all staff e-mails and memorandums are so heavily redacted as to be unhelpful in divining their analyses and conclusions."). The Plaintiff fails to articulate why a poorly supported decision, without more, is evidence of pretext. Even if a lack of adequate support in the record is sufficient to establish pretext, the Court can only make a determination as to the adequacy of the record upon review of the parties' dispositive motions.

> d.    Misconduct

The Plaintiff suggests that "the deliberative process privilege disappears altogether when there is *any* reason to believe government misconduct occurred." Pl.'s Mot. at 27 (quoting *Alexander v. FBI*, 186 F.R.D. 170, 177 (D.D.C. 1999)) (citation omitted). However, the Plaintiff fails to articulate what misconduct the Defendants purportedly engaged in, and merely refers the Court to the section of the Plaintiff's motion seeking discovery on the grounds of "bad faith or improper motive." *Id.* ("As next shown with respect to APT's request to conduct limited discovery, there is more than just "any reason" to believe that defendants engaged in bad faith and misconduct, and the deliberative process privilege should be denied here for those same reasons."). "To invoke the government-misconduct exception, the party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon government misconduct." *Chaplaincy of Full Gospel Churches v. Johnson*, 217 F.R.D. 250, 257 (D.D.C. 2003), *reversed in part and vacated in part on other grounds by In re England*, 375 F.3d 1169 (D.C. Cir. 2004) (citing *Judicial Watch of Fla. v. Dep't of Justice*, 102 F. Supp. 2d 6, 15-16 (D.D.C. 2000)).

The allegations in this case do not rise to the level of "misconduct" in cases in which courts have found the deliberative process privilege should not apply, or at least were sufficient to trigger *in camera* review by the court. The Plaintiff makes no attempt to distinguish between its allegations of

"misconduct" as compared to purposed bad faith or improper motive on the part of the Defendants, but the purported "bad faith" in this case—that is, the Credit Council convincing the Administrator to deny the Plaintiff's applications because the Plaintiff is owned by a private equity firm—is a far cry from *misconduct. See*, *e.g.*, *Alexander*, 186 F.R.D. at 171 (allegations the "FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations"); *Convertino v. United States Dep't of Justice*, 674 F. Supp. 2d 97, 100 (D.D.C. 2009) (allegations that the Department of Justice leaked information regarding an investigation into purported prosecutorial misconduct by an Assistant United States Attorney); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118 (D.D.C. 2005) (allegations of malicious prosecution). "The deliberative process privilege would soon be meaningless, if all someone seeking information otherwise protected under the privilege had to establish is that there was disagreement within the governmental entity at some point in the decisionmaking process." *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998). The Plaintiff's invocation of "misconduct" appears to be nothing more than an attempt to end-run the more stringent showing the Plaintiff must make to demonstrate bad faith or improper motive sufficient to overcome the deliberative process privilege.

### 2.   Non-Deliberative Information

The Plaintiff argues unspecified portions of the Defendants' redactions are likely not protected by the deliberative process privilege because the information is (1) factual, and/or (2) part of a determination of benefits. However, the Plaintiff does not identify any specific portions of documents, but rather asks the Court to conduct an *in camera* review of the redacted documents and determine for itself whether any of the information is protected. Based on the Plaintiff's own description of the documents and confirmed by the Court's review of the documents as presently redacted, facially the documents are pre-decisional and deliberative. The

Plaintiff's objection to the redaction of factual information would seem to apply to the third and fourth categories of documents, but as set forth below, the Plaintiff's objection is unpersuasive. The Defendants have the burden to prove the privilege applies, but bare assertions by the Plaintiff that unspecified redactions may not be privileged are insufficient to warrant an *in camera* review or a more fulsome showing on the part of the Defendants. *See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 789 F.2d 26, 45 (D.C. Cir. 1986) ("Petitioners must make the requisite showing before we will look at the transcripts. We will not examine the transcripts to determine if we may examine the transcripts.").

a.    Factual Material

Initially, the Plaintiff argues that "factual materials" fall outside the scope of the deliberative process privilege; "to be protected the material must comprise part of the 'deliberative process.'" Pl.'s Mot. at 16-17 (quoting *McClelland v. Andrus*, 606 F.2d 1278, 1287 (D.C. Cir. 1979).  In the context of the Freedom of Information Act, the D.C. Circuit explained that the applicability of the privilege "does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011).[9]  The *Ancient Coin* court held that certain factual information was properly withheld because "[t]he factual summaries contained in the CPAC reports were culled by the Committee from the much larger universe of facts presented to it and reflect an exercise of judgment as to what issues are most relevant to the pre-

_____

[9]  As the Plaintiff notes, cases discussing the deliberative process privilege in the context of Exemption 5 of the Freedom of Information Act are instructive because "in effect Exemption 5 is co-extensive with the common law discovery privileges." *McClelland v. Andrus*, 606 F.2d 1278, 1287 n.54 (D.C. Cir. 1979).

decisional findings and recommendations." *Id.* (citation omitted).

The third category of redactions at issue in the Plaintiff's motion reflect communications within the Maritime Administration discussing financial models of the Plaintiff's application using different scenarios, and attach spreadsheets reflecting the analysis.   AR 2899, 2915. Similarly, the fourth category of redactions withheld analysis presented by the Maritime Administration to the Credit Council regarding the Plaintiff's application.   *See*, *e.g.*, 2927-29 (redacting slides entitled "MARAD Expected Case," "IFA Stress Case," and "MARAD-IFA Stress Case").   This slide on its face reflects the Maritime Administration culling and performing its own analysis of the data provided by the Defendant, in essence creating new information as part of the deliberative process.   This analysis falls squarely within the privilege afforded to documents reflecting an agency's "exercise of discretion and judgment calls." *Ancient Coin*, 641 F.3d at 513 (citation omitted).

The Plaintiff's reliance on *American Radio Relay League, Inc. v. Federal Communications Commission*, 524 F.3d 227 (D.C. Cir. 2008), is misplaced.   First, the Plaintiff offers no explanation or legal authority that case law concerning the withholding of documents in the context of informal rulemaking should apply to adjudicative proceedings.   A second case cited by the Plaintiff, *Independent United States Tanker Owners Committee v. Lewis*, 690 F.2d 908 (D.C. Cir. 1982), demonstrates why adjudicative and informal rulemaking proceedings are not equivalent for purposes of public disclosure of agency analysis.   As the *Lewis* court explained,

> A staff report was produced. It differed in fundamental respects from prior staff reports to which interested parties directed their comments.   (Misdirected their comments, we now should say.)   MarAd relied on the report in making a decision with substantial economic consequences.   But the decision was published without any explanation.   The report remained buried in the bowels of the agency.

*Id.* at 926.  Public notice and comment is meaningless if the public is commenting on an outdated position from the agency.  The *Lewis* court acknowledged that "[a]n agency is not obliged to publish a tentative opinion for comment," but "where an agency's analytic task begins rather than ends with a set of forecasts, sound practice would seem to dictate disclosure of those forecasts so that interested parties can comment upon the conclusions properly to be drawn from them."  *Id.*  Here, as in all adjudications, the "agency's analytic task" began with the Plaintiff's application.  The need for effective public notice and comment is irrelevant in the context of adjudicative proceedings.

Second, the *American Radio* court explained that "[w]here, as here, an agency's determination is based upon a complex mix of controversial and uncommented upon data and calculations, there is no APA precedent allowing an agency to cherry-pick a study on which it has chosen to rely in part."  *Id.* at 237.  The Defendants are not suggesting in this case that the Administrator did not rely on the redacted portions of his staff's analysis.  Rather, the Administrator argues that the redacted analysis of factual data performed by his staff is protected by the deliberative process privilege.  On this record, the redacted "factual" data in the Administrative Record was properly withheld pursuant to the deliberative process privilege.

> b.   Determination of Benefits

The Plaintiff further contends that "[t]he deliberative process privilege does not apply to documents produced by the agency's staff during its analysis and evaluation of facts necessary to adjudicate an applicant's eligibility for government benefits."  Pl.'s Mot. at 17.  The Plaintiff offers no authority for this proposition, apart from a citation to the Attorney General's Manual on the Administrative Procedure Act from 1947, explaining the dichotomy between rule making and adjudication under the APA.  *Id.*  Not only does this argument lack any basis in the law, it would

wholly eliminate the deliberative process privilege in most adjudicative proceedings before executive agencies, which by definition often determine whether or not an individual or a party is eligible for government credit, funds, or other benefits.   The fact that the Maritime Administrator's decisions determined whether the Plaintiff would be eligible for credit assistance from the government is not itself sufficient to overcome the deliberative process privilege.

       3.       <u>Post-Decisional Information</u>

The Plaintiff further argues that a series of PowerPoint presentations from the Maritime Administration to the Credit Council and associated working group, which were redacted in part in the Administrative Record, are not protected by the deliberative process privilege because the presentations are not "pre-decisional."  Pl.'s Mot. at 21.  The Plaintiff argues that based on the Court's previous finding that the Secretary cannot require the Maritime Administration to seek the opinion of the Credit Council, "the 'proposed' dispositions in MarAd's presentations to the Credit Council (and its working group) in effect constituted the Administrator's final decisions, and the required presentations to the Credit Council were both *ultra vires* and post-decisional."  Pl.'s Mot. at 24.

Though the Court concluded that the Defendant failed to identify any authority permitting the Secretary of Transportation to require the Maritime Administration to consult with the Credit Council before issuing a decision on a Title XI loan application, the Court did not hold (as the Plaintiff suggests) that the Credit Council has *no* lawful role in the Title XI application process.  There is nothing to suggest that the Maritime Administration could not, for example, seek the opinion of the Credit Council on his own accord before granting or denying an application.  Thus, the Court's prior ruling has no effect on the issue of whether a document is "predecisional."  Moreover, a finding that the Maritime Administrator made a "final" decision regarding the Plaintiff's applications before

consulting with the Credit Council would be counter-factual because at the time the Adminsitrator's decisions in this case were finalized, Maritime Order 2301.1B required the Maritime Administrator to consult with the Credit Council *before* making his final decision. Documents reflecting the Maritime Administration's position before consulting with the Credit Council would "prematurely disclose the views of the agency," and are thus protected by the deliberative process privilege. *Coastal States Gas*, 617 F.2d at 867.

    C.     *Request for Discovery*

The Plaintiff asks the Court for permission to obtain discovery apart from the Administrative Record, including documents from the Secretary of Transportation and Credit Council, and deposition testimony of David Matsuda, the Maritime Administrator, George Zoukee, and Daniel Ladd, the Director of the Maritime Administrator's Office of Marine Financing. Pl.'s Mot. at 32-33. The "basic rule" of Administrative Procedure Act is that "a court's review of an agency's decision is confined to the administrative record." *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002). Discovery is permitted "only in two circumstances": (1) upon "a strong showing of bad faith or improper motive"; and (2) "in the rare case in which the record is so bare as to frustrate effective judicial review." *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990).

    1.    <u>Record Sufficient for Effective Judicial Review</u>

First, the Plaintiff argues that because the recommendations of the Credit Council influenced the Maritime Administrator's decisions on the Plaintiff's applications, absent an administrative record prepared and filed by the Secretary of Transportation and/or the Credit Council—as opposed to the Maritime Administration—"it is impossible for the Court to review the Council's influential recommendations." Pl.'s Mot. at 28-29. This argument confuses two

different inquiries.  If the Credit Council or staff for the Secretary of Transportation created documents that the Maritime Administrator considered in reaching his decision, those documents by definition must be part of the Administrative Record in this case.  But the Plaintiff does not suggest in this section of its brief that the Maritime Administration omitted any such documents from the record.  The Plaintiff offers no authority for the proposition that an agency involved in the decisionmaking process, but that is not the ultimate decisionmaker, must submit its own administrative record.  The Administrative Record is not "insufficient" merely because it omits documents that were considered by a *different* agency that provided advice to the agency responsible for making the ultimate decision.

In *Saratoga Development Corp. v. United States*, 21 F.3d 445 (D.C. Cir. 1994), the plaintiff made the same argument American Petroleum Tanker makes here.  The decisionmaker in *Saratoga*, the Pennsylvania Avenue Development Corporation ("PADC"), was required by statute to consult with the General Services Administration ("GSA") and the International Cultural and Trade Center Commission before selecting a developer for a particular project.  21 F.3d at 457.  Saratoga argued that the PADC submitted an "incomplete" administrative record to the District Court because the record did not include technical reports prepared by the GSA and the Commission regarding the proposals from various developers.  *Id.*  The D.C. Circuit rejected Saratoga's contention that the exclusion of these reports from the record was in error "for the simple reason that they were never part of the record in the first place; they were neither prepared for nor provided to the PADC or its staff."  *Id.*  Furthermore, the D.C. Circuit explicitly rejected Saratoga's contention that because of these omissions, discovery was necessary for effective judicial review.  *Id.* at 458.  The Plaintiff's contention in this case is indistinguishable from the arguments rejected by the D.C. Circuit in *Saratoga*.  In any event, the Court is not in a

position to determine whether the Administrative Record is so bare as to preclude effective judicial review until the parties' dispositive motions are fully briefed.

2.    Bad Faith or Improper Motive

Second the Plaintiff asserts that "there is strong evidence that the Credit Council engaged in improper behavior" insofar as "[t]he evidence establishes that . . . Credit Council participation in the processing of APT's application was anything but advisory." Pl.'s Mot. at 29. For the first time in its Reply, the Plaintiff articulates its theory of bad faith/improper motive, asserting that

> APT has made a strong showing that (1) the Credit Council exercised controlling authority over the Administrator with respect to APT's application throughout the administrative process, (2) the Credit Council denied APT's application and directed the Administrator to deny it, [and] (3) the Credit Council did so based on its impermissible bias against private equity firms[.]

Pl.'s Reply at 9. In sum, the Plaintiff relies on four pieces of "evidence" to show the Credit Council's improper exercise of control over the Maritime Administrator: (1) the Maritime Administration's interactions with the Credit Council; (2) the purportedly unusual procedures employed by the Maritime Administration in this case; (3) communications between the Maritime Administration and the IFA; and (4) statements by the Maritime Administrator. To show an "impermissible bias," the Plaintiff relies solely on statements from the Credit Council regarding the fact the Plaintiff is owned by private equity firms. Viewed together, this evidence falls short of the "strong showing" necessary to warrant discovery in an APA action.

a.    Credit Council's Exercise of Authority Vis a Vis the Maritime Administrator

The Plaintiff relies on several aspects of the review process in this case in an attempt show improper influence by the Credit Council. The Plaintiff notes that the Maritime Administration made eight presentations to Credit Council and/or Credit Council working group between May and November 2012, including presentations the day before the Maritime

Administrator's decisions were issued in August and November 2012.  Pl.'s Mot. at 30.  The

Plaintiff further alleges that two of the presentations, from May 31 and June 12 respectively,

indicated the Maritime Administration recommended granted the Plaintiff's application.  *Id.*

Similarly, the Plaintiff notes that the Credit Council's policy is not to recommend that the

Administration retain an IFA if the Administration believes the application ultimately will be

denied.  *Id.* at 30-31.  Ultimately the Plaintiff's argument boils down to the fact that the Maritime

Administration changed its mind regarding whether the Plaintiff's applications should be

approved after consultation with the Credit Council.

Discussing the deliberative process privilege, the D.C. Circuit in *Hinckley* noted that

"governmental decisionmakers will frequently disagree and debate many options before they

reach any final conclusion."  140 F.3d at 285.  Moreover,

> the simple fact that Hinckley's treatment team and the Hospital's Review Board
> came to different conclusions does not suggest, in our view, any improper
> motivations on the part of the Review Board. As indicated above, Hinckley's
> treatment team and the Review Board have different functions and concerns.
> Whereas members of the treatment team are directly responsible for Hinckley's
> therapy and are charged with advocating the treatment program that they believe
> will best advance Hinckley's therapy, the Hospital Review Board is drawn from
> all sections of the Hospital and considers a wider array of issues, including most
> notably the danger that a conditional release would pose to the community.

*Id.* at 286.  Likewise here, the Maritime Administration and the Credit Council have different

functions and concerns.  The Maritime Administration administers the Title XI program in order

"to promote the growth and modernization of the U.S. merchant marine."  Maritime Admin.,

*Title    XI    Federal    Ship    Financing    Program:    Program    Description*

ttp://www.marad.dot.gov/ships_shipping_landing_page/title_xi_home/title_xi_prog_description/

title_xi_prog_description.htm (last accessed July 8, 2013).   The Credit Council is comprised of

officials from across the Department of Transportation, and is concerned not only with individual

applications for credit assistance, but also the overall status of loan portfolios for the Department of Transportation's credit programs, including the Title XI program.  Defs.' Ex. A at 3-4.  The fact that the Maritime Administration's initial position with respect to the Plaintiff's application differed from the ultimate decision reached after extensive consultation with the Credit Council "does not suggest . . . any improper motivations."  *Hinckley*, 140 F.3d at 286; *see Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (holding the APA "makes no distinction, however, between initial agency action and subsequent agency action undoing or revising that action").[10]

The Plaintiff also argues that the Maritime Administration's procedures for reviewing the Plaintiff's applications deviated from the normal procedures, casting suspicion on the Credit Council's role in the review process.  According to Jean McKeever, a former employee of the Maritime Administration who was involved in the Title XI program, once a Title XI application is complete, "the program office asks the other offices to provide final comments on it in the area of their expertise.  Those comments are presented to the program office in memorandum form."  Decl. of J. McKeever, ECF No. [60-3], ¶ 3.  These memoranda are purportedly later incorporated into a "recommendation for action" provided to the Maritime Administrator for a final decision on the application.  *Id*. at ¶ 4.  Daniel Ladd indicates that with the exception of an October 4, 2012, Memorandum from the Maritime Administration's Office of Policy and Plans, A.R. 2907-2914, "no such formal memoranda were generated or exist with regard to APT's Title XI

---

[10]  In its Reply, the Plaintiff suggests that "[t]here is nothing in the record evidencing what defendants now claim to be the further consideration and analysis engaged in *by* MarAd, much less any documentation of the basis for the abrupt change of views," on the part of the Maritime Administration.  Pl.'s Reply at 4.  One would expect that any documents reflecting such "further consideration" would be privileged as they would reflect the "give-and-take" of the consultative process.

application." Ladd Decl. ¶ 5.  The Plaintiff asserts, without further explanation, that "[t]he failure of MarAd staff even to prepare this key mandatory memorandum only serves to highlight the need for discovery and supplementation of the AR with the other documents identified by APT."  Pl.'s Reply at 15.  However, as the McKeever Declaration indicates, many of these formal memoranda should have been created long before the Credit Council became involved in the review process.  The fact that the Maritime Administration deviated from allegedly "standard practice" *before* the involvement of the Credit Council minimizes the inference that later deviations were a result of alleged nefarious interference on the part of the Credit Council.

Finally, the Plaintiff argues certain statements by the Maritime Administrator himself during the decisionmaking process evidence improper influence by the Credit Council.  Robert Kurz, the Chief Executive Officer of American Petroleum Tankers Parent, avers that he spoke with Administrator Matsuda following the June 12, 2012, Credit Council meeting, at which time Mr. Matsuda indicated that "while he was continuing to advocate for the APT application, 'things do not look good.'"  Decl. of R. Kurz, ECF No. [60-4], ¶ 30.  The timing of this statement is significant: Mr. Matsuda purportedly made this statement to Mr. Kurz over six weeks before the initial denial of the Plaintiff's original application.  This statement gives "the impression" that Mr. Matsuda believed the Credit Council would recommend that he deny the application, but falls short of the "strong evidence" that the Credit Council improperly influenced the Maritime Administrator in the six weeks between when the statement was made and when Mr. Matsuda ultimately issued his decision.  *Air Transp. Ass'n, Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 488 (D.C. Cir. 2011).

Even if the Court were to credit the Plaintiff's claim that the procedures for reviewing the Plaintiff's application deviated from standard Administration practice as alleged, and assumed the

fact the priorities memorandum was not finalized implied the Credit Council did not agree with the conclusion, viewed along with the Plaintiff's other evidence, the Plaintiff provides only weak circumstantial evidence that the Credit Council overstepped its bounds.  "Given the presumption that agency members act in good faith, and the lack of concrete evidence to the contrary," discovery is not warranted in this case.  *Air Transp. Ass'n*, 663 F.3d at 488.  (citation omitted).

b.       Reason for Denial of Plaintiff's Applications

The Plaintiff emphasizes that the Credit Council expressed concern about the ownership of the Plaintiff, which the Plaintiff contends is not a valid basis for denying an application.  Pl.'s Mot. at 31.  But the Administrative Record indicates the concern was not the ownership of the Plaintiff in isolation, but whether the owners of the Plaintiff had a long-term interest in the project the Maritime Administration was being asked to finance.   A.R. 2868 (noting the Credit Council initially recommending against retaining an IFA "based on concerns about the ownership structure (75% by Blackstone and 25% by Cerberus) and the ownership's long-term interest in the project).");  *see also* A.R. 2871 ("In March, 2011 the Credit Council denied MARAD's prior request . . . based on concerns about the private equity ownership's long-term interest and the relatively high ratio of debt to equity.").   Moreover, despite these concerns, the Credit Council ultimately recommended that the Administration hire an IFA.   A.R. 2872.   In context, the statements concerning the Plaintiff's ownership are insufficient to justify discovery in this case.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds only limited supplementation of the Administrative Record is appropriate in this case.   The Maritime Administration shall be required to supplement the record to include two public speeches by the Secretary of Defense that the agency relied on and cited in denying the Plaintiff's revised applications.   The Plaintiff

failed to demonstrate the other documents at issue in its motion were considered by the Maritime Administrator as part of his decision denying the Plaintiff's applications.   Furthermore, the Plaintiff failed to produce sufficient evidence of bad faith or improper motive to overcome the deliberative process privilege or to obtain discovery in this matter.   Accordingly, the Plaintiff's [60] Motion to Compel Filing of the Full Administrative Record and for Leave to Conduct Limited Discovery is GRANTED IN PART and DENIED IN PART.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE